IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JEAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 1:20-cv-01722-CCC |
| | : | |
| BUCKNELL UNIVERSITY; NATIONAL | : | |
| FRATERNITY OF KAPPA DELTA RHO; | : | |
| KAPPA DELTA RHO – IOTA CHAPTER; | : | |
| WILLIAM C. BABCOCK; DILLON | : | |
| DUTTERA; NICHOLAS ZANGHETTI, | : | |
| | : | |
| Defendants | : | |
| | : | |

**DEFENDANT BUCKNELL'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION AND PROCEDURAL HISTORY .....................................1

II.  THE RELEVANT ALLEGATIONS IN THE COMPLAINT .......................2

III.  STATEMENT OF QUESTION PRESENTED ................................................4

IV.  LEGAL ARGUMENT.......................................................................................4

    A.  Legal Standard..........................................................................................5

    B.  The Court Should Dismiss Plaintiff's Common Law Negligence
        Claim Against Bucknell Because Bucknell Did Not Owe
        Plaintiff a Legal Duty. ............................................................................6

    C.  The Court Should Dismiss Plaintiff's Claims For "Hazing" and
        "Negligence Per Se"................................................................................13

V.  CONCLUSION..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alumni Ass'n v. Sullivan*, 572 A.2d 1209 (Pa. 1990) ................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................2, 5

*Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007) ..............................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................5, 12

*Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270 (Pa. 2005) ...........................................................................................................6

*Booker v. Lehigh Univ.*, 800 F. Supp. 234 (E.D. Pa. 1992)............................7, 8, 11

*Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir. 1979) ..............................6, 7, 8, 9, 10

*Chinniah v. E. Pennsboro Twp.*, No. 1:15-CV-02240, 2020 U.S. Dist. LEXIS 65889 (M.D. Pa. Apr. 13, 2020)..............................................................12

*Commonwealth v. Potts*, 566 A.2d 287 (Pa. Super. 1989) ......................................15

*Commonwealth v. Roebuck*, 32 A.3d 613 (Pa. 2011) ..............................................16

*Deitrick v. Costa*, No. 4:06-CV-01556, 2015 WL 1606714 (M.D. Pa. Apr. 9, 2015)........................................................................................................14

*Fitzpatrick v. Universal Tech. Inst., Inc.*, No. 08-1137, 2010 U.S. Dist. LEXIS 83417 (E.D. Pa. Aug. 11, 2010) ...........................................................7, 9

*Humphries v. Pennsylvania State Univ.*, 2020 U.S. Dist. LEXIS 182838 (M.D. Pa. Oct. 2, 2020) (Brann, J.) .............................5, 9, 10, 11, 17, 18

*In the Interest of K.M*, 134 A.3d 499 (Pa. Super. Ct. 2015) ....................................15

*Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3d Cir. 1993) ..........................6

*Lloyd v. Alpha Phi Alpha Fraternity*, 96-CV-348, 1999 U.S. Dist. LEXIS 906 (N.D.N.Y. Jan. 26, 1999) ............................................................9, 10

*McCloud v. McLaughlin*, 837 A.2d 541 (Pa. Super. Ct. 2003) ...............................14

**Page(s)**

*Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550 (E.D. Pa. 2004), *aff'd*, 121 F. App'x 980 (3d. Cir. 2005) ................................7

*Millard v. Osborne*, 611 A.2d 715 ............................................7, 8, 9, 10

*Morena v. South Hills Health Sys.*, 462 A.2d 680 (Pa. 1983) ...................6

*Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013)....................................12

*R.W. v. Manzek*, 888 A.2d 740 (Pa. 2005) ...............................................7

*Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530 (W.D. Pa. 2019)..............14

*se. Piazza v. Young*, 403 F. Supp. 3d 421 (M.D. Pa. 2019)....................14

**STATUTES**

*18 Pa. C.S. § 306*.....................................................................................15

*18 Pa. C.S. § 903*.....................................................................................15

*18 Pa. C.S. § 2801, et seq.* .................................................................4, 13

*18 Pa. C.S. § 2805*.............................................................................4, 14, 17

