**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN JEAN | NO. 4:20-CV-01722 |
|         Plaintiff, | |
|      v. | |
| BUCKNELL UNIVERSITY, NATIONAL FRATERNITY OF KAPPA DELTA RHO, KAPPA DELTA RHO – IOTA CHAPTER, WILLIAM C. BABCOCK, DILLON DUTTERA and NICHOLAS ZANGHETTI<br>        Defendants | |

**PLAINTIFF JOHN JEAN'S BRIEF IN OPPOSITION TO DEFENDANT DILLON
DUTTERA'S BRIEF IN SUPPORT OF HIS MOTION TO COMPEL ARBITRATION**

Plaintiff, John Jean, by and through his counsel, Freiwald Law, P.C., files this Brief in Opposition to Defendant Duttera's Brief in Support of his Motion to Compel Arbitration.

## I.    INTRODUCTION/FACTUAL BACKGROUND

This case involves the brutal and life-threatening hazing sustained by Plaintiff John Jean on the first night he pledged to see whether he would be offered membership in the Kappa Delta Rho Fraternity's Iota Chapter at Bucknell University.  Specifically, on September 10, 2020, Plaintiff was told to arrive to the fraternity house and was forced to chug hard liquor in excess.  (Doc. 1, ¶ 20, 22).  Once he was intoxicated, fraternity members, including the named Defendants, physically assaulted Plaintiff and burned him with lit cigarettes.  (Doc. 1, ¶ 32, 32).  Plaintiff attempted to leave the fraternity house numerous times, but was forced back inside by fraternity members.  (Doc. 1, ¶ 24).

Finally, in the early morning hours of September 11, 2020, Plaintiff exited the fraternity house and tried to go home.  A fellow pledge, Defendant Nicholas Zanghetti, followed Plaintiff outside and punched Plaintiff under his right eye, knocking him unconscious.  (Doc. 1, ¶ 26).

Plaintiff fell to the ground and began vomiting.  (Doc. 1, ¶ 27).  A Bucknell public safety officer witnessed Defendant Zanghetti punch Plaintiff in the face and saw Plaintiff fall to the ground.  (Doc. 1, ¶ 28).  The public safety officer called 911 and Plaintiff was transported to the closest hospital.  (Doc. 1, ¶ 28-29).

At the hospital, Plaintiff was treated for his wounds, alcohol poisoning and concussion.  (Doc. 1, ¶ 30).  Following this incident, the fraternity members were in a group chat over text message that included Plaintiff.  The fraternity members, including the named Defendants, conspired through the messages on "getting their story straight" and covering up what happened prior to meeting with Bucknell and Kappa Delta Rho officials.  (Doc. 1, ¶ 38).

Plaintiff filed this case against Defendants for negligence, negligence per se in violating the Pennsylvania law against hazing, which toughened up the criminal penalties for hazing in Pennsylvania, as well as for assault, battery, negligent infliction of emotional distress, and false imprisonment.  In response, Defendant Duttera filed a Motion to Compel Arbitration based upon an alleged contract, which Plaintiff was required to sign electronically in order to pledge the fraternity.  However, for the reasons stated in this brief, the contract is not valid or enforceable as it is procedurally and substantively unconscionable and would be against public policy to force a victim of crime, as Plaintiff is here, to submit to binding arbitration where the contract itself weighs heavily in favor of Defendants, is a contract of adhesion, and is grossly unfair to Plaintiff.

## II.   ARGUMENT

### A.  Standard of Review

Prior to enforcing an alleged agreement to arbitrate, there must be a determination as to whether the agreement is valid.  Although arbitration can be favored, the presumption in favor of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate

between the parties." *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 160 (3d Cir. 2009), *citing Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).  Before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp*., 401 F.3d 529, 532 (3d Cir. 2005); *Quiles v. Fin. Exch. Co*., 879 A.2d 281, 283 n. 3 (Pa. Super. 2005).

