IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JEAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 1:20-cv-01722-CCC |
| | : | |
| BUCKNELL UNIVERSITY; NATIONAL FRATERNITY OF KAPPA DELTA RHO; KAPPA DELTA RHO – IOTA CHAPTER; WILLIAM C. BABCOCK; DILLON DUTTERA; NICHOLAS ZANGHETTI, | : | |
| | : | |
| Defendants | : | |

**BUCKNELL'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# BUCKNELL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff's response to Bucknell's Motion to Dismiss makes clear that his case is based entirely on the theory that hazing that occurred over a decade ago obligates Bucknell to actively police the Iota Chapter of Kappa Delta Rho[1] in perpetuity. This notwithstanding that those who committed the hazing are now in their mid-thirties and Plaintiff does not plead that any hazing occurred at the fraternity since it was re-colonized at Bucknell some eight years ago. Not only is Plaintiff's theory contrary to law, if adopted by this Court, it would represent a monumental shift in liability for institutions of higher education throughout the Commonwealth of Pennsylvania. Plaintiff's theory would essentially hold colleges vicariously liable for the conduct of their students, a theory Pennsylvania courts have repeatedly rejected. This court should reject Plaintiff's request to rewrite Pennsylvania law and grant Bucknell's motion to dismiss.

## I.    ARGUMENT

Plaintiff spends the entirety of his brief discussing factors that Pennsylvania courts apply to determine in the first instance whether a duty exists; however, he ignores the fact that the legal question presented in this case is not

---

[1] The chapter of the Kappa Delta Rho National Fraternity at Bucknell is designated as the "Iota Chapter." Both the national fraternity and the individual chapter are named Defendants in this matter. For clarity, Bucknell herein refers to the national entity as "KDR" and the individual chapter as "Iota Chapter."

new. For decades, Pennsylvania courts have addressed the types of claims now raised by Plaintiff and have found that colleges and universities owe no duty to actively protect students from harm caused by other students. *See e.g., Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir. 1979); *Booker v. Lehigh Univ.*, 800 F. Supp. 234, 241 (E.D. Pa. 1992); *Fitzpatrick v. Universal Tech. Inst., Inc.*, No. 08-1137, 2010 U.S. Dist. LEXIS 83417, at *7 (E.D. Pa. Aug. 11, 2010); *Millard v. Osborne*, 611 A.2d 715, 717; 720-21 (Pa. Super. Ct. 1992). Plaintiff makes no effort to refute these cases because he cannot. Indeed, Plaintiff ignores the fact that this very Court considered and rejected the notion that Pennsylvania common law would infer a duty for schools to protect students from hazing, on facts far more egregious than those alleged here. *Humphries v. Pennsylvania State Univ.*, 2020 U.S. Dist. LEXIS 182838 at *22-*23 (M.D. Pa. Oct. 2, 2020) (Brann, J.) ("Plaintiff asks this Court to find that colleges owe their student-athletes a general duty to protect them and ensure their wellbeing, even against the tortious or criminal acts of third parties. This Court declines to do so.").

The law is clear that Bucknell owed no duty to Plaintiff. And, even if the Court were to entertain Jean's invitation to start the duty inquiry from scratch and ignore the well-established precedent that colleges and universities do not owe a general duty to protect their students from harm, Plaintiff's arguments offer no basis for rewriting Pennsylvania law.

### A.     The *Althaus* Factors Do Not Weigh in Favor of Imposing a Duty on Bucknell

Tellingly, the main case cited by Plaintiff for the proposition that Bucknell owes a duty to actively protect students from hazing by a fraternity does not actually hold that the *university* had a duty to protect the student, but rather that the fraternity who committed the act of hazing had such a duty. *Kenner v. Kappa Alpha Psi Fraternity, Inc.*, 808 A.2d 178 (Pa. Super. 2002). In relying on *Kenner*, Plaintiff assumes that there are no distinctions between Bucknell and KDR. As a matter of law, this is clearly incorrect; the KDR and Iota Chapter are each separate and distinct legal entities from Bucknell. Nonetheless, Plaintiff makes an effort to apply the factors set forth in *Althaus v. Cohen*, 756 A.2d 1166 (2000) that the *Kenner* Court applied to impose a duty on the fraternity. This analogy falls short.

