UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JEAN | : | |
| Plaintiff | : | NO: 4:20-cv-01722-MWB |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| BUCKNELL UNIVERSITY, | : | |
| NATIONAL FRATERNITY OF | : | |
| KAPPA DELTA RHO,  KAPPA | : | |
| DELTA RHO - IOTA CHAPTER, | : | |
| WILLIAM C. BABCOCK, | : | |
| DILLON DUTTERA, AND | : | |
| NICHOLAS ZAGHETTI | : | |

## BRIEF IN SUPPORT OF KAPPA DELTA RHO—IOTA CHAPTER'S MOTION TO COMPEL ARBITRATION AND STAY COURT PROCEEDINGS

MITCHELL GALLAGHER P.C.

BY:___/s/ Gary L. Weber_____
        Gary L. Weber, No.  37648
        Jessica L. Harlow, No. 208752
        Counsel for Kappa Delta Rho
        Iota Chapter
        10 West Third Street
        Williamsport PA 17701
        (570)323-8404
        (570)323-8585 Facsimile
        glw@mitchellgallagher.com

# Table of Contents

I.     Procedural History…………………………………………………………1
II.    Statement of Facts…………………………………………………………2
III.   Statement of Question Presented…………………………………5
IV.    Argument……………………………………………………………………5
       A. Standard of Review and Authority to Compel Arbitration………5
       B. Plaintiff's Express Agreement to Arbitrate………………………10
       C. The Arbitration Plan is Not Unconscionable……………………11
          1. Procedural Unconscionability…………………………………12
          2. Substantive Unconscionability………………………………17
          3. Public Policy………………………………………………………19
          4. Bucknell University is not a Signatory to the Plan…………21
       D. Stay of Proceedings……………………………………………………22

# Table of Citations

***Alexander v. Anthony Int'l L.P.,*** 341 F.3d 256, 265

(3d. Cir. 2003)…………………………………………………12, 13, 14, 17, 19

***Allied-Bruce Terminix Cos., Inc. v. Dobson,***

513 U.S. 265, 271 (1995)………………………………………………………8

***Ambridge Water Authority v. Columbia,*** 328 A.2d 498 (Pa. 1974)………8

***Bellevue Drug Co. v. Advance PCS,*** 333 F.Supp. 2d, 318, 322

(E.D. Pa. 2004)…………………………………………………………………5

***Blair v. Scott Specialty Gases***, 283 F.3d 595, 603 (3d Cir. 2002)…………7

***Brayan Const. Corp. v. Home Ins. Co.,*** 319 F.3d 622, 625

(3d. Cir. 2003)…………………………………………………………………9

***Brown v. Trueblue Inc.,*** 2012 U.S. Dist. LEXIS 52811,

2012 WL 1268644 (M.D. Pa. 2012)…………………………………………13

***Century Indem. Co. v. Certain Underwriters at Lloyd's, London,*** 584
F.3d 513, 528 (3d Cir. 2009)…………………………………………………6

***Children's Hosp. of Phila. v. Am. Arbitration Assn.,***

331 A.2d 848, 850 (Pa.Super. 1974)………………………………………8

***Commonwealth v. State Conf. of State Police Lodges of Fraternal
Order of Police,*** 489 A.2d 317, 318 (Pa. Cmwlth. 1985)…………………15

***Curtis v. Cintas Corp.,*** 229 F.Supp.3d 312, 320 (E.D. Pa. 2017)……….12

***Dambrosio v. Comcast Corp.,*** 142 Fed. Appx. 87, 90 (3d. Cir. 2005)…..8

***Dicent v. Kaplan Univ.,*** 2018 U.S. Dist. LEXIS 101508

(M.D. Pa. 2018)………………………………………………………………10

***Flightways Corp. v. Keystone Helicopter Corp.,***

331 A.2d 184, 185 (Pa. 1975)………………………………………………9

***Flintkote Co. v. Aviva PLC***, 769 F.3d 215, 220 (3d Cir. 2014)……………6

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20, 27-28 (1991).................................................20

*Griffen v. Alpha Phi Alpha Inc.,* 2007 U.S. Dist. LEXIS 14901,
2007 WL707364 (E.D. Pa. 2007)....................................5, 15-16, 19-20

*Medtronic AVE Inc., v. Advanced Cardiovascular Systems,*
247 F.3d 44, 55 (3d. Cir. 2001)..............................................5-6, 22, 24

*Medtronic AVE. Inc.* v. *Cordis Corp.,* 367 F.3d 147 (3d Cir. 2004)....9-10

*McNulty v. H&R Block, Inc.*, 843 A.2d 1267,1272 (Pa. Super. 2004)......9

*Ostroff v. Alterra Healthcare Corp.,* 433 F.Supp.2d 538, 542
(3d. Cir. 2006)............................................................5, 12, 17

