# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN JEAN<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>BUCKNELL UNIVERSITY,<br>NATIONAL FRATERNITY OF<br>KAPPA DELTA RHO,<br>KAPPA DELTA RHO – IOTA<br>CHAPTER,<br>WILLIAM C. BABCOCK, DILLON<br>DUTTERA and NICHOLAS<br>ZANGHETTI<br>　　　　　　Defendants | NO. 4:20-CV-01722 |

## PLAINTIFF JOHN JEAN'S BRIEF IN OPPOSITION TO DEFENDANT KAPPA DELTA RHO-IOTA CHAPTER'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

## TABLE OF CONTENTS

I.　　INTRODUCTION/PROCEDURAL HISTORY…………………………...1

II.　　FACTUAL BACKGROUND…………………………………………....2

III.　　QUESTION PRESENTED…………………………………………………4

IV.　　ARGUMENT…………………………………………………………………4

　　　A. Standard of Review…………………………………………………...4

　　　B. Plaintiff Did Not "Expressly Agree to Arbitrate" His
　　　　 Claims...………………………………………………………………5

　　　C. The Alleged Contract, Which Contains an Arbitration Provision, is
　　　　 Invalid Because it is Procedurally and Substantively
　　　　 Unconscionable…………………………………………………………7

i

1.  The Alleged Contract is a Contract of Adhesion, Procedurally Unconscionable, and Unenforceable…....…………………………....8

2.  The Contract is Substantively Unconscionable and Unenforceable…………………………………………………13

D. It is Against Public Policy to Force Plaintiff, a Victim of Crime, to Arbitrate His Claims, Especially Under the Terms of This Agreement……………..………………………………………….18

E. Defendant's Motion Should be Denied Because it is Opposed by Bucknell University a Non-Signatory, and Would Force Two Separate Adjudications of the Same Incident, Facts, and Claims……………………………………………………………..19

F.  Defendant's Motion to Stay Should be Denied……………………..19

V.     CONCLUSION……………………………………………………20

## **TABLE OF AUTHORITIES**

### **Cases**

*ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72 (3d Cir. 2018)………………..4, 5

*Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256 (3d Cir. 2003)…………………..8, 9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)…………4, 5

*Bensalem Twp. v. International Surplus Lines Ins. Co.*, 38 F.3d 1303 (3d Cir. 1994)……………………………………………………………………...…7, 8

*Camp Ne'er Too Late, LP v. Swepi, LP*, 185 F. Supp. 3d 517 (M.D. Pa. 2016)...…6

*Denlinger, Inc. v. Dendler,* 608 A.2d 1061 (Pa. Super. 1992)………………….....13

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996)…………………..…7

*Ferguson v. Lakeland Mut. Ins. Co.*, 596 A.2d 883 (Pa. Super. 1991)…………….7

*Griffen v. Alpha Phi Alpha*, 2007 WL 707364 (E.D. Pa. Mar. 2, 2007)…………………………………………………………………..11, 12, 13, 15

*Harris v. Green Tree Financial Corp.*, 183 F.3d 173 (3d Cir. 1999)………...….8

*Johnson v. West Suburban Bank,* 225 F.3d 366 (3d. Cir. 2000)…………………..16

*Kaneff v. Del. Title Loans*, 587 F.3d 616 (3d Cir. 2009)………………………...…5

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156 (3d Cir. 2009)………4

*Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538 (E.D. Pa. 2006)………16

*Quiles v. Fin. Exch. Co.*, 879 A.2d 281 (Pa. Super. 2005)………………...……..4, 7

*Robson v. E.M.C. Insurance*, 785 A.2d 507 (Pa. Super. 2001)…………………….8

*Salley v. Option One Mortgage Corp.*, 925 A.2d 115 (Pa. 2007)………….…..13

*Somerset Consulting, LLC v. United Capital Lenders*, LLC, 832 F. Supp. 2d 474 (E.D. Pa. 2011)…………………………………………………….…………....5

*Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa. Super 2006)……………………8

*Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529 (3d Cir. 2005)……………4, 7

*Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192 (3d Cir. 1992)………7, 8

**<u>Statutes</u>**

9 U.S.C. § 3……………………………………………………………….19

18 Pa. C.S.A. § 2806……………………………………………………….6

42 Pa. C.S.A. § 7304………………………………….……………………..19

**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN JEAN<br><br>                    Plaintiff,<br><br>            v.<br><br>BUCKNELL UNIVERSITY,<br>NATIONAL FRATERNITY OF<br>KAPPA DELTA RHO,<br>KAPPA DELTA RHO – IOTA<br>CHAPTER,<br>WILLIAM C. BABCOCK, DILLON<br>DUTTERA and NICHOLAS<br>ZANGHETTI<br>                    Defendants | NO. 4:20-CV-01722 |

**PLAINTIFF JOHN JEAN'S BRIEF IN OPPOSITION TO DEFENDANT
KAPPA DELTA RHO-IOTA CHAPTER'S MOTION TO COMPEL
<u>ARBITRATION AND STAY PROCEEDINGS</u>**

Plaintiff John Jean, by and through his counsel, Freiwald Law, P.C., files

this Brief in Opposition to Defendant Kappa Delta Rho-Iota Chapter's Motion to

Compel Arbitration and Stay Proceedings.

## I.      INTRODUCTION/PROCEDURAL HISTORY

This case involves the brutal and life-threatening hazing sustained by

Plaintiff John Jean on the first night he pledged to see whether he would be offered

membership in the Kappa Delta Rho Fraternity's Iota Chapter at Bucknell

University.  Kappa Delta Rho-Iota Chapter had been previously banned from

1

Bucknell University for hazing and other bad conduct and was only allowed back to Bucknell in 2012.

Plaintiff filed this case against Defendants for negligence and negligence *per se* in violating the Pennsylvania law against hazing, which toughened up the criminal penalties for hazing in Pennsylvania, as well as for assault, battery, negligent infliction of emotional distress, and false imprisonment.  Defendants Babcock and Duttera filed Motions to Compel Arbitration based upon an alleged contract, which Plaintiff was required to sign electronically in order to pledge the fraternity.  Plaintiff has opposed these Motions.  Defendant Kappa Delta Rho-Iota Chapter has filed a Motion to Compel Arbitration and Stay the Proceedings. However, for the reasons stated in this brief, the contract is not valid or enforceable as it is procedurally and substantively unconscionable and would be against public policy to force Plaintiff, a victim of crime, to submit to binding arbitration where the contract itself weighs heavily in favor of Defendants, is a contract of adhesion, and is grossly unfair to Plaintiff.

## II.    FACTUAL BACKGROUND

### A. Plaintiff's Response to Defendant's Statement of Facts

1. Admitted.

2. Denied as stated.  By way of further answer, the Affidavit of Ms.

Coynette is a written document and speaks for itself.  Plaintiff denies the

statements made in Ms. Coynette's Affidavit.  The New Member Registration

Form states in capital letters that completing the form is "A REQUIRED STEP."

*See* New Member Registration Form at Exhibit "A," page 1.

3.  Denied.

4.  Denied.

5.  Denied.  The Verification of Joseph Rosenberg is a written document and

speaks for itself.  Plaintiff denies the statements made by Mr. Rosenberg.

6.  Denied.  The New Member Registration Form is a written document and

speaks for itself.

7.  Denied.

8.  Denied as stated.  Plaintiff's claims are in his Complaint, which is a

written document and speaks for itself.

9-11.  Admitted.

12.  Denied.  It is specifically denied that Plaintiff agreed to the Plan.

13.  Denied.

**B. Plaintiff's Statement of Facts**

Plaintiff incorporates his Statement of Facts set forth in his Opposition

to Defendant Babcock's Motion to Compel Arbitration in its entirety as if set forth

fully here. (Doc. 27).

