UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN JEAN | : |
|     Plaintiff | : NO: 4:20-cv-01722-MWB |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| BUCKNELL UNIVERSITY, NATIONAL FRATERNITY OF KAPPA DELTA RHO, KAPPA DELTA RHO - IOTA CHAPTER, WILLIAM C. BABCOCK, DILLON DUTTERA, AND NICHOLAS ZAGHETTI | : |
|     Defendants | : |

### REPLY BRIEF IN SUPPORT OF KAPPA DELTA RHO—IOTA CHAPTER'S MOTION TO COMPEL ARBITRATION AND STAY COURT PROCEEDINGS

On January 4, 2021, Kappa Delta Rho—Iota Chapter (hereinafter "KDR-Iota") filed a Motion to Compel Arbitration and Stay Court Proceedings (hereinafter "Motion"). (Doc. 46)  A brief in support of the Motion was also filed on January 4, 2021. (Doc. 47).  On January 19, 2021, Plaintiff filed a brief in opposition to the Motion.  (Doc. 48).  KDR-Iota files this reply brief in support of the Motion, pursuant to Middle District Local Rule 7.7.

**I.  Plaintiff agreed to arbitrate his claims and therefore, a valid agreement to arbitrate exists.**

Plaintiff claims the arbitration agreement is unenforceable, because he did not expressly agree to arbitrate his claims.  Plaintiff specifically argues

1

that his "checking a box and typing his initials on an electronic form does not mean that he understood or agreed to its terms" and, therefore, he did not expressly agree to arbitrate his claims. (*See* Doc. 48, p. 9.) Plaintiff provides no authority to support his position.

To the contrary, typing his initials in the box does in fact mean that Plaintiff understood the document and agreed to its terms. Plaintiff was walked through a series of steps necessary to register as a pledge, which included a clearly labeled arbitration agreement that required an e-signature (see Verification Of Janet Conyette, Doc 46-2), a process which is well recognized in the law. *See e.g.* **Dicent v. Kaplan Univ.,** 2018 U.S. Dist. LEXIS 101508 (M.D. Pa. 2018) and **Defillipis v. Dell Fin. Servs.,** 2016 U.S. Dist. LEXIS 11271, 2016 WL 394003 (M.D. Pa. 2016). As to the validity of electronic signatures, *see* **73 P.S. §2260.303**. Plaintiff does not dispute he electronically signed the agreement, only that he did not understand the agreement. Plaintiff's failure to read the agreement or educate himself on the terms before he signed the agreement, will not save him from his agreement to arbitrate. *See e.g.* **Dicent,** supra.

**II.  The Arbitration Agreement is neither procedurally, nor substantively unconscionable.**

Plaintiff claims the arbitration agreement entered into between Plaintiff and the National Fraternity of Kappa Delta Rho ("National Fraternity") is an

2

unenforceable contract of adhesion. This argument is contrary to existing law, which provides that adhesion contracts are not, in and of themselves, necessarily unenforceable. *See* **Alexander v. Anthony Int'l L.P.,** 341 F.3d 256, 265 (3d. Cir. 2003).[1]  *See also* **Salley v. Option One Mortg. Corp**., 925 A.2d 115, 127 (Pa. 2007)("merely because a contract is one of adhesion does not render it unconscionable and unenforceable as a matter of law.")

In support of his position that the contract is one of adhesion, Plaintiff argues that he was only 20 years old at the time he electronically signed the agreement and that his ability to do well in high school or college does not equate to the ability to understand a lengthy legal document. (Doc 48 at p. 14). Plaintiff's age, however, does not render the agreement unconscionable. The law deems individuals aged 18 and over capable of contracting, in addition to being capable of voting and serving in the military. Pennsylvania law expressly provides, in **23 Pa. C.S. §5101**: "Any individual 18 years of age and older shall have the right to enter into binding and legally enforceable contracts and the defense of minority shall not be available to

---

[1] Likewise, Plaintiff's citation to the case of **Thibodeau v. Comcast Corp.,** 912 A.2d 874 (Pa.Super. 2006), is inappropriate, as this Court has held that **Thibodeau** is no longer good law. *See* **Brown v. Trueblue Inc.,** 2012 U.S. Dist. LEXIS 52811, 2012 WL 1268644 (M.D. Pa. 2012), *citing* **Quilloin v. Tenet HealthSystem Phila., Inc.,** 673 F.3d. 221, 230 (3d. Cir. 2012)

3

such individuals." At age 20, Plaintiff was legally capable of entering into a contract, as well as capable of asking questions to the extent he did not understand the terms of what he was signing. Additionally, the terms of the Plan contain plain language capable of being easily understood, especially by a Dean's List student at Bucknell. See Exhibits A and B to Doc. 46.