*18 Pa. C.S. § 2811*...................................................................................13

*37 Pa. Code § 203.1, et seq.*...................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2)................................................................................5

Fed. R. Civ. P. 12(b)(6)......................................................................1, 2, 5

## DEFENDANT BUCKNELL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Bucknell University ("Bucknell") submits this Memorandum of Law in support of its Motion to Dismiss Counts 1, 4, and 6 of Plaintiff John Jean's ("Plaintiff") Complaint, as against Bucknell, for failure to state claims upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff alleges that he was forced to drink alcohol and subjected to physical violence as part of a hazing ritual by members of the Iota Chapter of the Kappa Delta Rho National Fraternity.  The acts alleged by Plaintiff, if true, are reprehensible.  But the Complaint does not allege that Bucknell had anything to do with the hazing.  It does not allege that Bucknell knew of the events that were planned that night, that it knew what was happening behind closed doors, or that it facilitated or promoted the hazing in any way.  Pennsylvania law is well settled that colleges and universities are not liable for the tortious or criminal actions of their students.  Thus, whatever claims Plaintiff may have against those who allegedly hazed him, Plaintiff has not and cannot state a claim against Bucknell. The Court should therefore dismiss the Complaint as to Bucknell with prejudice.

## II.    THE RELEVANT ALLEGATIONS IN THE COMPLAINT[1]

In the fall of 2020, Plaintiff decided to join, or "pledge," the Iota Chapter of the Kappa Delta Rho fraternity.[2]  Compl. ¶ 18.  As a part of his initiation into the fraternity, Plaintiff alleges that he was subjected to hazing from the night of September 10, to the morning of September 11, 2020.  Compl. ¶¶ 19-21.  At that time, Plaintiff was a twenty-year-old sophomore at Bucknell.  Compl. ¶¶ 12-13.  On September 10, 2020, the members of the Iota Chapter organized a pledge class initiation, which they described as a "lesson."  Compl. ¶ 19.  Throughout the night of September 10, Plaintiff and other members of his pledge class were allegedly instructed to drink excessive amounts of alcohol.  Compl. ¶¶ 20-22.

At some point after consuming a substantial amount of alcohol, Plaintiff says he attempted to leave the KDR house, but a member of the Iota Chapter allegedly forced Plaintiff to remain at the house.  Compl. ¶ 24.  Plaintiff claims he was also subjected to physical hazing.  Compl. ¶¶ 31-32.  Eventually, Plaintiff did leave the KDR house, and got into an altercation with another member

---

[1] For purposes of deciding a motion to dismiss pursuant to Rule 12(b)(6), this Court must take all well-pleaded facts as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, the facts set forth herein are derived from Plaintiff's Complaint, and Bucknell does not admit the truth or falsity of such allegations.

[2] The chapter of the Kappa Delta Rho National Fraternity at Bucknell is designated as the "Iota Chapter."  Both the national fraternity and the individual chapter are named Defendants in this matter.  For clarity, Bucknell herein refers to the national entity as "KDR" and the individual chapter as "Iota Chapter."

of the Iota Chapter elsewhere on campus.  Compl. ¶ 24.  A Bucknell safety officer witnessed the altercation and called 911.  Compl. ¶ 28.  As a result of the safety officer's action, Plaintiff was transported to and treated at Evangelical Community Hospital.  Compl. ¶¶ 29-30.

Other than arranging transport for Plaintiff's emergency treatment, the Complaint does not allege that Bucknell had any involvement in these activities, knew they were occurring, had warning that they were planned, exercised any supervision or control over the events that night, or was involved in any way in the daily activities of the Iota Chapter.  The complaint acknowledges that Bucknell prohibits hazing.  Compl. ¶ 46.  Plaintiff alleges, in fact, that Bucknell punished KDR in 2009 for a hazing incident and banned it from campus for three years. Compl. ¶ 33.  While Plaintiff suggests that Bucknell fails to "take[] meaningful steps to enforce its anti-hazing policies," he does not allege policies Bucknell supposedly failed to enforce or how it failed to do so.  Compl. ¶ 47.  Plaintiff's own complaint actually suggests students know that Bucknell has disciplinary policies in place and there are consequences for their actions, as he pleads that the KDR members who participated in the hazing incident exchanged messages in which they acknowledged "we are in deep shit here . . . ."  Compl. ¶ 41-42.