Pursuant to the Federal Arbitration Act ("FAA"), a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d Cir. 2018) ("Before compelling arbitration, ... courts must be satisfied that the parties have an agreement to arbitrate because 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'") (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648, (1986)).

A motion to compel arbitration is evaluated under the summary judgment standard. *Id.* at 77.  Therefore, arbitration will be compelled only if the arbitrability issue presents no genuine, material issues of fact, with "[t]he party opposing arbitration ... given the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009)).  If there are material factual disputes regarding arbitrability, the court should proceed to trial "regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders*, LLC, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)).

**B.  The alleged contract, which contains an arbitration provision, is invalid because it is procedurally and substantively unconscionable.**

"[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  In evaluating claims of unconscionability, courts generally recognize two categories, procedural, or "unfair surprise" unconscionability and substantive unconscionability. *See Ferguson v. Lakeland Mut. Ins. Co*., 596 A.2d 883, 885 (Pa. Super. 1991). "Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Bensalem Twp. v. International Surplus Lines Ins. Co*., 38 F.3d 1303, 1312 (3d Cir. 1994) (quoting *Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192, 196 (3d Cir. 1992)).

**1.  The Alleged Contract is a Contract of Adhesion, Procedurally Unconscionable, and Unenforceable.**

Contracts of adhesion are standardized form contracts presented to consumers without negotiation or any option for modification.  In *Robson v. E.M.C. Insurance*, 785 A.2d 507, 510 (Pa. Super.2001), the Superior Court defined a contract of adhesion as one "prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who has little choice about the terms."  Where the arbitration clause is contained in an adhesion contract and unfairly favors the drafting party, such clauses are unconscionable and must be deemed unenforceable. *Thibodeau v. Comcast Corp*., 912 A.2d 874 (Pa. Super 2006).  Procedural unconscionability refers specifically to "the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

In denying a motion to compel arbitration on the basis of procedural unconscionability, the Third Circuit in *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256 (3d Cir. 2003) stated that "[t]he arbitration agreement in the Hourly Employee Contract was prepared by the party with excessive bargaining power and presented to plaintiffs for signature on a take-it-or-leave-it basis." *Id.* at 266.  The court elaborated that the employer, "which conducts business throughout the nation and the world, clearly possessed more bargaining power than two long-time equipment operators with limited educational backgrounds and, at best, very narrow options for other employment." *Id.*

Similarly, here, the contract was drafted by Kappa Delta Rho and presumably its lawyers. It was presented on a "take it or leave it basis" and specifically says that completing the form is a "REQUIRED STEP".  *See* Kappa Delta Rho New Member Registration at Exhibit "A," page 1. There was no ability for Plaintiff to choose not to sign the contract.  Plaintiff also had no other options to pledge a fraternity because the bid from Kappa Delta Rho, Iota Chapter was the only one he received.

The document also states that "[t]he effective date of this Plan is March 28, 2016".  *See* Exhibit A, Section 10.  This fact points toward the contract being a contract of adhesion because it was created four and a half (4 ½) years prior to it being sent to Plaintiff.  It was not something specifically drafted for Plaintiff's consideration or drafted with the intent of allowing Plaintiff to have any say in its terms.

The parties here are on vastly unequal ground.  It was unclear that by completing this form, that Plaintiff could be waiving his rights to pursue this matter in court.  Plaintiff, the recipient of this form, is a college student and has no prior experience with lengthy documents or proposed contracts such as the one at issue.  The document on its face appears to be a "New

Member Registration" that contains twelve (12) pages of single-spaced paragraphs, not a binding arbitration contract. It is clear that the drafter of the contract, Kappa Delta Rho, had *all* of the bargaining power and Plaintiff did not have the ability to change its terms.

It is also important to consider when this agreement was signed. Although we do not have all the facts at this point because no fact discovery (other than very limited Rule 26 disclosures from some of the parties) has commenced, the alleged contract states that the form was submitted on September 8, 2020 at 8:25 pm. *See* Exhibit "A", page 1. The alleged contract later says that it applies to "Member[s]", which is defined as "any new member, pledge, initiate, existing member, alumni, or former member of the National Fraternity of Kappa Delta Rho." *See* Exhibit "A" at Section 2. G.