The Pennsylvania Supreme Court, in *Althaus* enunciated five factors used to determine whether a party owes a duty to another: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk and foreseeability of the harm; (4) the consequences of imposing a duty; and (5) the overall public interest of imposing a duty. *Id.* at 1169. In applying these factors, Plaintiff fails to note admonitions from the Supreme Court in applying the *Althaus* factors that Courts should not lightly find a novel duty of

care. *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 222 (Pa. 2018)[2] ("Although our *Althaus* analysis applies principles well-rooted in the common law, we long have recognized that determining whether to impose a duty of care in novel circumstances can prove difficult, requiring policy judgments generally reserved for legislative action. . . . Our concern for the hazards of judicial policy-making has prompted our continuing restraint.").

Addressing the first factor, *Kenner* noted that the plaintiff "at a minimum" had a contractual relationship with the fraternity. The plaintiff in *Kenner* was in a contractual relationship with the party whom he actually accused of committing the hazing. Bucknell, by contrast, is not accused of hazing the Plaintiff. Plaintiff's interpretation of this factor would imply that contracting parties owe a heightened duty to each other, even for conduct unrelated to the contract itself. If applied as Plaintiff suggests, Bucknell would be a party to any suit brought by a student for something that happens on campus—a proposition Pennsylvania courts have repeatedly rejected. Likewise, Wal-Mart would be a party to any suit brought by a distributor. Apple would be party to suits brought by a parts supplier. Case captions would need to come in volumes if a duty were

---

[2] In *Walters*, the Supreme Court found a duty existed for a healthcare provider based on federal drug reporting regulations and its knowledge that a technician was stealing drugs meant for patients; however, it declined to impose a duty on the staffing agency that placed the technician because, in the absence of a specific regulation, a generalized duty "manifestly presents the risk that a superficially appealing duty could expand in future cases into something that confounds sound public policy and defies principled limitation." *Walters* 187 A.3d at 242.

imposed on a party merely because he had a contractual relationship with the Plaintiff unrelated to the conduct alleged.

Applying, the second *Althaus* factor, "social utility," there is little doubt that that there is great social utility in stopping hazing. That, however, is not the question. The social utility relates to "the act or omission upon which liability is asserted." *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d at 234. Here, Plaintiff alleges no overt act taken by Bucknell, but alleges that by some undefined omission, it failed to prevent the hazing. As in *Walters*, this factor overlaps significantly with the fourth factor, consequences of imposing a duty. *Id.* at 780. It has long been recognized that an institution of higher education no longer takes on an *in loco parentis* role for its students. *Alumni Ass'n v. Sullivan*, 572 A.2d 1209, 1213 (Pa. 1990) ("Clearly, in modern times, it would be inappropriate to impose an *in loco parentis* duty upon a university."). That is precisely what Plaintiff asks this court to do now. To impose a duty on Bucknell here would require it to send an employee to each and every student event to ensure that no unlawful conduct occurs or, alternatively, to forbid student gatherings wholesale. Such an imposition would not only be the role of a parent, but would make Bucknell an overbearing one as well.

Nowhere is Plaintiff's attempt at imposing a duty on Bucknell more tenuous that in his attempt to apply the third factor. Plaintiff states that the alleged

hazing was foreseeable because hazing occurred at Iota Chapter "a few years" prior to the incident alleged in Plaintiff's complaint. (Doc. 39 at 9.) Plaintiff's unique conception of time equates a "few years" to "more than a decade ago." In 2009, when the prior hazing occurred, President Obama had been sworn into his first term as President, a US Airways jet crash landed in the Hudson River, and the Nation was just emerging from the financial crises. No member of KDR who was at Bucknell in 2009 remained at Iota Chapter when the fraternity was recolonized in 2012, never mind 11 years later. Plaintiff does not plead any incidents of hazing that occurred at the chapter since it was reinstated at the University, nor does he allege that Bucknell had any reason to believe that there had been any problems with fraternity initiation in general this year, given that it had just begun when the alleged hazing occurred. Plaintiff seems to acknowledge that it "would be less reasonable to impose a duty on a university based on its knowledge of hazing generally," (Doc. 39 at 10,) but that is precisely what it suggests this court do. Plaintiff has pleaded nothing about Iota Chapter as it existed in 2020 that would have made hazing by Iota Chapter any more foreseeable than hazing by any other student organization.