*Perry v. Thomas,* 482 U.S. 483 (1987)...........................................8

*Quilloin v. Tenet HealthSystem Phila., Inc.,* 673 F.3d 221, 230
(3d. Cir. 2012)..........................................................11, 13

*Salley v. Option One Mortg. Corp.,* 925 A.2d 115, 129 (Pa. 2007)........11

*Shah v. Sanford-Brown Inst.,*
2013 Phila.Ct.Com.Pl. LEXIS 298 (Pa.Com.Pl. 2013)..................8, 9, 24

*Stateside Mach. Co. v. Alperin*, 591 F.2d 234, 240 (3d Cir. 1979)..........6

*Spinetti v. Service Corp. Intern'l.,* 324 F.3d 212, 213 (3d Cir. 2003).......6

*Thibodeau v. Comcast Corp.,* 912 A.2d 874 (Pa.Super. 2006).............13

*Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981)....................12


9 U.S.C. §2.................................................................7, 8

9 U.S.C. §3.................................................................22

42 Pa.C.S.A. §7303.......................................................7-8

42 Pa.C.S.A. §7304(a).....................................................7

42 Pa.C.S.A. §7304(d)....................................................22

73 P.S. §2260.303.........................................................10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN JEAN | : |
|    Plaintiff | : NO: 4:20-cv-01722-MWB |
| | : |
|    v. | : |
| | : JURY TRIAL DEMANDED |
| BUCKNELL UNIVERSITY, | : |
| NATIONAL FRATERNITY OF | : |
| KAPPA DELTA RHO,  KAPPA | : |
| DELTA RHO - IOTA CHAPTER, | : |
| WILLIAM C. BABCOCK, | : |
| DILLON DUTTERA, AND | : |
| NICHOLAS ZAGHETTI | : |

## BRIEF IN SUPPORT OF KAPPA DELTA RHO—IOTA CHAPTER'S MOTION TO COMPEL ARBITRATION AND STAY COURT PROCEEDINGS

## I.    PROCEDURAL HISTORY

Plaintiff John Jean commenced this action by the filing of a complaint on September 22, 2020. (Doc. 1).  Plaintiff's complaint alleges that he was injured as a result of alleged hazing at the Iota Chapter of Kappa Delta Rho (hereinafter "KDR-Iota") at Bucknell University in September 2020.

Defendants Duttera and Babcock have filed motions to compel arbitration based on an arbitration provision in The National Fraternity of Kappa Delta Rho Claim and Dispute Resolution Plan (hereinafter "Plan"). (Doc. 14 and 16).  These motions have been briefed by the parties. *See* Docs. 17-19, 21, 26-29, 36-37.

1

Defendant Bucknell University has filed a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) and a brief in support thereof. (Docs. 23 and 25).

Defendant KDR-Iota has also filed a Motion to Compel Arbitration, on the grounds that Plaintiff has agreed to submit all disputes "relating to or arising out of a membership relationship with the Fraternity or participation in a Fraternity activity…" to arbitration.

## II.   STATEMENT OF FACTS

1.    On September 8, 2020, Plaintiff received a bid to join KDR-Iota.

2.    On the aforesaid date, Plaintiff completed a New Member Registration form on the KDR website.  *See* Verification of Janet Coynette, attached to the Motion as Exhibit B.

3.    As part of his New Member Registration, Plaintiff agreed to The National Fraternity of Kappa Delta Rho Claim and Dispute Resolution Plan (hereinafter "Plan"). *See* Exhibit B.

4.    The purpose of the Plan is to provide for the quick, fair, accessible and inexpensive resolution of legal disputes between the Fraternity and the Fraternity's present and former members. The term "Fraternity" includes the National Fraternity, every student chapter, and all of their officers, directors, members and agents. The term

"member" means "any new member, pledge, initiate, existing member, alumni, or former member…"  See Exhibit B, 2.D, E.

5.    The Plan provides that the parties agree to arbitrate all disputes "relating to or arising out of a membership relationship with the Fraternity or participation in a Fraternity activity…," *See* Verification of Joseph Rosenberg, attached to the Motion as Exhibit A.

6.    The term "dispute" is defined by the Plan as a "claim, demand, or controversy to which this Plan applies, between persons bound by the Plan…" and the term "claim" is defined as "any legal or equitable claim, demand, or controversy for any personal injury, equitable relief or property damage arising out of any tort, statute (local, state or federal) or breach of contract involving the Fraternity. This includes but is not limited to any type of allegation of negligence, intentional acts, defamation, discrimination, contribution or indemnity." Exhibit B.

7.    In addition to Plaintiff, Defendants' Babcock, Duttera and Zanghetti also agreed to the Plan.

8.    Plaintiff claims he sustained damages as a result of his participation in a pledge event held by KDR-Iota on September 10, 2020.