## III.   QUESTION PRESENTED

Q. Should Defendant's Motion to Compel Arbitration and Stay Proceedings be Denied Where the Alleged Contract is Unconscionable and a Contract of Adhesion and Defendant Has Not Shown Good Cause to Stay the Proceedings?

**Suggested Answer:  Yes.**

## IV.   ARGUMENT

### A.  Standard of Review

Prior to enforcing an alleged agreement to arbitrate, there must be a determination as to whether the agreement is valid.  Although arbitration can be favored, the presumption in favor of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 160 (3d Cir. 2009).  Before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp*., 401 F.3d 529, 532 (3d Cir. 2005); *Quiles v. Fin. Exch. Co*., 879 A.2d 281, 283 n. 3 (Pa. Super. 2005).

Pursuant to the Federal Arbitration Act ("FAA"), a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d Cir. 2018) ("Before compelling arbitration, ... courts must be

satisfied that the parties have an agreement to arbitrate because 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'") (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, (1986)).

A motion to compel arbitration is evaluated under the summary judgment standard. *Id.* at 77.  Therefore, arbitration will be compelled only if the arbitrability issue presents no genuine, material issues of fact, with "[t]he party opposing arbitration ... given the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009)).  If there are material factual disputes regarding arbitrability, the court should proceed to trial "regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)).

### B.    Plaintiff Did Not "Expressly Agree to Arbitrate" His Claims

The issue is not as simple as Defendant states.  Plaintiff checking a box and typing in his initials on an electronic form does not mean that he understood or agreed to its terms.  Even if he did agree (which Plaintiff disputes), there are several ways where that alleged agreement can and should be void and that are applicable here and explained in detail below.

5

Defendant also argues about the meaning of the word "participate" in the alleged contract.  Plaintiff had previously alleged in his Opposition to Defendants Babcock and Duttera's Motions to Compel Arbitration that Plaintiff cannot be said to have "participated" in hazing, which is the activity at issue that caused Plaintiff's injuries.  Defendant quarrels with the term "participation" and argues that it should not be interpreted to mean "voluntary" participation.  Pennsylvania's Anti-Hazing Law prohibits a defense that consent of the student was obtained, which is what Defendant is arguing here.  *See* 18 Pa. C.S.A. § 2806.  Under Defendant's view, it asks the Court to compel any "member" who was forced or coerced against his will to do something allegedly covered by the Plan to be bound by arbitration.  This cannot be the case.

If "participation" does not inherently mean that the participation must be voluntary, then the term is ambiguous.  "[U]nder the rule of contra proferentem, any ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable."  *Camp Ne'er Too Late, LP v. Swepi*, *LP*, 185 F. Supp. 3d 517, 549 (M.D. Pa. 2016).

Defendant also argues that under the alleged contract's definition of "claim," Plaintiff's claims must be included and, therefore, arbitrated.  This is also false.  The alleged contract notes that it applies to claims "arising out of…participation in Fraternity activities of a member by the Fraternity."  *See* Exhibit "A" at Section 9.

6

In order for the alleged contract to apply, the member must have *participated* in Fraternity activities and be a *member* of the fraternity.  There are genuine issues of material fact as to whether Plaintiff was a "member" as defined in the alleged contract.  Additionally, Plaintiff did not "participate" in hazing, being assaulted or falsely imprisoned.[1]  The genuine issues of material fact require Defendant's Motion to be denied.

### C.   The Alleged Contract, Which Contains an Arbitration Provision, is Invalid Because it is Procedurally and Substantively Unconscionable.

"[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  In evaluating claims of unconscionability, courts generally recognize two categories, procedural, or "unfair surprise" unconscionability and substantive unconscionability. *See Ferguson v. Lakeland Mut. Ins. Co*., 596 A.2d 883, 885 (Pa. Super. 1991).  "Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Bensalem Twp. v.*

---

[1] The Court should deny Defendant's Motion because "the particular dispute does not fall within the scope of the agreement," as required as a condition precedent to compelling arbitration according to Third Circuit and Pennsylvania law.  *Trippe Mfg. Co. v. Niles Audio Corp*., 401 F.3d 529, 532 (3d Cir. 2005); *Quiles v. Fin. Exch. Co*., 879 A.2d 281, 283 n. 3 (Pa. Super. 2005).