While Plaintiff claims that standard form contracts prepared by one party are contracts of adhesion, his argument is unsupported by the law. Standard form contracts prepared by one party are permitted under the law and regularly enforced in matters that do not involve employment or essential services. See e.g. **Toro v. Fitness Int'l LLC,** 150 A.3d 968, 975 (Pa.Super. 2016):

> An exculpatory agreement involving use of a commercial facility for voluntary athletic or recreational activities is not considered a contract of adhesion because the signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services.

See also e.g. **Wellington v. Westrum Dev. Co,** 23 Pa. D. & C. 5th 353 (Pa.Com.Pl. Phila. 2011)(condominium sales agreement with arbitration clause upheld.) Here, the agreement does not involve employment or the provision of essential services, but rather the agreement to arbitrate claims in connection with voluntary membership in a social fraternity. Plaintiff was

under no compulsion to sign the agreement, despite his protestation to the Court that he was "required to sign."

Plaintiff specifically argues the contract was presented as a "required step" and that he had no ability to choose not to sign the contract and, therefore, the agreement was made on a "take it or leave it" basis. (Doc. 48 at p. 13.) Plaintiff's argument is misleading and disingenuous. Acknowledgement of the Plan is only a required step of the registration process. (See Doc. 46-2, p. 2, ¶5.) Plaintiff was not compelled to join a fraternity and, therefore, was not compelled to register as a pledge or to accept the purported "take it or leave it" arbitration agreement.

Joining a fraternity is a voluntarily association, and does not deserve the same "consideration" applied to cases involving employment agreements or agreements for essential services. The argument that "this was Plaintiff's only option to potentially gain admission to a fraternity" is not persuasive and does not justify ignoring the case law that requires this matter be sent to arbitration. Although Plaintiff claims he had no other option, it unclear whether Plaintiff "rushed" any other fraternities. Irrespective of whether he rushed any other fraternity, Plaintiff could have declined to join this fraternity, and seek membership in another fraternity in either the following semester or following school year. No one is compelled to join any student

organization. Membership in student organizations is not necessary to obtain a degree, employment, or to fulfill any other basic economic need. Moreover, as noted in Defendant's moving papers and herein, a court of concurrent jurisdiction considering this issue has previously held that membership in a fraternity *is* a proper subject of arbitration. See ***Griffen v. Alpha Phi Alpha Inc.,*** 2007 U.S. Dist. LEXIS 14901, 2007 WL 707364 (E.D. Pa. 2007).

Another main argument made in Plaintiff's opposition is that the dispute does not fall within the scope of the Plan, as Plaintiff did not "participate" in the alleged hazing. Plaintiff argues that the term "participate" is ambiguous. The term "participate" is not ambiguous, despite Plaintiff's herculean efforts to make it so. As this Court is aware, terms in contracts are to be construed in accordance with their plain and ordinary meaning. As succinctly stated by the Pennsylvania Superior Court in ***Jerome Markowitz Trust v. Markowitz,*** 71 A.3d 289, 301 (Pa.Super. 2013):

> The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used.

Merriam Webster defines "participate" as "to take part [in]".  Black's Law Dictionary defines "participate" as "to partake of; experience in common with others; to have or enjoy a part or share in common with others."  The term "participate" has an ordinary and plain meaning, is not ambiguous, and no interpretation is needed. To engage in the suggested interpretation by Plaintiff would be to modify the plain meaning of the words under the guise of interpretation, or give the term a construction in conflict with the accepted meaning of the word, both of which are prohibited under the law of contract interpretation in Pennsylvania.

Plaintiff was invited to an event held on September 10, 2020 held at an off-campus house.  He attended that event with other pledges and initiated members, as well as a gathering later held at the chapter house.  Plaintiff claims the alleged hazing occurred at these same events.  Plaintiff "took part in a common experience with others" and, therefore, he "participated" in a fraternity activity. Based on the allegations in Plaintiff's Complaint, Plaintiff's injuries arose from his "participation" in fraternity activities.  Plaintiff's claims against the Chapter, the National Fraternity, and the individual defendants are clearly within the scope of the Plan, which provides for the resolution of disputes arising out of participation in a fraternity activity. *See* Exhibit A to Doc. 46, p. 6, ¶1.