Plaintiff also admits that, pursuant to its anti-hazing policies, Bucknell conducted an investigation into the incident.  Compl. ¶¶ 44-45.[3]

On September 22, 2020, 11 days after the incident, Plaintiff filed the instant Complaint, alleging counts of hazing, negligence, and negligence *per se* against all Defendants, in addition to a count of false imprisonment against Defendants KDR, Iota Chapter, Babcock, Duterra, and Zanghetti and counts of assault and battery, intentional infliction of emotional distress against Babcock, Duterra, and Zanghetti.  (Doc. 1.)

## III.   STATEMENT OF QUESTION PRESENTED

1.   *Whether Defendant Bucknell's Motion to Dismiss Should be Granted Because Bucknell Owed No Duty of Care to Plaintiff.*

**Suggested Answer: Yes**

## IV.   LEGAL ARGUMENT

Plaintiff asserts three claims against Bucknell: (1) "hazing"; (2) common-law negligence; and (3) negligence *per se* related to the purported violation of Pennsylvania's Anti-Hazing Law.  18 Pa. C.S. § 2801, *et seq.*  For the reasons set forth below, Bucknell did not owe Plaintiff a legal duty, there is no independent cause of action for "hazing," and Bucknell did not "facilitate or promote" the commission of a hazing offense within the meaning of the

---

[3] While Plaintiff refers to Bucknell's response as inadequate and claims that it "neglected to conduct any real investigation into what happened," Compl. ¶ 45, this lawsuit was filed (and that allegation was made) just 11 days after the incident while the investigation was still ongoing.

Pennsylvania Anti-Hazing Law, 18 Pa. C.S. § 2805(a).  Accordingly, Plaintiff's claims against Bucknell fail as a matter of law and should be dismissed with prejudice.

### A.    Legal Standard

In deciding a Rule 12(b)(6) motion, the Court must accept the facts pleaded in the complaint as true, but it need not accept, without more, legal conclusions masquerading as facts.  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The allegations in a complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that "that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiff must "provide the 'grounds' of [her] 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

**B.    The Court Should Dismiss Plaintiff's Common Law Negligence Claim Against Bucknell Because Bucknell Did Not Owe Plaintiff a Legal Duty.**

Pennsylvania law is clear:  colleges and universities do not owe a duty to protect students from the tortious conduct of other students.  *See*, *e.g.*, *Humphries v. Pennsylvania State Univ.*, 2020 U.S. Dist. LEXIS 182838 at *22-*23 (M.D. Pa. Oct. 2, 2020) (Brann, J.) ("Plaintiff asks this Court to find that colleges owe their student-athletes a general duty to protect them and ensure their well-being, even against the tortious or criminal acts of third parties. This Court declines to do so.").  Because Bucknell did not owe Plaintiff a legal duty to protect him from the torts allegedly committed by his fraternity brothers, Plaintiff's negligence claim fails.

Pennsylvania common law requires a plaintiff to establish the following elements in support of a negligence claim:  "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another."  *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993) (citing *Morena v. South Hills Health Sys.*, 462 A.2d 680, 684 n.5 (Pa. 1983)).  "It is a fundamental principle of tort law [that] there cannot be a valid claim sounding in negligence unless there is a duty upon the defendant in

favor of the plaintiff which has been breached." *Alumni Ass'n v. Sullivan*, 572 A.2d 1209, 1210-11 (Pa. 1990) (citations omitted); *see also Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir. 1979). Thus, "[t]he primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 280 (Pa. 2005) (citation omitted). Duty is a question of law. *See R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005).