At the time Plaintiff allegedly submitted this agreement, he had not yet become a pledge because the pledging process did not start until September 10, 2020. Plaintiff was not a "new member" since he had not been admitted to the fraternity. He was not an "existing member," "alumni," or "former member" either. The term "initiate" is vague and is not defined in the contract. The issue of whether Plaintiff was a "member" at the time of this alleged contract, alone, is a genuine issue of material fact requiring Defendant's Motion to be denied. Alternatively, the contract is invalid as it is procedurally unconscionable and Defendant's Motion to enforce it and compel arbitration should be denied.

### 2. The Contract is Substantively Unconscionable and Unenforceable.

Substantive unconscionability looks to whether the arbitration provision "unreasonably favors the party asserting it." S*alley v. Option One Mortgage Corp*., 925 A.2d 115, 119 (Pa. 2007). Substantive unconscionability refers to contractual terms that are unreasonably or grossly

favorable to one side and to which the disfavored party does not assent. *Denlinger, Inc. v. Dendler,* 608 A.2d 1061, 1068 (Pa. Super. 1992).

The alleged contract is invalid because it is substantively and unfairly one-sided.  The following are examples of the alleged contract grossly favoring Kappa Delta Rho over Plaintiff:

- Section 2. A. in the "Definitions" Section, it states, "'AA' means any federal or state-recognized Arbitration Association or a similar, local group of arbitrators **selected by Sponsor**[1] to hear the member's claim or dispute in the area of the Chapter's location.

  ■ The "member" (Plaintiff) is not permitted to select the arbitrators, only the Sponsor is.

- Section 5. A. states "This plan may be amended **by Sponsor at any time with thirty (30) days notice.**  (emphasis added)

  ■ There is no provision allowing the "member" (Plaintiff) to amend the Plan.

- Section 5. B. states **Sponsor may amend the Rules at any time with thirty (30) days notice.** (emphasis added).

  ■ There is no provision allowing the "member" (Plaintiff) to amend the Rules.

- Section 6. states, "This Plan may be terminated by Sponsor at any time."

  ■ There is no provision allowing the "member" (Plaintiff) to terminate the Plan.

- Section 3. Initiation of the Process, Section B. states that if the member brings a claim against the fraternity and/or its members, "**the fraternity shall…select the AA.**" (emphasis added).

  ■ The "member" (Plaintiff) has no say in who the AA will be that will provide the arbitrator to hear the case and, under the contract, the arbitration is binding.

---

[1] "Sponsor" is defined in the contract as the National Fraternity of Kappa Delta Rho.  *See* Exhibit "A" at 2.B.

- Section 5 "Appointment of Arbitrator" states that the AA shall "invite a single arbitrator to serve. If there is no approval of an arbitrator through this method, the AA shall submit three (3) qualified arbitrators to each Party, and each Party shall have one (1) strike, and the remaining name shall serve as arbitrator. **In the sole discretion of the Fraternity, two (2) additional arbitrators may be selected to hear the full trial on the merits of this matter.**" (emphasis added).

   - The "member" (Plaintiff) does not get extra bites at the apple like the Fraternity does if he does not like the arbitrator selected.

Before the arbitrator even hears the case, the odds are stacked against Plaintiff in this alleged contract. The Fraternity/Sponsor ensures that it is getting an arbitrator of its choosing by solely selecting the organization that will provide the arbitrators and if the Fraternity/Sponsor is not happy with the arbitrator selected it is allowed to select two (2) additional arbitrators of its choosing to serve along with the original arbitrator. This essentially guarantees that the two arbitrators will outweigh any opinion of the original arbitrator.

The appointment of the arbitrator is crucial to ensuring a fair outcome as the arbitrator "has discretion to determine the form, amount and frequency of discovery by the Parties." *See* Exhibit "A" at Section 10. B. In addition, the arbitrator can award the costs of arbitration to be paid by "member" (Plaintiff) as part of the award to the Fraternity/Sponsor, but does not allow an award to the member of the costs. *See* Exhibit "A" at Section 31. C.