   Failing in application of every other factor, Plaintiff falls back on the public interest. As noted above regarding the social utility and the consequences of imposing a duty, there is little doubt that hazing is a social ill that should be

remedied; however, the "proposed solution" in Plaintiff's case is at least of debatable public benefit. As recognized by the Pennsylvania Supreme Court in *Sullivan*, modern universities are educational institutions for young adults; they are not surrogates for an extended childhood. Plaintiff would have a university regress to the custodial role of actively policing and protecting its students. If the public interest is best served by placing universities *in loco parentis*, such is a determination for the Legislature. *Walters*, 187 A.3d at 223. As addressed *infra*, the Pennsylvania Legislature considered the issue and imposed a less onerous role upon institutions of higher learning.

### B. The Restatement Does Not Impose a Duty on Bucknell

Having failed to demonstrate a duty under *Althaus,* Plaintiff asks that this court impose a duty on Bucknell to defend students against the actions of third-parties based on application of the Restatement (Second) of Torts Sections 314, 344 and 323.

Sections 314 and 344 do not apply here. Bucknell did not "hold open" the fraternity premises "to the public" for a "business purpose." To the contrary, the fraternity house was not open to the public, but was accessible only to members of the Iota Chapter and their guests. Even so, there was no "business purpose" for which members of the public could enter the land. Accordingly, Section 314A and 344 do not apply. Even if either did apply, the Restatement does

not impose strict liability on a landowner. Instead, it provides that a duty arises if the owner "discover[s] that [negligent or harmful] acts are being done or are likely to be done." Restatement (Second) of Torts § 344 (1965); *see also* Restatement (Second of Torts) § 314A cmt. (f) ("The defendant is not required to take any action until he knows or has reason to know that the plaintiff is endangered. . . . [the defendant] is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him, or whose friends are present and apparently in a position to give him all necessary assistance."). As set forth above, for Bucknell, the only basis to conclude that hazing was likely was the single incident a decade prior.

Applying Section 323, it is well-settled under Pennsylvania law that a land owner such as Bucknell does not owe a plaintiff a duty to protect against the criminal acts of third parties solely by virtue of the owner's interest in the land. *James v. Duquesne Univ.*, 936 F. Supp. 2d 618, 632 (W.D. Pa. 2013) (citing *Feld v. Merriam*, 485 A.2d 742 (Pa. 1984).) Plaintiff suggests, however, that by enacting policies against hazing, Bucknell gratuitously assumed a duty to protect against it. This is far from the teachings of the Supreme Court in *Feld*. To the contrary, the Western District recognized that *Feld* represented a "restrictive approach" of imposing liability under Section 323. *James*, 936 F. Supp. 2d at 639. To illustrate this point, the court in *James* compared Pennsylvania cases imposing

a duty and declining to do so, *Kerns v. Methodist Hospital*, 574 A.2d 1068 (Pa. Super. 1990) and *Reider v. Martin*, 519 A.2d 507 (Pa. Super. 1987). In *Kerns*, a plaintiff was robbed on hospital grounds and argued a duty to protect him arose because the hospital gratuitously provided general security. In *Reider*, a landlord made a promise to tenants to replace a broken lock, but failed to do so. As a result of his failure, a tenant was attacked in the stairwell. The courts found a specific duty in the latter case, but not the former because the latter was an agreement to undertake a specific act, the failure of which caused the harm suffered. As this Court has recognized, a general policy is not a specific undertaking like the promise in *Reider*. *See also Humphries*, 2020 U.S. Dist. LEXIS 182838, at *20-21 ("[Plaintiff] alleges that Penn State's antihazing policy, created pursuant to the old antihazing law, as well as the school's Code of Student Conduct and its Administrative Policies, impose an assumed duty of care on Penn State and Franklin. Plaintiff cites no authority for these propositions, and the Court is not persuaded. Instead, previous courts have found that simply enacting policies does not create new duties for entities")

      If, as Plaintiff implies it should, Bucknell assigned an employee to attend the September 10-11 event for the purpose of preventing hazing, and Plaintiff still suffered harm, that might implicate Section 323. But that is not what happened.

Moreover, as noted in Bucknell's opening brief, Plaintiff has failed to plead what policies Bucknell allegedly failed to adhere to and how those policies would have prevented the alleged hazing. Simply put, a university's policy against an act that has already been deemed a crime by the state does not obligate it to take on the Commonwealth's role policing it.