9.    Plaintiff commenced this action on September 22, 2020 by filing a complaint. (Doc. 1)

10.   Plaintiff claims he was instructed to participate in a game with other
      pledges which consisted of passing a two-liter bottle of vodka from
      one pledge to the next, while members screamed, chanted and
      cheered. (Doc. 1, ¶¶20, 21.) Plaintiff claims he was further instructed
      to drink beer and other hard liquor, even after consuming alcohol
      during the game. According to Plaintiff's Complaint, the "hazing"
      began on the evening of September 10, 2020 and continued into the
      early morning hours of September 11, 2020. (Doc. 1, ¶¶22, 25.)

11.   Plaintiff asserted causes of action against KDR-Iota for hazing,
      negligence per se (for violation of Pennsylvania's hazing statute),
      negligence and false imprisonment. Plaintiff seeks recovery for his
      personal injuries he purportedly incurred as a result of KDR-Iota's
      conduct. (Doc. 1, ¶51).

12.   Plaintiff agreed to the Plan prior to the date the alleged conduct
      occurred.

13.   As outlined in his complaint, Plaintiff's claims arise out of a
      membership relationship with KDR-Iota (Plaintiff's status as a pledge
      of KDR-Iota) and purportedly occurred in connection with his
      participation in one or more KDR-Iota activities. (See Doc. 1, ¶¶19-
      32.) The Plan specifically includes disputes arising out of any tort and

4

state or federal statute, including claims for negligence, as well as intentional torts. Each of the causes of action asserted against KDR-Iota fall within the type of disputes covered by the Plan.

## III.   STATEMENT OF QUESTION PRESENTED

**SHOULD THE COURT COMPEL ARBITRTION IN THIS MATTER, WHERE THERE IS A VALID AGREEMENT TO ARBITRATE AND THE DISPUTE RAISED BY PLAINTIFF FALLS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT?**

*Suggested answer in the affirmative.*

## IV.   ARGUMENT

A.   <u>Standard of Review and Authority to Compel Arbitration</u>

Motions to compel arbitration are reviewed under the standard for summary judgment found in Fed. R. Civ. P. 56(c). ***Ostroff v. Alterra Healthcare Corp.,*** 433 F.Supp.2d 538, 541 (3d. Cir. 2006), *citing **Bellevue Drug Co. v. Advance PCS,*** 333 F.Supp. 2d, 318, 322 (E.D. Pa. 2004). *See also **Griffen v. Alpha Phi Alpha Inc.,*** 2007 U.S. Dist. LEXIS 14901, 2007 WL707364 (E.D. Pa. 2007).  As set forth in ***Medtronic AVE Inc., v. Advanced Cardiovascular Systems,*** 247 F.3d 44, 55 (3d. Cir. 2001):

> If the court determines that there is an agreement to arbitrate and that the issue in dispute falls within the scope of the agreement, it must submit the matter to arbitration without ruling on the merits of the case.

5

However, federal policy favors arbitration and thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration.  There is a "presumption of arbitrability." ***Stateside Mach. Co. v. Alperin***, 591 F.2d 234, 240 (3d Cir. 1979) ("doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration."). An order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

(some internal citations omitted)

To determine whether arbitration should be compelled, judicial review is limited to two threshold questions: "(1) whether there is a valid agreement to arbitrate between parties, and if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." ***Flintkote Co. v. Aviva PLC***, 769 F.3d 215, 220 (3d Cir. 2014) (*quoting **Century Indem. Co. v. Certain Underwriters at Lloyd's, London,*** 584 F.3d 513, 528 (3d Cir. 2009)).

The federal policy encouraging recourse to arbitration requires federal courts to look first to the relevant state law of contracts. ***Spinetti v. Service Corp. Intern'l.,*** 324 F.3d 212, 213 (3d Cir. 2003).  Under Pennsylvania law, the Court must look to the following: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3)

6

whether there was consideration. ***Blair v. Scott Specialty Gases***, 283 F.3d 595, 603 (3d Cir. 2002).

All of these elements are present in this case.  Plaintiff manifested his intention to be bound by the Plan by completing the New Member Registration and electronically signing his agreement to the terms of the Plan. *See* Exhibit B to Motion.  Likewise, the terms of the Plan are clear and sufficiently definite.  Finally, the consideration in this case is found by KDR-Iota's offer to Plaintiff to join the Fraternity, in consideration for his agreement to the terms of the Plan and the financial obligations of the Fraternity.

Both the Pennsylvania Uniform Arbitration Act and the Federal Arbitration Act ("FAA") provide that a party to an arbitration agreement may, upon refusal of the other party to arbitrate a dispute arising under the agreement, move to compel arbitration. *See* **42 Pa.C.S.A. §7304(a)**; **9 U.S.C. §2**.