*International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 (3d Cir. 1994) (quoting

*Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192, 196 (3d Cir. 1992)).

### 1. The Alleged Contract is a Contract of Adhesion, Procedurally Unconscionable, and Unenforceable.

Contracts of adhesion are standardized form contracts presented to

consumers without negotiation or any option for modification.  In *Robson v.*

*E.M.C. Insurance*, 785 A.2d 507, 510 (Pa. Super. 2001), the Superior Court

defined a contract of adhesion as one "prepared by one party, to be signed by the

party in a weaker position, [usually] a consumer, who has little choice about the

terms."  Where the arbitration clause is contained in an adhesion contract and

unfairly favors the drafting party, such clauses are unconscionable and must be

deemed unenforceable. *Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa. Super

2006).  Procedural unconscionability refers specifically to "the process by which

an agreement is reached and the form of an agreement, including the use therein of

fine print and convoluted or unclear language." *Harris v. Green Tree Financial*

*Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

In denying a motion to compel arbitration on the basis of procedural

unconscionability, the Third Circuit in *Alexander v. Anthony Int'l, L.P.,* 341 F.3d

256 (3d Cir. 2003) stated that "[t]he arbitration agreement in the Hourly Employee

Contract was prepared by the party with excessive bargaining power and presented

to plaintiffs for signature on a take-it-or-leave-it basis." *Id.* at 266.  The court

8

elaborated that the employer, "which conducts business throughout the nation and the world, clearly possessed more bargaining power than two long-time equipment operators with limited educational backgrounds and, at best, very narrow options for other employment." *Id.*

Similarly, here, the contract was drafted by Kappa Delta Rho and presumably its lawyers.  It was presented on a "take it or leave it basis" and specifically says that completing the form is a "REQUIRED STEP".  *See* Kappa Delta Rho New Member Registration at Exhibit "A," page 1.  There was no ability for Plaintiff to choose not to sign the contract.  Plaintiff also had no other options to pledge a fraternity because the bid from Kappa Delta Rho, Iota Chapter was the only one he received.  Even though Defendant argues that membership in a fraternity is not a dire circumstance like an employment scenario, the fact that this was Plaintiff's only option to potentially gain admission to a fraternity still deserves consideration.

The document also states that "[t]he effective date of this Plan is March 28, 2016".  *See* Exhibit A, Section 10.  This fact points toward the contract being a contract of adhesion because it was created four and a half (4 ½) years prior to it being sent to Plaintiff.  It was not something specifically drafted for Plaintiff's consideration or drafted with the intent of allowing Plaintiff to have any say in its terms.

9

The parties here are on vastly unequal ground.  Plaintiff is a college student and has no prior experience with lengthy documents or proposed contracts such as the one at issue.  Defendant argues that Plaintiff was twenty (20) years old and on the Dean's List so he should have understood the document.  However, doing well in high school or college courses does not equal the ability to understand a lengthy legal document, which was specifically drafted to benefit the Fraternity.

The document on its face appears to be a "New Member Registration" that contains twelve (12) pages of single-spaced paragraphs, not a binding arbitration contract.  It is clear that the drafter of the contract, Kappa Delta Rho, had *all* of the bargaining power and Plaintiff did not have the ability to change its terms.  Defendant argues that Plaintiff never contacted Joseph Rosenberg, the Executive Director of the National Fraternity of Kappa Delta Rho to inquire about changing the terms of the alleged contract.  *See* Def. Br. at 14, referencing Exhibit "A" to Defendant's Motion at paragraph 11.

There is nowhere in the alleged contract that Plaintiff was informed of his ability to alter the terms.  It also does not or suggest that he could contact Mr. Rosenberg to inquire about changing the terms.  The document states at the beginning that "THIS IS A REQUIRED STEP," which implies that completing this form is required and is not negotiable.