In a further attempt to avoid being bound by the Plan, Plaintiff argues there is a genuine issue of material fact as to whether he was a "member" as defined by the Plan. There is no genuine issue of material fact. Plaintiff attempts to skew the facts surrounding his membership in an effort to avoid being bound by the arbitration agreement. On page 15 of his brief (Doc. 48), Plaintiff makes the following statement:

> At the time Plaintiff allegedly submitted the agreement, he had not yet become a pledge because the pledging process did not start until September 10, 2020. Plaintiff was not a "new member" since he had not been admitted to the fraternity…[2]

Plaintiff provides no evidence for this statement. Plaintiff's statement further ignores the verification of Joseph Rosenberg, the Executive Director of Kappa Delta Rho, which is attached to the Motion as Exhibit A. Therein, Mr. Rosenberg states, in paragraph 9:

> Upon electronically submitting the member registration form, with the agreement to be bound by the Plan, the student is considered to be a new member of KDR, as the registration process is complete. The student will then be considered to be a new member or pledging member of the Fraternity.

Plaintiff's self-serving statement, which is contradicted by the verification of the Executive Director of the National Fraternity, does not

---

[2] Plaintiff also argues the term "initiate" is vague and not defined. The term initiate can be given its ordinary and plain meaning. Further, Mr. Rosenberg's verification confirms the Plaintiff was, upon completion of his registration form and agreement to the Plan, considered a new member.

create a material issue of fact. Likewise, Plaintiff's argument that the circumstances surrounding how the Plan was presented are also unavailing, as the process and the website upon which the forms can be viewed were provided by the verification of Janet Conyette, attached to the Motion as Exhibit B.

Plaintiff's also urges the Court to nullify the agreement as against public policy, because he is the victim of a crime and cannot "participate" in his own hazing. This argument is couched in a criminal statute, **18 Pa. C.S.A. §2806**, which provides that consent of the student is not a defense to criminal hazing. The purpose of the criminal statute cited by Plaintiff is to eliminate a defense to the crime of hazing. The fact that consent to hazing is not a defense to criminal hazing is irrelevant to whether a person can agree to arbitrate his claims for hazing in a civil matter. Plaintiff is attempting to superimpose the language in a criminal statute in an attempt to avoid the dispute resolution provisions to which Plaintiff agreed. *See also **Griffen**, supra* where the issue at bar was alleged hazing, and the plaintiff was bound by the terms of the arbitration agreement he had signed. Plaintiff provides no authority to support his position that the mere existence of the criminal hazing statute should render civil arbitration agreements that cover alleged hazing claims to be considered as against public policy.

Plaintiff further asks the court to ignore the ruling in *Griffen* and argues that the underlying facts in *Griffen* "are so different that the same outcome cannot be reached here." Despite this sweeping statement, the only difference in facts that Plaintiff points to is the length of the document at issue. Plaintiff argues the document in *Griffen* was one page, while the document here is twelve pages.[3] The length of the document is not a valid basis to distinguish the holding in *Griffen*. From a review of the Plan, it is clear that most of the 12 pages govern the rules to be used if an arbitration occurs. The fact that Plaintiff was agreeing to arbitration is clearly stated on the document, which states in all capital letters that it is a CLAIM AND DISPUTE RESOLUTION PLAN. *See* Exhibit A to Doc. 46, p. 6. The very first paragraph advises, in clear language, that disputes will be handled under the terms of the Plan. *Id.* The first few pages clearly outline the purpose and application of the Plan.

Plaintiff's arguments relating to the alleged substantive unconscionability of the Plan are addressed in KDR-Iota's brief (Doc. 47) and

---

[3] In Exhibit A, as printed, the Plan is 8 pages. In Exhibit B, the Plan, as printed and excluding the first page which is not the Plan, is 11 pages. In Exhibit A, the Plan is found on the first four pages, paragraphs 1-12. The remaining four pages, which contain paragraphs 1-33, contain the Rules to be used in the event an arbitration is scheduled. In Exhibit B, the Plan is found on the first four pages, and the remaining 7 pages contain the Rules.

are incorporated herein by reference. A review of the arguments raised by Plaintiff appear to be premised upon the belief that the entire arbitration process is unfair to Plaintiff, because the arbitration association is selected by the fraternity. This ignores the fact that the arbitrator is selected based upon the agreement of both parties. A similar argument was rejected by the United States District Court for the Eastern District of Pennsylvania in ***Griffen***, *supra* and should be rejected in this case as well. For all of the reasons set forth above, the Plan is neither procedurally or substantively unconscionable.

### III. Conclusion

For all the reasons set forth herein, it is requested that this Court enter an order compelling the Plaintiff to participate in arbitration as set forth in the Plan, and issue an order staying the proceedings in the Middle District while the matter proceeds to arbitration.

                    MITCHELL GALLAGHER P.C.

                    BY: /s/ Gary L. Weber
                         Gary L. Weber, No. 37648
                         Jessica L. Harlow, No. 208752
                         Counsel for Kappa Delta Rho
                         Iota Chapter
                         10 West Third Street
                         Williamsport PA 17701

        (570)323-8404  
        (570)323-8585 Facsimile  
        glw@mitchellgallagher.com