Under Pennsylvania law "a party cannot be held liable for the criminal actions of a third party unless [it] assumed a duty, through some act of its own." *Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 557 (E.D. Pa. 2004), *aff'd*, 121 F. App'x 980 (3d. Cir. 2005) (citations omitted). The rule is no different when it comes to the criminal actions of a college or university student—schools generally are not legally responsible for the tortious or criminal actions of their students. *See, e.g.*, *Booker v. Lehigh Univ.*, 800 F. Supp. 234, 241 (E.D. Pa. 1992); *Bradshaw*, 612 F.3d at 139-40. And it is well settled that there is no "special relationship" between a college and its students that creates an assumed duty. *Fitzpatrick v. Universal Tech. Inst., Inc.*, No. 08-1137, 2010 U.S. Dist. LEXIS 83417, at *7 (E.D. Pa. Aug. 11, 2010) (quoting *Bradshaw*, 612 F.2d at 140). To the contrary, college students are adults responsible for their own actions. *Millard v. Osborne*, 611 A.2d 715, 717; 720-21 (Pa. Super. Ct. 1992) (noting, too, that "[a]

college may not 'control' the behavior of its students as may have been possible in the past.").

"[T]he modern American college is not an insurer of the safety of its students." *Bradshaw*, 612 F.2d at 138.  Therefore, "Pennsylvania imposes no duty upon its colleges to supervise private social functions on their campuses to ensure that no underage drinking occurs." *Booker*, 800 F. Supp. at 241.  Numerous cases have refused to find a legal duty between a college and someone injured by one of its students, even where schools exercised substantially more control over events and circumstances than is alleged here.

For example, in *Bradshaw*, a college student consumed alcohol while at a picnic that the school helped to organize and then drove himself and another student, getting into an accident that rendered the second student quadriplegic. *Bradshaw*, 612 F.2d at 137.  It was alleged that the school had knowledge of the fact that alcohol would be consumed at the picnic, that faculty members were involved in planning the picnic, and that "this conduct violated a school regulation and state law, [and] created a known probability of harm to third persons[.]" *Id.* at 141.  The Third Circuit found that, even if the university could have controlled the picnic and prohibited distribution of alcohol, the university had no duty to protect the injured student from the other student's drinking. *Id.* at 143.  The court based its decision on modern college students being "regarded as adults in almost every

phase of community life" and contrasting more recent liberal policies with the years of *in loco parentis*. *Id.* at 139.

Similarly, in *Millard*, the court affirmed summary judgment for defendants Thiel College and Lambda Chi Alpha Fraternity after an eighteen-year-old freshman consumed alcohol at the fraternity and then subsequently drove his motorcycle and got into a head-on collision that killed him. *Millard*, 611 A.2d at 715-16. Plaintiff alleged that the school owned the fraternity house where the party occurred, had approved the event under its policies, knew the fraternity had built a bar (even though most of its members were underage) and otherwise had assumed some responsibility for parties under its alcohol policy (by checking compliance with fire codes, conducting inspections, and shutting down parties after the allowed "closing time"). The Court nevertheless found that the College did not owe the plaintiff any duty to prevent underage drinking at the party. *Id.* at 717. Among other things, no university representative was at the house at any relevant time and plaintiff proffered no evidence that the college helped to obtain or distribute the alcohol. *Id.* at 720.

In the context of injuries resulting from hazing, courts have specifically held that a university is not responsible for such injuries, particularly where it has no prior knowledge of the incident. For example, in *Humphries v. Pennsylvania St. Univ.*, 2020 U.S. Dist. LEXIS 182838 (M.D. Pa. Oct. 2, 2020),

this Court rejected imposing a common law duty on a university to prevent hazing in one of its programs, finding that no duty was created by the University's anti-hazing policies or the fact that Plaintiff was a student athlete. *Id.* at *19-*23.  The Court relied on *Millard*, *Bradshaw* and *Fitzpatrick* in finding that there was no common law duty to protect students from hazing. *Id.; see also Lloyd v. Alpha Phi Alpha Fraternity*, 96-CV-348, 1999 U.S. Dist. LEXIS 906, at *1 (N.D.N.Y. Jan. 26, 1999) (holding that a university had no duty to protect against hazing by a fraternity on its campus without actual knowledge of ongoing hazing, because "the common knowledge that hazing can occur within any fraternity would impose a duty upon all colleges that have Greek organizations, regardless whether any hazing actually occurs on a particular campus.").