In the entirety of the twelve-page alleged contract, there are is not even one provision that weighs in favor of or benefits in a fair manner the "member" (Plaintiff). On the very face of the alleged contract, it is substantively unconscionable and should be deemed to be invalid and unenforceable.

### C. It is Against Public Policy to Force Plaintiff, a Victim of Crime, to Arbitrate His Claims, Especially Under the Terms of this Agreement.

Forcing arbitration in this case would be forcing a crime victim to arbitrate his claims

with the perpetrator of the crime. Hazing, assault, and false imprisonment are crimes under Pennsylvania law. Hazing, assault and false imprisonment, by their very definitions, are crimes that Plaintiff did not consent to or have a choice in and were committed by, among others, Defendant Duttera. The alleged contract notes that it applies to claims "arising out of…participation in Fraternity activities of a member by the Fraternity." *See* Exhibit "A" at Section 9. Yet, it cannot be said that Plaintiff "participated" in hazing, being assaulted or falsely imprisoned.[2] At the very least, it raises a genuine issue of material fact requiring the denial of Defendant's Motion.

Hazing is a matter of public concern. To force this matter to arbitration would essentially make the proceedings confidential. *See* Exhibit "A" at Section 12, which states that "[t]he arbitrator shall maintain the privacy of the hearings…" It is to the public's benefit to have cases involving hazing in the public forum so that changes can be made to make fraternities safer in the future. If all hazing claims were forced into a secret arbitration, there would be no motivation for fraternities to make their chapters safer and prevent hazing. It is through civil lawsuits, like this one, that fraternities can be incentivized to change in their policies and practices that can prevent others from being victimized, hurt, or killed in the future.

Moreover, the alleged contract states that "[t]he arbitrator(s) shall be the sole judge of relevance, materiality and admissibility of the evidence offered. **Conformity to legal rules shall not be necessary.**" *See* Exhibit "A" Section 18, Evidence. (emphasis added). To force Plaintiff to arbitration, under these terms, with a biased arbitrator, would be extremely prejudicial.

---

[2] This is another reason why the Court should deny Defendant's Motion because "the particular dispute does not fall within the scope of the agreement," as required as a condition precedent to compelling arbitration according to Third Circuit and Pennsylvania law. *Trippe Mfg. Co. v. Niles Audio Corp*., 401 F.3d 529, 532 (3d Cir. 2005); *Quiles v. Fin. Exch. Co*., 879 A.2d 281, 283 n. 3 (Pa. Super. 2005).

Here, Plaintiff would not get a fair arbitrator, would be limited in the evidence he can present, would be forced into a proceeding that would be conducted under a shroud of confidentiality, would not be permitted to appeal, and would be subjected to a process in which the arbitrator would be under no obligation to conform to any legal rules regarding the evidence presented in this case.  Arbitration under the terms of this alleged contract, would deprive Plaintiff his day in court and his access to a fair, impartial decision maker to decide his case.  If arbitration is compelled at this point, it would also deprive Plaintiff of any fair process to discover the facts in his case as the alleged contract limits Plaintiff to a total of twenty (20) hours of deposition testimony, no more than twenty (20) interrogatories, requests for production, and requests for admission per side.  *See* Exhibit "A" at Section 10. B.

To force arbitration in this matter upon Plaintiff, a victim of crime, especially in the manner the alleged contract defines, gives Defendant Duttera, the perpetrator of the crimes, a profoundly one-sided advantage in the determination of this case to the unfair detriment of Plaintiff.  The fraternity, which allowed these hazing crimes and other wrongful activity, as it was foreseeable to them based on this particular fraternity chapter's past conduct as described in Plaintiff's Complaint, would also benefit to Plaintiff's severe detriment.