C. **Bucknell Did Not Violate a Duty Imposed by the Pennsylvania Anti-Hazing Law.**

The Pennsylvania Legislature, by enacting the Anti-Hazing Law, 18 Pa. C.S. 2801, *et seq.*, prohibited an institution of higher learning, like Bucknell, from "intentionally, knowingly or recklessly promot[ing] or facilitate[ing]" an act of hazing. 18 Pa. C.S. § 2805. Plaintiff would ask this Court to instead impose some kind of strict liability on schools when hazing occurs on their campus. Had the Pennsylvania legislature desired to impose a higher burden, it could have easily done so. It could have prohibited "permitting" or "allowing" or "failing to protect against" hazing. It did not. Implicitly, the legislature recognized that to do so would create a heavy burden on universities to actively police student-lead events. Thus, the language "promoting or facilitating" was used to indicate that the university is liable only where it plays an active role in the act of hazing.

Plaintiff draws a number of parallels to this court's decision in *Humphries v. Pennsylvania State Univ.*, 2020 WL 5878709 (M.D. Pa. Oct. 2, 2020). In *Humphries*, the plaintiff not only pleaded that Penn State had actual

knowledge of the specific acts of hazing while they were happening and failed to stop them, he pleaded that the football team—a division of the university itself—and the coaches—employees of the university—participated in the hazing. Plaintiff has made no such allegations.

Plaintiff asks this court to interpret the legislature's prohibition on active participation in hazing to impose an affirmative obligation to root it out. This is not what the Anti-Hazing Law demands, and Plaintiff has stated no basis for his claim of negligence *per se*.

## II. CONCLUSION

For the foregoing reasons, Defendant Bucknell respectfully requests that this Court grant its motion to dismiss for failure to state claims upon which relief may be granted.

Dated:  December 18, 2020            *s/     Michael E. Baughman*
Michael E. Baughman (PA 78690)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
215.981.4000
Michael.Baughman@troutman.com

Adam R. Martin (PA 321257)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181
717.255.1155
717.238.0575
Adam.Martin@troutman.com

*Attorneys for Defendant Bucknell University*

# CERTIFICATE OF SERVICE

I, Adam R. Martin, hereby certify that on December 18, 2020, a true and correct copy of the foregoing was filed through the Court's Electronic Case Filing (ECF) system and the following is registered to receive electronic notification of said filing through ECF:

Aaron J. Freiwald
Laura Laughlin
Layser & Freiwald, P.C.
1500 Walnut Street -18th Floor
Philadelphia, PA 19102
215-875-8000
ajf@freiwaldlaw.com
**Counsel for Plaintiff**

Harry T. Coleman
Owen M. Coleman
Law Office of Harry T Coleman
41 N Main Street- 3rd Floor, Suite 316
Carbondale, PA 18407
570-282-7440
harry@harrycolemanlaw.com
owen@harrycolemanlaw.com
**Counsel for Defendant William C. Babcock**

Gary L. Weber
Jessica L Harlow
Mitchell Gallagher, P.C.
10 West Third Street
Williamsport, PA 17701
570-323-8404
glw@mitchellgallagher.com
jharlow@mitchellgallagher.com
**Counsel for Kappa Delta RHO-IOTA Chapter**

Andrew Read Benedict
Sharon Piper
Bardsley Benedict + Cholden, LLP
1600 Market Street, Suite 1310
Philadelphia, PA 19103
(215) 977-4133
abenedict@bbclawfirm.com
spiper@bbclawfirm.com
**Counsel for Defendant Nicholas Zanghetti**

Genevieve E. Barr
O'Donnel & Barr Law Group, LLP
11 Carlisle Street
Suite 301
Hanover, PA 17331
717-632-9580
Email: genevieve@odonnellandbarr.com

Justin A. Tomevi
Barley Snyder
100 East Market Street
York, PA 17401
717-846-8888
Email: jtomevi@barley.com

-2-

                E. Laurence Kates
                Mintzer Sarowitz Zeris Ledva & Meyers
                1500 Market Street
                Suite 4100
                Philadelphia, PA 19102
                (215) 735-7200
                Email: lkates@defensecounsel.com

                **Counsel for Defendant Dillon Duttera**

I also certify that a true and correct copy of the foregoing was served via First Class, U.S. Mail, postage prepaid, upon the following:

        National Fraternity of Kappa Delta RHO
        331 South Main Street
        Greensburg, PA 15601

                *s/    Adam R. Martin*
                Adam R. Martin

-2-