In Pennsylvania, written agreements to arbitrate are presumptively valid, enforceable and irrevocable. *See* **42 Pa.C.S.A. §7303**:

> A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law

7

or in equity relating to the validity, enforceability or revocation of any contract.

Likewise, the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." **9 U.S.C. § 2**. Where it applies, the FAA preempts state laws that would otherwise invalidate or interfere with the enforcement of such arbitration agreements. ***Allied-Bruce Terminix Cos., Inc. v. Dobson,*** 513 U.S. 265, 271 (1995)(noting that in enacting the FAA, Congress intended courts to "enforce [arbitration] agreements into which parties had entered, and to place such agreements upon the same footing as other contracts") (internal citations omitted).

The FAA creates a strong presumption in favor of arbitration. *See* ***Dambrosio v. Comcast Corp.,*** 142 Fed. Appx. 87, 90 (3d. Cir. 2005), *citing* ***Perry v. Thomas,*** 482 U.S. 483 (1987). Likewise, the public policy of Pennsylvania is to give effect to arbitration agreements. *See* ***Shah v. Sanford-Brown Inst.,*** 2013 Phila.Ct.Com.Pl. LEXIS 298, *citing* ***Ambridge Water Authority v. Columbia,*** 328 A.2d 498 (Pa. 1974)*;* ***Children's Hosp. of Philadelphia v. Am. Arbitration Ass'n,*** 331 A.2d 848, 850 (Pa. Super. 1974).

Because of the public policy favoring arbitration, "[a]ny doubts regarding the scope of arbitral issues should be resolved in favor of arbitration. **Shah**, *supra, citing* **McNulty v. H&R Block, Inc.**, 843 A.2d 1267,1272 (Pa. Super. 2004)*. See also* **Brayan Const. Corp. v. Home Ins. Co.**, 319 F.3d 622, 625 (3d Cir. 2003) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Further, "the presumption in favor of arbitrability is particularly strong where, as here, the arbitration clause in question is broad. Indeed, the Pennsylvania Supreme Court has previously held that where a contract provides for arbitration of all claims or disputes arising out of or relating to the contract, the parties intended to submit all of their grievances to arbitration, regardless of whether the claims sounded in tort or contract." **Shah**, *supra, citing* **Flightways Corp. v. Keystone Helicopter Corp.**, 331 A.2d 184, 185 (Pa. 1975). "The Federal courts have also held that when an arbitration provision provides for arbitration of all matters "arising out of" a particular agreement, the clause is construed broadly in favor of finding that a given dispute is arbitrable. **Shah**, *supra, citing* **Medtronic AVE. Inc. v. Cordis Corp.,** 367 F.3d 147 (3d Cir. 2004) (compelling arbitration where the arbitration clause was broad and governed "any dispute, claim or

9

controversy arising from or relating to this Agreement or alleged breaches thereof").

## B. Plaintiff's Express Agreement to Arbitrate

Plaintiff's electronic signature on the Plan demonstrates his agreement to arbitrate any disputes between the Fraternity and any member "relating to or arising out of a membership relationship with the Fraternity or participation in a Fraternity activity…"[2] *See* Exhibit A to Motion. As stated above, the term "Fraternity" includes student chapters of the national Fraternity and the term "member" includes any new member or pledge. *See* Exhibit A to Motion.  KDR-Iota is a student chapter of the national fraternity of Kappa Delta Rho. *See* Exhibit A. Further, Plaintiff, by his own admission, was a pledge of KDR-Iota. (Doc 1, ¶¶18-20.) The Plan was clearly intended to address disputes such as the one brought by Plaintiff against KDR-Iota and individual officers and members of KDR-Iota.

In Opposition to Babcock and Duttera's Motions to Compel, Plaintiff argues that he did not "participate" in the hazing activities and, therefore, his claims do not fall within the Plan.  Plaintiff's argument is unavailing.  His

---

[2] As to the validity of electronic signatures, *see* **73 P.S. §2260.303.** *See also* ***Dicent v. Kaplan Univ.,*** 2018 U.S. Dist. LEXIS 101508 (M.D. Pa. 2018).  Plaintiff has not disputed that he electronically executed and agreed to the Plan, in his response to the other motions.

claims against KDR-Iota relate to his membership relationship with the fraternity, and his complaint makes it clear he was present on the night of the incident for "his first pledge class initiation," a fraternity activity. *See* Doc. 1, ¶19. Plaintiff further provides no support for his position that the term "participation" should be interpreted so narrowly. The term "participation" as used in the Plan includes no prefatory language from which a reader should or could conclude that the term "participation" was intended to mean only "voluntary" participation. Finally, looking at the definition of the term "claim", intentional torts and violations of statutes are specifically included. *See* Exhibit B, Section 2.E. Hazing is arguably an intentional tort and Plaintiff has specifically asserted a claim of negligence per se for violation of Pennsylvania's hazing statute. *See* Doc 1. Based on the plain meaning of the language in the Plan, hazing is contemplated as a claim covered by the Plan.