It is also important to consider when this agreement was signed. Although we do not have all the facts at this point because no fact discovery (other than very limited Rule 26 disclosures from some of the parties) has commenced, the alleged contract states that the form was submitted on September 8, 2020 at 8:25 pm. *See* Exhibit "A", page 1. The alleged contract later says that it applies to "Member[s]", which is defined as "any new member, pledge, initiate, existing member, alumni, or former member of the National Fraternity of Kappa Delta Rho." *See* Exhibit "A" at Section 2. G.

At the time Plaintiff allegedly submitted this agreement, he had not yet become a pledge because the pledging process did not start until September 10, 2020. Plaintiff was not a "new member" since he had not been admitted to the fraternity. He was not an "existing member," "alumni," or "former member" either. The term "initiate" is vague and is not defined in the contract. The issue of whether Plaintiff was a "member" at the time of this alleged contract, alone, is a genuine issue of material fact requiring Defendant's Motion to be denied. Alternatively, the contract is invalid as it is procedurally unconscionable and Defendant's Motion to enforce it and compel arbitration should be denied.

Defendant cites to *Griffen v. Alpha Phi Alpha*, 2007 WL 707364 (E.D. Pa. Mar. 2, 2007), to try to persuade this Court to compel Plaintiff to arbitrate his claims. *Griffen* is an unreported case from a different jurisdiction and is non-

binding, but Plaintiff acknowledges that, in general, unreported cases from a different jurisdiction can be persuasive authority.  However, the *Griffen* case is so dissimilar to the facts here that it should be disregarded.

The only similarity between *Griffen* and here is that *Griffen* involved a plaintiff, who was injured by fraternity members, and the fraternity moved to compel arbitration.  Ultimately, the Eastern District Court compelled Griffen to arbitrate his claims, but the underlying facts of *Griffen* are so different that the same outcome cannot be reached here.

The alleged contract in *Griffen* was one (1) page and contained four (4) paragraphs.  *Id.* at *1.  Here, the alleged contract is twelve (12) pages, with thirty-three (33) different sections, with multiple paragraphs contained within most sections.  In *Griffen*, there was one specific paragraph out of the four paragraphs that specifically explained that Griffen's claims would be arbitrated.  In that paragraph, it was written three (3) times that the claims would be referred to binding arbitration under the Federal Arbitration Act.  *Id.* at *2.

In compelling Griffen to arbitrate his claims, the court highlighted facts present in that case that weighed in favor of compelling arbitration.  The court stated that "[t]he arbitration clause is contained in the Membership Process Form *which was placed prominently in the front of the application.*"  *Id.* at 6. (emphasis

added).  The Court also noted that Griffen initialed the specific arbitration paragraph, acknowledging he understood that single paragraph.  *Id.*

Although at first glance it may appear that *Griffen* is persuasive, upon comparing the facts and circumstances of Griffen to the facts present here, *Griffen* should not be considered in deciding whether Plaintiff should be compelled to arbitrate his claims.[2]

### 2.  The Contract is Substantively Unconscionable and Unenforceable.

Substantive unconscionability looks to whether the arbitration provision "unreasonably favors the party asserting it." *Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 119 (Pa. 2007).  Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. *Denlinger, Inc. v. Dendler,* 608 A.2d 1061, 1068 (Pa. Super. 1992).

The alleged contract is invalid because it is substantively and unfairly one-sided.  The following are examples of the alleged contract grossly favoring Defendant over Plaintiff:

- Section 2. A. in the "Definitions" Section, it states, "'AA' means any federal or state-recognized Arbitration Association or a similar, local group of

---

[2] Plaintiff also challenges any arbitration clause in the alleged contract and incorporates his Sur-Reply Briefs to Defendants Babcock and Duttera's Motions to Compel Arbitration in their entirety as if fully set forth here.  (Doc. 36; Doc. 37).

arbitrators **selected by Sponsor**[3] to hear the member's claim or dispute in the area of the Chapter's location.

- The "member" (Plaintiff) is not permitted to select the arbitrators, only the Sponsor is.