Plaintiff's alleged connection between Bucknell and the criminal conduct at issue here are even more tenuous than in *Humphries*, *Bradshaw*, *Millard*, and other analogous cases noted above.  As was the case in *Millard*, Bucknell had no participation in the September 10-11 event whatsoever.  Like *Lloyd*, Bucknell had no prior knowledge of the event, and Plaintiff has pleaded no facts that would put Bucknell on notice of any need to intervene at the event, notwithstanding the absence of a legal duty to do so.  And the school in *Humphries* had much greater control over the program in which the hazing occurred (the

school's football team) and was alleged to have had knowledge of the hazing as it occurred.

Plaintiff's Complaint makes a number of allegations aimed at establishing a duty, but none succeed. First, Plaintiff alleges that Bucknell previously offered a "Fraternity 101" course that is no longer offered at Bucknell. Compl. ¶ 17. But Plaintiff cannot establish that holding a particular course imposes an ongoing duty to offer it forever, nor does Plaintiff allege how this course would have possibly prevented the actions of KDR or the Iota Chapter, which admittedly violated policy. Plaintiff's generalized allegation that Bucknell has failed to adequately enforce its anti-hazing policies is also insufficient, since courts have repeatedly held that a school's creation of a policy precluding certain action does not create a duty to prevent it. *Booker*, 800 F. Supp. at 240-41; *Humphries*, 2020 U.S. Dist. LEXIS at *20-*21 ("previous courts have found that simply enacting policies does not create duties for entities.").

Second, Plaintiff points out that a Bucknell safety officer witnessed one of the defendants punch Plaintiff, but neither the officer nor Bucknell reported the incident to police.[4] Even if true that Bucknell did not notify law enforcement (and it is not), that has nothing to do with whether Bucknell exercised any control

---

[4] Plaintiff fails to mention that Bucknell safety officers are police officers within the meaning of Act 120 (Municipal Police Officers' Education and Training Commission), 37 Pa. Code § 203.1, *et seq*., so they were, in fact, the police.

of the events that happened before the officer became involved.  Plaintiff was also able to make a claim to law enforcement if he so chose.  He decided instead to civilly sue Bucknell and others.

Lastly, Plaintiff points out that KDR was banned from Bucknell in 2009 due to a hazing incident and was not allowed to return to campus until 2012. Compl. ¶ 33.  Presumably, Plaintiff asks this court to infer that Bucknell knew or should have known that he was going to be hazed by the Iota Chapter in 2020 based on an incident of hazing that occurred over a decade prior.  The students who engaged in the hazing that resulted in KDR's suspension left Bucknell years ago, and Plaintiff has not alleged that Bucknell was aware of any problems with the fraternity since it recolonized eight years ago.  The court cannot plausibly infer a duty to predict that future hazing would occur based on this distant incident.  *See Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (holding that the court must accept the fact allegations in the complaint as true, but it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)); *see also Chinniah v. E. Pennsboro Twp.*, No. 1:15-CV-02240, 2020 U.S. Dist. LEXIS 65889, at *9 (M.D. Pa. Apr. 13, 2020) ("Factual allegations must be enough to raise a right to relief above the speculative level.") (quoting *Twombly*, 550 U.S. at 555).

In sum, Plaintiff's suggestion that Bucknell should have been on notice of the purported hazing is nothing more than unsupported speculation and unwarranted inference.  It is certainly *possible* that a student organization, including a fraternity, might commit a hazing offense—that's why Pennsylvania passed a law making it a crime and Bucknell has in place policies that prohibit it. But liability for the mere possibility of such an incident would automatically impose liability on any college or university for any act of hazing committed by a fraternity, club, student group, or unaffiliated organization operating on campus.