**D. Defendant's Motion Should be Denied Because it is Opposed by Bucknell University, a Non-Signatory, and Would Force Two Separate Adjudications of the Same Incident, Facts, and Claims.**

It would be a waste of time and resources to force this case to proceed in two different forums, with two different evidentiary standards, and, inevitably, two different outcomes.  In Plaintiff's claims against Defendant Bucknell University, the same witnesses and evidence will be discoverable and relevant as his claims against the Fraternity Defendants and individually-named Defendants.  In Plaintiff's case against Bucknell, discovery will be governed by the

Federal Rules of Civil Procedure, whereas in an arbitration against Defendant Duttera, there would be no conformity to legal rules.  In arbitration, witnesses and evidence could be barred based upon the arbitrator's sole discretion.  To compel arbitration would essentially bifurcate Plaintiff's claims in this case and require two separate proceedings and two separate discovery processes, for the same case and facts.  Therefore, for the sake of efficiency, resources and ensuring a consistent, just result, Defendant's Motion should be denied.

### III.    CONCLUSION

The Court should deny Defendant's Motion to Compel Arbitration as for the reasons above and the fact that there are genuine issues of material fact such as:

- Whether Plaintiff was a "member" as defined in the contract.

- The circumstances in which the alleged contract was presented and allegedly signed, including but not limited to when it was presented, how it was presented, any messaging or instructions provided along with the contract, how long Plaintiff had to complete it, and why Plaintiff signed the form.[3]

- Whether the contract at issue applies to the claims brought by Plaintiff as Plaintiff did not "participate" in the claims at issue.

However, if the Court does not deny Defendant's Motion to Compel Arbitration because the contract was not valid for the reasons stated in this brief, then Plaintiff respectfully requests that the Court deny Defendant's Motion as premature and allow discovery on these issues.  This case has just begun, and so there has been no discovery yet on the facts and circumstances as to how this contact was presented or allegedly signed.  Since the standard is whether a genuine

---

[3] Plaintiff does not have this information as Plaintiff believes the form may have been submitted through a website called Campus Direct run by Bucknell University and/or Kappa Delta Rho Fraternity.  Plaintiff is presently unable to access any forms or communications that had been previously received through Campus Direct, however, it is anticipated that either the University or Fraternity would have access to this information.

issue of material fact exists, and the facts have not yet been discovered, alternatively, Plaintiff

respectfully requests that the parties be permitted to take discovery on this issue.

<div align="right" style="width:55%; margin-left:45%;">

**FREIWALD LAW, P.C.**

By: _____
AARON J. FREIWALD, ESQUIRE
LAURA E. LAUGHLIN, ESQUIRE
Counsel for Plaintiff

</div>

Dated: November 25, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN JEAN | |
| Plaintiff, | NO. 4:20-CV-01722 |
| v. | |
| BUCKNELL UNIVERSITY, NATIONAL FRATERNITY OF KAPPA DELTA RHO, KAPPA DELTA RHO – IOTA CHAPTER, WILLIAM C. BABCOCK, DILLON DUTTERA and NICHOLAS ZANGHETTI | |
| Defendants | |

## <u>CERTIFICATE OF SERVICE</u>

I, Aaron J. Freiwald, Esquire, hereby certify that a copy of Plaintiff's Brief in Opposition to Defendant's Brief in Support of Motion to Compel Arbitration was served via the Court's electronic filing upon the following:

Michael E. Baughman, Esquire
Adam Martin, Esquire
Troutman Pepper
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181

Harry T. Coleman Esquire
Law Office of Harry T. Coleman
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407

Justin Tomevi, Esquire
Law Offices of Barley Snyder
100 East Market Street
York, PA 17101

Andrew Benedict Esquire
Sharon Piper, Esquire
Bardsley, Benedict & Cholden, LLP
1600 Market Street
Suite 1310
Philadelphia, PA 19103

Karin Rilley Esquire
Office of General Counsel of Bucknell University
One Dent Drive
Lewisburg, PA 17837

AARON J. FREIWALD, ESQUIRE

Dated:  November 25, 2020