C. The Arbitration Plan is Not Unconscionable

Under Pennsylvania law, the burden of establishing unconscionability lies with the party seeking to invalidate a contract, including an arbitration agreement. ***Salley v. Option One Mortg. Corp.***, 925 A.2d 115, 129 (Pa. 2007). *See also* ***Quilloin v. Tenet HealthSystem Phila., Inc.,*** 673 F.3d. 221, 230 (3d. Cir. 2012)(citing ***Salley***).

11

Likewise, Pennsylvania law requires that there must be both procedural and substantive unconscionability in order to void an arbitration provision or a contract in general. *See* **Ostroff,** *supra,* at 542. "In the end, unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." **Alexander v. Anthony Int'l L.P.,** 341 F.3d 256, 265 (3d. Cir. 2003).

1. Procedural Unconscionability

A contract is procedurally unconscionable when the circumstances surrounding its formation reflect "the absence of meaningful choice on the part of one of the parties." **Witmer v. Exxon Corp**., 434 A.2d 1222, 1228 (Pa. 1981).  *See also* **Curtis v. Cintas Corp.,** 229 F.Supp.3d 312, 320 (E.D. Pa. 2017). Contracts have been found to be procedurally unconscionable when formed through oppression, unfair surprise, fraud or overwhelming economic power. **Id.**

Plaintiff argues that the contract is a contract of adhesion, and is thus procedurally unconscionable. A contract of adhesion 'is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis.' **Alexander,**

*supra* at 265. A contract, however, is "not unconscionable merely because the parties to it are unequal in bargaining position." An adhesion contract is not necessarily unenforceable. *Id.* (internal citations omitted).[3]

In **Alexander**, the arbitration agreement was contained in a contract for employment, with two long-time equipment operators who had limited educational backgrounds and very narrow options for other employment. **Alexander,** *supra* at 266. The act of choosing to join a fraternity is dissimilar to the act of being required to sign an arbitration agreement as a condition of employment. There is no overwhelming economic power asserted over the potential member and deciding not to join the fraternity would not negatively impact Plaintiff's ability to obtain an education or earn a living (as with an employment contract).

Likewise, Plaintiff is not an uneducated or unintelligent man, incapable of understanding the terms of the contract.  As noted by Plaintiff in his complaint, he made Dean's List in both high school and college, and tied his high school's record for taking the most Advanced Placement

---

[3] To the extent Plaintiff's argument relies on the case of **Thibodeau v. Comcast Corp.,** 912 A.2d 874 (Pa.Super. 2006), it should be noted that this court has held that **Thibodeau** is no longer good law. *See* **Brown v. Trueblue Inc.,** 2012 U.S. Dist. LEXIS 52811, 2012 WL 1268644 (M.D. Pa. 2012), *citing* **Quillion,** *supra.*

courses. *See* Doc. 1, ¶¶14 and 15.  Plaintiff was twenty years old at the time he agreed to the arbitration provisions. *Id.* at ¶13.  It is disingenuous to plead in the complaint Plaintiff's academic accomplishments and then argue he could not understand the clear language of the Plan.[4] The language of the Plan is clear and easy to understand. There is likewise no evidence Plaintiff contacted anyone at KDR to indicate he did not understand the terms of the Plan, or to ask whether or not certain terms could be negotiated.

Plaintiff's argument that he could not join another fraternity is not sufficient to establish any sort of procedural unconscionability.  First, there is no indication as to whether or not Plaintiff "rushed" any other fraternities. If he did not rush any other fraternity, he would not receive a bid from any other fraternity. Additionally, even if Plaintiff declined to join KDR-Iota due to the terms of the Plan, Plaintiff was not foreclosed from joining another fraternity in either the following semester or following school year.  Most

---

[4] *Cf. Alexander, supra,* wherein the plaintiffs had the equivalent of a seventh and fifth grade education, respectively. They certainly were not Dean's List students accepted to an educationally vigorous university like Bucknell.

significantly, membership in a fraternity is entirely voluntary, and plaintiff was not compelled in any way to join KDR or any other fraternity.[5]

An almost identical argument was made in the case of **Griffen v. Alpha Phi Alpha,** *supra.* In that case, a new member of a fraternity (in that case called an "aspirant") opposed the enforcement of an arbitration agreement which he signed as part of his admission into the fraternity. Like Mr. Jean, the plaintiff in **Griffen** argued that the arbitration agreement was a contract of adhesion that should not be enforced. The district court disagreed, noting:

> Though this Application bears attributes of a contract of adhesion, the Court cannot conclude, without an evidentiary hearing, whether the circumstances attendant to the formation of the contract were unconscionable. While it is clear that the Fraternity, a sizeable international organization, unilaterally prepared the Application, there is no evidence of record that the Fraternity refused to negotiate the terms of the contract, or that Mr. Griffen did not understand the contract, or that he found it unfair at the time he entered it.