- Section 5. A. states "This plan may be amended **by Sponsor at any time with thirty (30) days notice.**  (emphasis added)

  - There is no provision allowing the "member" (Plaintiff) to amend the Plan.

- Section 5. B. states **Sponsor may amend the Rules at any time with thirty (30) days notice.** (emphasis added).

  - There is no provision allowing the "member" (Plaintiff) to amend the Rules.

- Section 6. states, "This Plan may be terminated by Sponsor at any time."

  - There is no provision allowing the "member" (Plaintiff) to terminate the Plan.

- Section 3. Initiation of the Process, Section B. states that if the member brings a claim against the fraternity and/or its members, "**the fraternity shall…select the AA.**"  (emphasis added).

  - The "member" (Plaintiff) has no say in who the AA will be that will provide the arbitrator to hear the case and, under the contract, the arbitration is binding.

- Section 5 "Appointment of Arbitrator" states that the AA shall "invite a single arbitrator to serve.  If there is no approval of an arbitrator through this method, the AA shall submit three (3) qualified arbitrators to each Party, and each Party shall have one (1) strike, and the remaining name shall serve as arbitrator.  **In the sole discretion of the Fraternity, two (2) additional**

---

[3] "Sponsor" is defined in the contract as the National Fraternity of Kappa Delta Rho.  *See* Exhibit "A" at 2.B.

**arbitrators may be selected to hear the full trial on the merits of this matter.**" (emphasis added).

- ▪ The "member" (Plaintiff) does not get extra bites at the apple like the Fraternity does if he does not like the arbitrator selected.

Before the arbitrator even hears the case, the odds are stacked against Plaintiff in this alleged contract. The Fraternity/Sponsor ensures that it is getting an arbitrator of its choosing by solely selecting the organization that will provide the arbitrators and if the Fraternity/Sponsor is not happy with the arbitrator selected it is allowed to select two (2) additional arbitrators of its choosing to serve along with the original arbitrator. This essentially guarantees that the two arbitrators will outweigh any opinion of the original arbitrator.

The appointment of the arbitrator is crucial to ensuring a fair outcome as the arbitrator "has discretion to determine the form, amount and frequency of discovery by the Parties." *See* Exhibit "A" at Section 10. B. In the entirety of the alleged contract, there are is not even one provision that weighs in favor of or benefits in a fair manner the "member" (Plaintiff).

Defendant attempts to hang its hat on the *Griffen* case again and argues that the alleged contract here is not substantively unconscionable, but the *Griffen* contract is distinguishable. In *Griffen*, the court noted that the arbitration clause "does not restrict discovery," has "no limitation of remedies" and "does not 'create an arbitration procedure that favors one party over another.'" *Id.* at *6. As

explained above, the alleged contract at issue here restricts discovery, limits Plaintiff's remedies and strongly favors the fraternity over Plaintiff.

Defendant also argues that in Plaintiff's Opposition to Defendants Duttera and Babcock's Motions to Compel Arbitration, that Plaintiff does not "point to the existence of any of the factors set forth in *Ostroff*." Def. Br. at 17. There is no requirement for Plaintiff to solely argue the factors considered in *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538 (E.D. Pa. 2006). *Ostroff* is a case out of the Eastern District and is non-binding, nonetheless, applying the factors of *Ostroff*, still results in a finding of unconscionability. *Ostroff* says that "numerous factors may make an arbitration provision substantively unconscionable, including severe restrictions on discovery, high arbitration costs borne by one party, limitations on remedies, and curtailed judicial review." *Id.* at 543. *Ostroff* then states that, "[e]ssentially, an arbitration provision is substantively unconscionable if it 'create[s] an arbitration procedure that favors one party over another." *Id., citing Johnson v. West Suburban Bank,* 225 F.3d 366, 378 n.5 (3d. Cir. 2000).