Plaintiff seeks to impose a rule that would require a university to actively police each and every meeting of any group operating on school grounds. Short of prohibiting student meetings without a Bucknell chaperone, this is an impossibly high standard.  Because Plaintiff has failed to plead any conduct by Bucknell that would plausibly establish a legal duty, the Court should grant Bucknell's motion and dismiss with prejudice all counts asserted against Bucknell.

## C.   The Court Should Dismiss Plaintiff's Claims For "Hazing" and "Negligence Per Se"

Given that Bucknell clearly owed Plaintiff no duty under the common law to protect him from the tortious actions of other students, Plaintiff seeks to create a duty based on Pennsylvania's Anti-Hazing Law, 18 Pa. C.S. § 2801, *et seq*.  The Anti-Hazing Law is a criminal statute that does not include an independent civil cause of action for an institutional violation.  *See* 18 Pa. C.S. §

2811.  Accordingly, Count 1 of the Complaint labeled "hazing" should be dismissed to the extent it purports to assert an independent statutory cause of action.

Instead, Counts 1 and 6 both appear to assert a claim for negligence *per se* based on Bucknell's purported violation of the Anti-Hazing Law.  A negligence *per se* claim is derivative of and dependent on the alleged statutory violation.  *See Deitrick v. Costa,* No. 4:06-CV-01556, 2015 WL 1606714 (M.D. Pa. Apr. 9, 2015) ("Negligence *per se* is not a distinct cause of action but rather an evidentiary presumption that a defendant's violation of a legislative or regulatory enactment constitutes proof of a breach of duty.")  The elements of duty and breach of that duty are not "automatically proven" by asserting negligence *per se*; rather, a plaintiff must demonstrate that a duty existed and that a defendant breached that duty by first "referencing the violator's action (or inaction) against the statute's words and policy."  *McCloud v. McLaughlin*, 837 A.2d 541, 544 (Pa. Super. Ct. 2003).  In other words, Plaintiff must plead facts demonstrating that Bucknell actually "violate[d] the statute or regulation" at issue to state a claim for negligence *per se*.  *Piazza v. Young*, 403 F. Supp. 3d 421, 438 (M.D. Pa. 2019). Separately, a plaintiff asserting a claim of negligence *per se* "still bears the burden of establishing causation."  *Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530, 562 (W.D. Pa. 2019).  Because Plaintiff has failed to plead a violation of the Anti-

Hazing Law or that any such violation caused the Plaintiff's injuries, Plaintiff's negligence *per se* claim should be dismissed.

As an institution of higher learning, the provision of Pennsylvania's Anti-Hazing Law relevant to Bucknell is 18 Pa. C.S. § 2805, which provides that an institution commits the offense of institutional hazing if it "intentionally, knowingly or recklessly promotes or facilitates" hazing.  The Complaint fails to establish that Bucknell had any involvement whatsoever with the alleged hazing here, never mind that it intentionally, knowingly, or recklessly promoted or facilitated it.

"Promoting or facilitating," an act, by its plain and ordinary meaning, suggests some level of affirmative action specifically designed to cause the act to occur.  For example, while not specifically defined in the Anti-Hazing Law, the phrase "promoting and facilitating" generally appears in the context of criminal accomplice or conspirator liability. 18 Pa. C.S. § 306 ("A person is an accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense, he: (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it."); 18 Pa. C.S. § 903  ("A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: . . . agrees to aid such other person or persons in the

planning or commission of such crime."); *see also In the Interest of K.M*, 134 A.3d 499 (Pa. Super. Ct. 2015) (noting that the difference between accomplice liability and conspiracy is that the latter requires an overt agreement).

Generally, to find accomplice liability, the Commonwealth must prove "concert or collusion" between the person who committed the crime and the purported accomplice. *See Commonwealth v. Potts*, 566 A.2d 287, 292 (Pa. Super. 1989) (accomplice drove murderer and victim to secluded area where the murder was committed).   Moreover, accomplice liability requires a culpable mental state with respect to the commission of the underlying crime, which is consistent with the Anti-Hazing Law's statement that the institution must act intentionally, knowingly, or recklessly. *Commonwealth v. Roebuck*, 32 A.3d 613, 621 (Pa. 2011) (finding accomplice liability where defendant helped plan the commission of a murder).   Thus,  promoting or facilitating hazing requires the alleged perpetrator to actively contribute to the commission of the crime, rather than failing to take sufficient action to prevent it.