> There is also no evidence of record as to whether Mr. Griffen lacked a meaningful choice of whether or not to enter the membership contract. The Court cannot say whether he did or did not have the opportunity to join another Fraternity if this provision was

---

[5] Participation in a fraternity is entirely voluntary. It is akin to joining a union, which is clearly a subject of arbitration in Pennsylvania. *See* **Commonwealth v. State Conf. of State Police Lodges of Fraternal Order of Police,** 489 A.2d 317, 318 (Pa. Cmwlth. 1985).

unacceptable to him. Furthermore, it would not be appropriate to characterize the circumstances of Mr. Griffen's decision to join Alpha Phi Alpha as similar or equivalent to the dire economic or subsistence constraints accompanying the situations where courts have found a lack of meaningful choice, and thus, an invalid contract of adhesion.

Finally, there are no procedurally unconscionable aspects apparent in the form of the arbitration clause at issue here. The arbitration clause is contained in the Membership Process Form which was placed prominently in the front of the Application, and Mr. Griffen initialed the bottom of the paragraph containing the arbitration clause, indicating that he had read and acknowledged the clause in particular.

(internal citations omitted).

While the decision in ***Griffen*** is not binding on this court, it is certainly

persuasive and addresses virtually the same arguments being presented at

this time by the Plaintiff in the case at bar.

Finally, the argument that the Plan does not apply to Plaintiff because

his "status" in the fraternity was unclear at the time he signed the

agreement is not persuasive.  The Plan is part of the New Member

Registration process, and upon completion of the same, Plaintiff became a

New Member. The heading "New Member Registration" is at the top of the

documents Plaintiff initialed along with a description of the process and the

required steps for completing the registration process.  *See* Exhibits A and

B.

16

2. <u>Substantive Unconscionability</u>

The party challenging the contract therefore must also establish "substantive unconscionability." This element refers to terms that unreasonably favor one party to which the disfavored party does not truly assent. **Alexander,** *supra* at 265.

For instance, an arbitration provision is substantively unconscionable when the clause severely restricts discovery for the weaker party, places the burden of costs on the weaker party, limits the remedies available to the weaker party, limits the period in which the weaker party may bring a claim, raises the burden of proof of claims higher than the burden of proof in a judicial forum, or provides only the stronger party with judicial recourse. **Ostroff,** *supra at 543* .

In his opposition to previously filed motions to compel, Plaintiff fails to point to the existence of any of the factors set forth in **Ostroff**.  Instead, Plaintiff only points to provisions of the Plan that permit the fraternity to choose the federal or state-recognized arbitration association. Plaintiff cites no cases where such a provision was found to be substantively unconscionable.  Plaintiff ignores, however, the provision in the Plan providing for the arbitration to be handled by a single arbitrator, *agreed upon by both parties.*  Likewise, Plaintiff's argument that the arbitration plan

or rules could be amended or terminated (with 30 days notice) is of no moment, as since the formation of the arbitration plan and rules in 2016, no such changes have been made. *See* Exhibit A.

The Plan also expressly limits the costs to be paid by Plaintiff. *See* Plan, ¶31. Plaintiff argues that the Plan is unfair because it permits the costs of arbitration to be awarded to the Fraternity, but does not allow an award of costs to Plaintiff. *See* Doc. 26, p. 8. However, this is because the costs to be incurred by Plaintiff are expressly limited by the preceding provisions, such that Plaintiff would not have any costs other than those set forth in Section 31C, as the Plan provides all other costs are to be initially borne by the Fraternity. It is difficult to understand how a Plan in which the costs incurred by the party with the purported inequitable bargaining power are limited and substantially less than the costs incurred by the party with greater bargaining power can be deemed "unconscionable."

Likewise, the limitation on discovery is similar to the limited discovery permitted in Federal Court[6] and provides for additional discovery upon good cause. The limited discovery also applies equally to all parties.

---

[6] *See e.g.* Middle District Local Rule 33.3.

Plaintiff's essential argument here is that requiring him to go to binding arbitration is unfair.  This similar argument was also addressed by the Eastern District in **Griffen,** *supra* as follows:

> Though Mr. Griffen argues that the nature of binding arbitration is in itself so restrictive as to be substantively unconscionable, this Court will not rule, inconsistent with the law in favor of private arbitration, that alternative dispute resolution is unfavorable to Mr. Griffen or in general.