Defendant states that, here, the limitations on discovery are similar to what is afforded in Federal Court and that the parties could request additional discovery from the arbitrator upon a showing of good cause. This is an oversimplification. In reality, the odds are stacked against Plaintiff from the outset by the arbitrator and AA that are biased in favor of Defendant. In this Court, the case is controlled

by a Federal Judge, who is unbiased and undertakes an oath to decide the matter fairly and pursuant to the law.  This is a stark contrast to the alleged contract, which states that "[c]onformity to legal rules shall not be necessary."  *See* Exhibit "A" at Section 18. A.

There are genuine issues of material fact as to the "high arbitration costs borne by one party" factor.  In the alleged contract, the fees are contained in Section 31.  *See* Exhibit "A."  The fees the "member" is required to pay is listed as $100 if the parties go to non-binding mediation, but $1,000 for arbitration if it is initiated by the member.  The alleged contract says that the National Fraternity shall pay all other fees for mediation or arbitration, but there is no further information as to what the additional fees are.  Without this information it is impossible to assess whether the fees for the member is "high" or fair.  Although it is clear that an award of costs is only allowed for the Fraternity, there is no recourse for the member to get his fees from Defendant if he is successful.

The factors "limitation on remedies" and "curtail of judicial review" also weigh in favor of substantive unconscionability.  There is no provision in the alleged contract for judicial review of the award or arbitration proceedings. Section 30. D. states, "Parties to these Rules shall be deemed to have consented that judgment upon the award of the arbitrator may be entered and enforced in any federal or state court having jurisdiction of the Parties."  *See* Exhibit "A."  The

17

alleged contract also states that "[t]hese proceedings and any judicial review of awards under these Rules shall be governed by The Act." This would prevent a court from applying binding law and Federal Rules of Civil Procedure and Evidence, and instead would be forced to apply rules that have been established by an Arbitration Association, which has been chosen solely at the discretion of the Fraternity. *Id.* at Section 33.

### D. It is Against Public Policy to Force Plaintiff, a Victim of Crime, to Arbitrate His Claims, Especially Under the Terms of this Agreement.

Forcing arbitration in this case would be forcing a crime victim to arbitrate his claims with the perpetrators of the crime. Hazing, assault, and false imprisonment are crimes under Pennsylvania law. Hazing, assault and false imprisonment, by their very definitions, are crimes that Plaintiff did not consent to or have a choice in and were committed by the members of Defendant Kappa Delta Rho-Iota Chapter. Defendant argues that Plaintiff is not a victim of crime because there are no pending criminal charges related to Plaintiff being hazed. The failure to currently have criminal charges pending does not exclude Plaintiff from being a crime victim. Nonetheless, under the facts here, it is inappropriate to compel Plaintiff to arbitration. Plaintiff fully incorporates Section II C of his Brief in Opposition to Defendant Babcock's Motion to Compel Arbitration as if fully set forth here. *See* Doc. 27.

### E. Defendant's Motion Should be Denied Because it is Opposed by Bucknell University, a Non-Signatory, and Would Force Two Separate Adjudications of the Same Incident, Facts, and Claims.

Defendant Bucknell filed an Opposition to Defendants Babcock and Duttera's Motions to Compel Arbitration.  It is speculation for Defendant to state that Defendant Bucknell would willingly agree to arbitrate Plaintiff's claims if Bucknell's Motion to Dismiss is denied, especially when Bucknell has not stated or suggested that.  Plaintiff fully incorporates Section II D of his Brief in Opposition to Defendant Babcock's Motion to Compel Arbitration as if fully set forth here. *See* Doc. 27.

### F. Defendant's Motion to Stay Should be Denied.

Defendant argues that 9 U.S.C. § 3 does not require good cause for a stay of proceedings.  However, Section 3 only applies *after* "being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement…"  There is no reason to stay the proceedings in this District when it has not been determined that arbitration is required since there has also not been a determination yet that there was a valid agreement to arbitrate.