As explained above, Bucknell in no way contributed to the hazing alleged here.  It had no involvement in the planning of the event, Plaintiff pleads no notice that KDR had engaged in hazing in over a decade, and no facts are pleaded which suggest that any actions by Bucknell contributed in any way to the independent, tortious, and criminal actions of the fraternity members.  To the

contrary, the Complaint itself establishes that hazing was prohibited at Bucknell and that students knew that they could be held responsible for violating Bucknell's disciplinary policies.  Compl. ¶ 41 (comment by fraternity member after hazing incident that we are "in deep shit").  This is the opposite of "promoting or facilitating" hazing, and there is not a single allegation in the Complaint that suggests that Bucknell acted with scienter.

        To date, only one court has rendered a decision interpreting the Anti-Hazing Law with respect to "institutional hazing" under Section 2805.  *Humphries v. Pa. State Univ.*, No. 4:20-CV-00064, 2020 U.S. Dist. LEXIS 182838, at *2 (M.D. Pa. Oct. 2, 2020) (Brann, J.).  In *Humphries*, the plaintiff was an incoming freshman player on the varsity football team at Penn State.  The plaintiff alleged that he was hazed by other members of his class as an initiation into the football team and that coaches and staff not only knew of the ongoing hazing, but actually contributed to it.  Specifically, Humphries alleged that he reported the hazing to coaching staff and the coaching staff knew the hazing was happening in real time, as they subsequently observed the hazing taking place.  *Id.* at *6.  Not only did the coaches take "no substantive action," to stop the hazing while it was happening, but the staff affirmatively retaliated against the plaintiff for reporting the hazing. *Id.*  Humphries pleaded that the coaches scrutinized his performance more harshly after he reported the hazing, forced him to participate in drills designed for him to

fail, and then reduced his playing time.  *Id.* at *6-*7.  Eventually, Humphries quit

the team and transferred to a different school as a result of the alleged hazing.  *Id.*

at *7.

Unlike the facts here, Penn State's alleged active involvement in the

hazing in *Humphries* could reasonably be said to have allowed the hazing to occur,

since Penn State knew about the hazing while it was happening and failed to take

action to stop it.  Penn State employees thus allegedly had actual knowledge of the

ongoing hazing, rather than a general understanding that hazing was a theoretical

possibility that might happen somewhere on campus in the future.  *Id.*  at 6-7.  The

hazing in *Humphries* was also alleged to have been an initiation into the varsity

football team at Penn State.  *Id.* at 5.  As an official, school-sponsored sport, Penn

State had direct supervisory authority over the varsity football team.  In fact, the

head football coach, an employee of Penn State, was a named defendant in that

case.  Here, Bucknell is not alleged to have any direct supervisory authority over

the actions of KDR or the Iota Chapter.  KDR and Iota Chapter are independent

entities, and Plaintiff has not pleaded any direct connection between Bucknell and

the two entities.

Bucknell could not have intentionally, knowingly or recklessly

promoted or facilitated conduct of which it had no knowledge, supervision, or

control.  If the conduct alleged here were sufficient to find a university liable under

the Anti-Hazing Law, schools would face near strict liability for failing to prevent any incidents of hazing.  That is clearly not what the Legislature intended, or it would have said so in the statute.  Because Bucknell did not violate the Anti-Hazing Law, there is no basis for inferring a duty, and the Court should dismiss the Complaint with prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendant Bucknell respectfully requests that this Court grant its motion to dismiss for failure to state claims upon which relief may be granted.

Dated:  November 24, 2020

*s/    Michael E. Baughman*
Michael E. Baughman (PA 78690)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
215.981.4000
Michael.Baughman@troutman.com

Adam R. Martin (PA 321257)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181
717.255.1155
717.238.0575
Adam.Martin@troutman.com

*Attorneys for Defendant Bucknell University*