> Again, while the decision in **Griffen** is not binding on this court, it is a well- reasoned decision on a similar issue by a court of concurrent jurisdiction that may be useful to the court in deciding the case at bar.

3. Public Policy

Plaintiff also argues that "as a victim of a crime[7]," forcing him to arbitration is against public policy.  At the outset, it is worth noting that while public policy considerations may be relevant, they are not dispositive in an unconscionability analysis. *See* **Alexander,** *supra* at 264.  Plaintiff is also not the first person to raise public policy considerations.  Again, this issue was considered by the Eastern District in **Griffen** as follows:

> Moreover, fraternity hazing does not present a novel issue outside the purview of what is appropriate for arbitration. Mr. Griffen argues that public policy, coupled with the nature of binding arbitration,

---

[7] From review of the publicly available dockets in Pennsylvania, there do not appear to be any criminal charges pending against any of the individual defendants.

counters the presumption of arbitrability. Substantive unconscionability can be grounded on public policy concerns, provided that the public policy is derived from law or precedent and not couched in general terms of morality. In this case, Mr. Griffen submits that based on the Pennsylvania Antihazing Statute, which criminalizes hazing, and the serious health and safety factors compelling the passage of this statute, judicial resolution and the attendant disclosure of the adjudication is necessary in order to protect the population of students and applicants to the University of Pennsylvania and the public at large.

While it is clear, as Mr. Griffen argues, that incidents of hazing are, with virtual unanimity, regarded with disdain in society, the Court will not subordinate the objectives of the FAA, and the freedom of contract, all while purporting to speak for the Pennsylvania legislature. The Court cannot infer from the mere criminality of hazing in Pennsylvania a broad, over-riding intent to prohibit private resolution of hazing incidents.

Further, the Court finds no inconsistency between the important social policies protected and advanced by Pennsylvania's Antihazing statute and enforcing agreements to arbitrate claims of hazing, because both arbitration and judicial resolution of claims focus on specific disputes between the parties involved, and both can advance broader social purposes. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 27-28 (1991) (arbitration of claims under the ADEA is not inconsistent with the statute; additionally, claims under various other antitrust and securities laws and the civil provisions of the RICO are designed to advance important public policies, but still remain appropriate for arbitration).

(some internal citations omitted).

The same analysis is appropriate in this case, and the matter should

be submitted to arbitration pursuant to the terms of the Plan.

4. <u>Bucknell University is not a signatory to the Plan</u>

Finally, Plaintiff argues that because Bucknell is opposed to participation in arbitration (Doc. 22), the motion to compel arbitration of the other parties should be denied, as it would require the case to be decided in two different forums and would produce "inevitably" different outcomes.

The claims against Bucknell (Counts one, four and six) are easily distinguishable from the claims against the national and local fraternity and the individual defendants.  Likewise, the duty analysis for the University is different than the analysis required for the remaining defendants.[8] Thus, it would not be unreasonably burdensome to bifurcate the claims against Bucknell and allow those to proceed in the Middle District action.

Finally, Plaintiff has cited no authority for the proposition that a motion to compel arbitration should be denied because there are other parties who would not participate in the arbitration.[9]  As set forth herein, if there is an agreement to arbitrate and the issue at bar falls within the scope of that

---

[8] If there is in fact such a duty, which is the subject of Bucknell's pending motion to dismiss. *See* Docs. 23 and 25.
[9] It is important to note that nowhere in Bucknell's Opposition to Babcock and Duttera's Motions to Compel does Bucknell state that it would not consider voluntarily joining in the arbitration should its Motion to Dismiss be denied, but rather argues only that Bucknell is not a party to the arbitration agreement and, therefore, cannot be compelled to arbitrate.

agreement, the matter must be sent to arbitration.  *Medtronic AVE Inc., v.*

***Advanced Cardiovascular Systems,*** *supra.* Plaintiff's case against

Bucknell, which requires a different duty analysis, can remain in Federal

Court.

D. Stay of Proceedings

KDR-Iota has also requested a stay of the proceedings pending the

determination as to whether the matter must be submitted to arbitration.

An order staying the proceedings is permitted under both the FAA and the

Pennsylvania Uniform Arbitration Act.  *See* **9 U.S.C. §3** and **42 Pa.C.S.A.**

**§7304(d).**

Defendant Babcock has also moved for a stay of the proceedings.

(Doc. 30).  In opposition thereto, Plaintiff cites concerns relating to

prejudice in the delay of discovery and possible destruction/alteration of

evidence. *See* Doc. 43.