Defendant also argues that 42 Pa. C.S.A. § 7304(d) requires that the pending Action must be stayed while it decides whether to compel Plaintiff to arbitrate his claims.  Subsection (a) of §7304 states that it applies to valid agreements to arbitrate.  Here, Plaintiff is challenging the validity of the alleged agreement and,

therefore, good cause must still be shown by Defendant to stay the proceedings. Defendant has failed to show good cause.  Plaintiff fully incorporates his brief in Opposition to Defendant Babcock's Motion to Stay Proceedings as if fully set forth here. *See* Doc. 44.

## V.    CONCLUSION

The Court should deny Defendant's Motion to Compel Arbitration as for the reasons above and the fact that there are genuine issues of material fact such as:

- Whether Plaintiff was a "member" as defined in the contract.

- The circumstances in which the alleged contract was presented and allegedly signed, including but not limited to when it was presented, how it was presented, any messaging or instructions provided along with the contract, how long Plaintiff had to complete it, and why Plaintiff signed the form.[4]

- Whether the contract at issue applies to the claims brought by Plaintiff as Plaintiff did not "participate" in the claims at issue.

---

[4] Plaintiff does not have this information as Plaintiff believes the form may have been submitted through a website called Campus Direct run by Bucknell University and/or Kappa Delta Rho Fraternity.  Plaintiff is presently unable to access any forms or communications that had been previously received through Campus Direct, however, it is anticipated that either the University or Fraternity would have access to this information.

However, if the Court does not deny Defendant's Motion to Compel Arbitration because the contract was not valid for the reasons stated in this brief, then Plaintiff respectfully requests that the Court deny Defendant's Motion as premature and allow discovery on these issues.

**FREIWALD LAW, P.C.**

By: _____
AARON J. FREIWALD, ESQUIRE
LAURA E. LAUGHLIN, ESQUIRE
Counsel for Plaintiff

Dated:        January 19, 2021

## <u>CERTIFICATE OF WORD COUNT</u>

I, Aaron J. Freiwald, certify that the Brief in Opposition to Defendant Kappa Delta Rho-Iota Chapter's Motion to Compel Arbitration and Stay Proceedings complies with the word count limit set forth in Local Rule 7.8.  The word count as counted by the Microsoft Word word-processing program used to prepare this brief states that the brief contains 4,574 words.

_____
Aaron J. Freiwald

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN JEAN<br><br>               Plaintiff,<br><br>       v.<br><br>BUCKNELL UNIVERSITY,<br>NATIONAL FRATERNITY OF<br>KAPPA DELTA RHO,<br>KAPPA DELTA RHO – IOTA<br>CHAPTER,<br>WILLIAM C. BABCOCK, DILLON<br>DUTTERA and NICHOLAS<br>ZANGHETTI<br>             Defendants | NO. 4:20-CV-01722 |

## <u>CERTIFICATE OF SERVICE</u>

I, Aaron J. Freiwald, Esquire, hereby certify that a copy of Plaintiff's Brief in Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings was served via the Court's electronic filing upon the following:

| | |
|---|---|
| Michael E. Baughman, Esquire<br>Adam Martin, Esquire<br>Troutman Pepper<br>Suite 200, 100 Market Street<br>P.O. Box 1181<br>Harrisburg, PA 17108-1181 | Andrew Benedict, Esquire<br>Sharon Piper, Esquire<br>Bardsley, Benedict & Cholden, LLP<br>1600 Market Street<br>Suite 1310<br>Philadelphia, PA 19103 |
| Harry T. Coleman, Esquire<br>Law Office of Harry T. Coleman<br>41 N. Main Street<br>3rd Floor, Suite 316<br>Carbondale, PA 18407 | Karin Rilley, Esquire<br>Office of General Counsel of<br>Bucknell University<br>One Dent Drive<br>Lewisburg, PA 17837 |

E. Laurence Kates, Esquire
Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP
Centre Square, West Tower
1500 Market Street, Suite 4100
Philadelphia, PA 19102

Gary L. Weber, Esquire
Jessica L. Harlow, Esquire
Mitchell Gallagher, P.C.
10 West Third Street
Williamsport, PA 17701

 

AARON J. FREIWALD, ESQUIRE

Dated:  January 19, 2021