Within Plaintiff's brief in opposition to the motion to stay (Doc. 44),

Plaintiff argues that there must be good cause to order a stay of

proceedings.  Neither **9 U.S.C. §3** or **42 Pa.C.S.A. §7304(d)** require a

showing of good cause.[10]  Rather, both of these provisions permit a stay to be granted when there is a valid agreement to arbitrate, which exists in this case.  Plaintiff also argues that other defendants do not concur in the pending motions to compel and stay.  KDR-Iota certainly concurs in the pending motions.  The verifications attached to the pending Motion, which were signed by KDR executives, certainly establish that KDR will also seek arbitration and a stay pending arbitration, once Plaintiff decides to serve KDR, and thus would also concur in the pending motions. As discussed further herein, all of the defendants in this case other than Bucknell are going to be covered by the terms of the Plan. The case against Bucknell can continue in federal court.

One of the primary purposes of arbitration is to reduce the costs associated with extensive discovery.  To permit discovery to continue while the motions to compel arbitration are pending would defeat the purposes of entering into the arbitration agreement itself.  Both the FAA and the Pennsylvania Uniform Arbitration Act recognize this, as their provisions permit a stay to be entered while the issue of arbitrability is determined.

---

[10] Of the cases cited here by Plaintiff, only one appears to deal with a stay in a case involving arbitration, and that case is by the District Court of New Jersey, and thus is not binding on this court.

Finally, vague concerns about destruction or alteration of evidence are not well founded.  All parties are now represented by counsel, who understand obligations relating to preservation of evidence and can communicate the same to their clients.  Plaintiff will not be prejudiced by the stay in discovery until the motions to compel arbitration are decided.


MITCHELL GALLAGHER P.C.


BY:   /s/ Gary L. Weber
        Gary L. Weber, No.  37648
        Jessica L. Harlow, No. 208752
        Counsel for Kappa Delta Rho
        Iota Chapter
        10 West Third Street
        Williamsport PA 17701
        (570)323-8404
        (570)323-8585 Facsimile
        glw@mitchellgallagher.com

## CERTIFICATION OF COMPLIANCE WITH MIDDLE DISTRICT LOCAL RULE 7.8(b)(2)

We, the undersigned counsel for Defendant Kappa Delta Rho-Iota Chapter, hereby certify that on January 4, 2021, the foregoing brief was written utilizing Microsoft Word, Arial font, size 14.  A word count function was performed and the foregoing brief is less than 5,000 words in compliance with Middle District Local Rule 7.8(b)(2).  Per the word count function of Microsoft Word, excluding the caption and title, the foregoing brief contains 4,996 words.

MITCHELL GALLAGHER P.C.

BY:___/s/ Gary L. Weber_____
         Gary L. Weber, No.  37648
         Jessica L. Harlow, No. 208752
         Counsel for Kappa Delta Rho
         Iota Chapter
         10 West Third Street
         Williamsport PA 17701
         (570)323-8404
         (570)323-8585 Facsimile
         glw@mitchellgallagher.com

## CERTIFICATE OF SERVICE

The foregoing document, **Defendant Kappa Delta Rho - IOTA Chapter's, Brief in Support of Motion to Compel Arbitration and Stay Court Proceedings**, has been filed electronically January 4, 2021, is being served through the Federal Court  ECF System to the following:,

Aaron J. Freiwald, Esquire
Laure E. Laughlin, Esquire
Layser & Freiwald Law PC
1500 Walnut Street, 18th Floor
Philadelphia PA 19102
**Attorney for Plaintiff**

Adam R. Martin, Esquire
Michael E. Baughman, Esquire
Troutman, Pepper, Hamilton
Sanders, LLP
100 Market Street, Site 200
PO Box 1181
Harrisburg, PA 17108
**Attorney for Defendant Bucknell University**

E. Laurence Kates, Esquire
Mintzer Sarowitz Zeris Levda &
Meyers
1500 Market Street
Suite 4100
Philadelphia PA 19102
**Attorney for Dillon Duttera**

Andrew R. Benedict, Esquire
Sharon Piper, Esquire
Bardsley, Benedict, Choldren, LLP
1600 Market Street, Suite 1310
Philadelphia, PA 19103
**Attorney for Defendant Nicholas Zanghetti**

Owen M. Coleman, Esquire
Harry T. Coleman, Esquire
Law Office of Harry Coleman
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407
**Attorney for Defendant William C. Babcock**

A true and correct copy of the foregoing was also served by U.S.

Mail, Postage Prepaid on:

National Fraternity of Kappa Delta Rho
331 South Main Street
Greenburg PA 15601

MITCHELL GALLAGHER P.C.

BY:   /s/ Gary L. Weber
        Gary L. Weber, No.  37648
        Jessica L. Harlow, No. 208752
        Counsel for Kappa Delta Rho
        Iota Chapter
        10 West Third Street
        Williamsport PA 17701
        (570)323-8404
        (570)323-8585 Facsimile
        glw@mitchellgallagher.com