**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN JEAN | |
|       Plaintiff, | NO. 4:20-CV-01722 |
| | |
|     v. | |
| | |
| BUCKNELL UNIVERSITY, NATIONAL FRATERNITY OF KAPPA DELTA RHO, KAPPA DELTA RHO – IOTA CHAPTER, WILLIAM C. BABCOCK, DILLON DUTTERA and NICHOLAS ZANGHETTI | |
|       Defendants | |

## **FIRST AMENDED COMPLAINT – CIVIL ACTION**

Plaintiff John Jean, through his attorneys, Freiwald Law, P.C., brings this civil action and alleges the following:

### **NATURE OF THE CASE**

Plaintiff John Jean brings this action because of brutal hazing that took place on September 10-11, 2020 at the Kappa Delta Rho fraternity at Bucknell University.  On the very first night of the pledge process to become a member at Kappa Delta Rho ("KDR"), Mr. Jean was subjected to forced consumption of quantities of hard liquor sufficient to cause him severe bodily harm (in fact, he is fortunate he was not killed) and a trip to the emergency department at the local hospital.  Mr. Jean was also subjected to physical and psychological abuse, including physical assault and battery, punching and kicking all over his body and cigarette burns to his feet.

It is astonishing but true that KDR was actually banned from Bucknell in 2009 because of hazing and that KDR was also banned from Penn State University in 2014 because of hazing violations there.  Moreover, following the still-recent death of Tim Piazza from hazing at Penn

State and other, recent hazing deaths on other college campuses, it is not too much to ask: Why have they not learned their lesson?

In the days following Mr. Jean's hazing, KDR and Bucknell have engaged in conduct designed to minimize and even outright hide their unlawful behavior. Mr. Jean brings this action because he was severely injured and also to expose this reckless and dangerous hazing activity so that others will not suffer what he has endured, or worse.

## PARTIES

1.      Plaintiff John Jean, at all relevant times, was a citizen of the State of New Jersey, residing at 7 Steeple Chase Court, Bedminster, New Jersey 07921.

2.      Defendant Bucknell University is a private university located at One Dent Drive, Lewisburg, Pennsylvania 17837.

3.      Bucknell controls which fraternities are permitted to reside and operate on its campus, including Kappa Delta Rho, and has within its control the ability to regulate fraternities, to impose discipline and sanctions on fraternities and its members, and to suspend or remove fraternities from its campus.

4.      Defendant National Fraternity of Kappa Delta Rho ("KDR National") is the national organization to which Bucknell's KDR chapter is affiliated. KDR National maintains offices at 331 South Main Street, Greensburg, Pennsylvania 15601.

5.      Defendant KDR (Iota Chapter) is the Bucknell chapter of Kappa Delta Rho and maintains a main house at Fraternity Road, Lewisburg, Pennsylvania 17837. Upon information and belief, the KDR Chapter House is on Bucknell's campus and is among a row of other fraternity houses at Bucknell University.

6.     Defendant William C. Babcock is a student at Bucknell and, at all relevant times, was the president of the Bucknell "Iota Chapter" of KDR.  Mr. Babcock resides at 7 Adams Drive, Stony Point, New York 10980

7.     Defendant Dillon Duttera is a student at Bucknell and, at all relevant times, was the pledge master of Mr. Jean's pledge class at the Bucknell "Iota Chapter" of KDR.  Mr. Duttera resides at 105 Mumma Avenue, Pennsylvania 17331.

8.     Defendant Nicholas Zanghetti is a student at Bucknell and, at all relevant times, was a member of Mr. Jean's pledge class at the Bucknell "Iota Chapter" of KDR.  Mr. Zanghetti resides at 32 Giovanni Drive, Waterford, Connecticut 06385.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because of the complete diversity of citizenship of the parties.

10.     Venue in this Court is proper because at least one defendant resides within this District, 28 U.S.C. § 1391(b)(1), and because a substantial part of the events or omissions that give rise to the claims in this action occurred within this District, 28 U.S.C. § 1391(b)(2).

11.     The matter in controversy well exceeds the statutory threshold for diversity actions ($75,000) pursuant to 28 U.S.C. § 1332(a).

## FACTUAL BACKGROUND

12.     Mr. Jean is a sophomore at Bucknell University, where he is pursuing a double major in Finance and History.

13.     At all relevant times, Mr. Jean was twenty years old.

14.     Mr. Jean attended high school in New Jersey where he consistently earned a place on the Dean's List; tied the record in the school for taking the most Advanced Placement

courses; was a member of the Debate Team and the Model U.N.; and was a state champion chess player.

15.     As a freshman at Bucknell, Mr. Jean made Dean's List both semesters.

16.     Bucknell does not permit first-year students to pledge to a fraternity.

17.     In the spring of 2020, when Mr. Jean had decided to pledge to a fraternity the following semester, he inquired about a Bucknell course he believed to be a required pre-requisite for any student interested in joining a fraternity, "Fraternity 101."  In March 2020, when Mr. Jean inquired about how to sign up for the course, he was told by a school official that Bucknell no longer required the course and did not even offer it any longer.

18.     Additionally, a formal recruitment handbook was provided to students thinking about joining a Bucknell fraternity each year.  However, in the fall of 2020, the paperwork allegedly was not submitted to Bucknell on time and instead of postponing recruitment until information advising and warning of hazing or providing information about the prevention and prohibition of hazing at Bucknell could be disseminated to students, Bucknell decided to continue with fraternity recruitment without this handbook.

19.     The 2019 handbook contained information and resources detailing the rules on fraternity recruitment, pledge initiation and hazing.

20.     This decision to forego providing crucial information to students like Plaintiff was reckless and increased the risk of harm to him.

21.     It was also foreseeable to Bucknell that not providing this recruitment handbook would send a message to fraternities that hazing and pledge initiation were not going to be monitored by Bucknell as it had been in the past.

22.     In the fall of 2020, Mr. Jean submitted a bid to join the Iota Chapter of Kappa

Delta Rho through the Bucknell University "Campus Direct" website.  His bid was accepted.

23.     On September 10, 2020, Mr. Jean was told to join his pledge class, including six

other pledges, for the first pledge class initiation.  The KDR members referred to the evening as

the first of what would be several "lessons."

24.     Once gathered at the fraternity house, the pledge members, including Mr. Jean,

were instructed to play a game called "Don't Fuck Your Brother."  The game consisted of

passing a two-liter bottle of vodka from one pledge to the next, with each pledge guzzling from

the bottle in sufficient quantities that the bottle would be empty by the time it reached the last

pledge.  Mr. Jean was the third pledge to drink from the bottle and the bottle was finished by the

fifth pledge.

25.     Throughout this, KDR members screamed, chanted and cheered, which increased

the pressure on the pledges to drink.

26.     The pledges were also instructed to drink beer and other hard liquor, even after

consuming the two-liter bottle of vodka.

27.     Mr. Jean, who is only 5'4" and weighs only 130 pounds, became dangerously

inebriated.

28.     After consuming the alcohol, Mr. Jean decided he was not comfortable with the

situation and decided to leave the fraternity house and return to his dorm, but he was not

permitted to leave.

29.     The hazing that began on the evening of September 10, 2020 and continued into

the early morning hours of September 11, 2020, was led by the chapter president, Defendant

Babcock, and by the "pledge master," Defendant Duttera.

30.     Finally, Mr. Jean walked out of the fraternity house to leave.  Outside, Defendant Zanghetti confronted Mr. Jean, telling him he should not leave, and then punched him in the face, knocking Mr. Jean to the ground.

31.     Mr. Jean hit his head when he landed on the ground and began vomiting and lost consciousness.

32.     A Bucknell Safety Officer witnessed Mr. Zanghetti strike Mr. Jean and knock him to the ground and he then called 911.

33.     Mr. Jean was taken by ambulance to Evangelical Community Hospital in Lewisburg.

34.     At Evangelical Community Hospital, Mr. Jean was worked up for alcohol poisoning and a head injury/concussion.  He was kept overnight and discharged the following morning.

35.     In addition to the assault and battery by Defendant Zanghetti, Mr. Jean suffered punches and kicks to his body, resulting in extensive bruising on his face, arms, torso, legs and backside.

36.     Mr. Jean also suffered cigarette burns to his feet.

37.     KDR was banned from Bucknell in 2009 for hazing and was only allowed to return in 2012.

38.     KDR National also revoked Iota Chapter's recognition for four years.

39.     Upon Iota Chapter's return to Bucknell's campus and active status for KDR National, the Chapter was required to be dry (alcohol-free) for one year.

40.     Additionally, for the first year back on campus, the Chapter was required to have an adult living in the fraternity house to oversee the Chapter's actions.  Upon information and belief, the adult was Brad Ostermann, KDR National's Educational Leadership Instructor.

41.     KDR National has had other chapters involved in hazing-related violations, resulting in sanctions or discipline for hazing in recent years.  For example, in 2014, KDR was banned from Penn State for a period of five years following a well-publicized hazing incident.

42.     At Bucknell, there have been many fraternities that have been caught hazing Bucknell students, but Bucknell's response has recklessly allowed and encouraged fraternities and students to continue hazing pledges each year.

43.     A year prior to Plaintiff Jean being hazed, Bucknell's Tau Kappa Epsilon fraternity was found responsible for violating Bucknell's antihazing policy with hazing that included the following:

   a.   The use of shock collars on members;

   b.   throwing darts at members;

   c.   Slapping members;

   d.   Underage alcohol consumption;

   e.   Consumption of alcoholic liquids in a way that subjects the student to a risk of emotional or physical harm; and

   f.   Other activities creating a reasonable likelihood of bodily injury.

44.     In August 2018, the "Bison Chips", Bucknell's male acapella group that touts on its website its "never-ending pursuit of wine, women, and song" was found responsible for hazing, which included consumption of alcoholic liquids in a way that subjects the student to a risk of emotional or physical harm as well as underage alcohol consumption.  Bucknell

suspended the Bison Chips for two years, then would be permitted back at Bucknell again, despite this organization having just come off suspension from prior hazing incidents.

45.     In September 2017, Bucknell's Phi Gamma Delta fraternity was found responsible for hazing, which included forcing pledges to carry golf bags for existing fraternity brothers.  The punishment was a social suspension for five (5) months.

46.     The year prior, in September 2016, Bucknell's Bison Chips was found responsible for hazing, which included physical activities, underage alcohol consumption and consumption of alcoholic liquids in a way that subjects the student to a risk of emotional or physical harm.

47.     In April 2015, Bucknell's Men's and Women's Swimming and Diving Teams were found responsible for hazing, which included underage alcohol consumption and consumption of alcoholic liquids in a way that subjects the student to a risk of emotional or physical harm

48.     In addition, Bucknell's Men's Swimming Team's hazing also included instructing first year members to write and perform a "dirt" poem about an assigned senior member of the women's swimming team.

49.     Bucknell placed the Men's and Women's Swimming teams on probation for two (2) years.

50.     After the brutal and life-threatening hazing of Plaintiff Jean, Kappa Delta Rho was the sixth (6th) Greek-letter organization at Bucknell to be suspended on a temporary or permanent basis from the University in the past ten (10) years.

51.     After repeated violations of Bucknell's antihazing policy and sanctions from many of Bucknell's organizations, it was foreseeable to Bucknell that its training, prevention,

enforcement and response to hazing was insufficient and it recklessly encouraged Bucknell students to haze pledges and fellow students.

52.     In the days following the hazing of Mr. Jean and his fellow pledge class members, KDR members conspired to cover up what had happened, communicating through social media and group texts about the importance of "getting their story straight."

53.     In a group text for the KDR pledge class members, one pledge referred to conversations among KDR members to change the facts of what happened to avoid being disciplined for furnishing alcohol to under-age students, including Mr. Jean, noting, "In the interest of keeping our stories straight for the guys that weren't on that call, we were told on Thursday via a snapchat group chat to not bring our own alcohol."

54.     In another group message to the pledge class members, Defendant Duttera remarked: "I want to thank all of you for cooperating, being honest, and not fucking your brother.  We aren't totally off the hook yet but I think we're definitely chillin."

55.     Another KDR member, Jacob Kennedy, posted to the group text: "OK, guys, so I had an interview with the [Bucknell] Administration and [KDR] Nationals this morning.  A quick synopsis from my point of view as PA: no more storing alcohol in the kitchen you have to keep that shit in your rooms, no more visitors to the house, if I see someone who doesn't live in the house I'll have to tell them to leave.  Other things to note:  no drinking games we could lose our insurance coverage if we are caught, and finally no hard liquor in the house.  We are in deep shit here guys so be responsible one more strike and it could spell the end for KDR."

56.     In another group text, Defendant Duttera confessed, "Billy [Babcock] and I met with [KDR] nationals and got pretty harshly reprimanded for what's been allowed to happen in

this house.  Regardless of what you think about school policy, it's still policy.  I'll 100% admit to breaking that policy and I'm sorry about that."

57.     Defendant Bucknell, for its part, also took steps to keep the hazing matter within the campus walls and to make sure there was no adverse action taken against the students involved in the hazing and against the fraternity itself.

58.     For one thing, the Bucknell safety officer who witnessed the assault and battery on Mr. Jean did not report the matter to the local police.

59.     For another, several of the KDR members were interviewed by Natalie Brewster, Bucknell's Director of Fraternity and Sorority Affairs, but she neglected to conduct any real investigation into what happened.  As Defendant Zanghetti described in a group text his meeting with Ms. Brewster, she asked "just like what happened what'd you guys do that night and how did things start to go bad."  Defendant Zanghetti added, "yeah she's super nice and so is the guy [from KDR National, who was also at the meeting with Ms. Brewster.]

60.     Bucknell has policies against hazing, as does KDR National, but neither institution has taken steps to make sure its policies are anything but words on a page, so to speak. Neither institution, in other words, has taken meaningful steps to enforce its anti-hazing policies.

61.     The prevalence and seriousness of hazing is not new information to Defendants-statistics, insurance claims analyses, studies and reports, and widely known incidents of catastrophic injury and death have demonstrated the foreseeable risk of dangerous injury and death resulting from hazing for decades.  It is widely reported and well known among Universities and Greek organizations that at least one student has died in fraternity pledge activities every year since 1970.

62.     In the late 1980s, the Fraternity Information and Programming Group ("FIPG"), a

consortium of Greek organizations organized to coordinate their risk management strategies and to assist each other in the purchase of insurance, widely published that "fraternities and sororities were ranked by the National Association of Insurance Commissioners as the sixth worst risk for insurance companies, just behind hazardous waste disposal companies and asbestos contractors."

63.     In 1997, the National Interfraternity Council ("NIC"), then comprising 66 Greek national organizations with 5,500 chapters on 800 campuses throughout the United States and Canada, analyzed certain risks associated with Greek organizations and housing and concluded that improper fraternity oversight of alcohol was "frighteningly pervasive."  The NIC passed a Resolution encouraging "its member fraternities to pursue alcohol-free chapter facilities."

64.     NIC-member standards call for alcohol-free recruitment events and pledge programs.   Despite KDR National maintaining membership in the NIC, Defendant KDR National violated this alcohol-free policy.

65.     Due to the negligent and reckless actions of Defendants, Plaintiff was caused to and continues to suffer the following injuries:

    a.   Hazing;

    b.   Physical assault and battery;

    c.   Bruising on his face and body;

    d.   Concussion;

    e.   Forced alcohol consumption;

    f.   Severe alcohol intoxication;

    g.   Fear and anxiety;

    h.   Flashbacks;

    i.   Sensitivity to light;

j.  Memory issues;

k.  Dizziness;

l.  Stress;

m.  Panic attacks;

n.  Loss of sleep;

o.  Pain and suffering;

p.  The need for medical treatment and hospitalization;

q.  Past and future medical bills;

r.  Past and future psychological injury; and

s.  The need to finish the semester remotely.

## PLAINTIFF JOHN JEAN'S CLAIMS

### COUNT ONE:  HAZING
### Plaintiff John Jean v. Bucknell University

66.     The allegations in the preceding paragraphs are realleged and incorporated here.

67.     Defendant Bucknell sets policy for fraternities operating on its campus, as well as student conduct, including students affiliated with fraternities.

68.     Defendant Bucknell has policies against hazing but takes no meaningful or reasonable steps to enforce those policies.

69.     Defendant Bucknell assigns a faculty advisor to each fraternity – Lynn Pierson, Assistant Director for Community Affairs in the case of Bucknell's KDR chapter – but this advisor has no real role, responsibilities or authority to monitor or discipline fraternity activities.

70.     Defendant Bucknell creates a permissive campus environment for fraternity life, with excessive drinking and "partying" on a regular, even bi-weekly basis that occurs in the

open, out in the street, on campus, within full view of campus security and administration officials.

71.     Permissively allowing the underage consumption of alcohol on campus is reckless and promotes an environment of alcohol consumption that is dangerous to its students.

72.     Bucknell's laissez faire approach to underage consumption of alcohol on campus out in the open facilitates and promotes an environment where fraternities are emboldened to haze its members feeling like they will not have consequences due to Bucknell's actions or lack thereof.

73.     Defendant Bucknell knew or should have known that members of KDR's Iota Chapter would engage and did engage in hazing and that hazing can lead to catastrophic physical and psychological harm, and even, death.

74.     Bucknell cannot plead ignorance of hazing taking place within its fraternities, as the incidents of hazing at nearby schools and at Bucknell itself are well known and have been widely publicized.

75.     Indeed, Bucknell's KDR Chapter was banned from campus from 2009 to 2012 for hazing.

76.     Yet Bucknell takes no reasonable steps to educate students, to warn fraternities against engaging in dangerous, sometimes even life-threatening hazing activities.

77.     Hazing is against the law in Pennsylvania; indeed, the anti-hazing law has been toughened since the tragic fraternity hazing death of Timothy Piazza at Penn State University in 2017.  See 18 Pa.C.S. § 2801 et seq.

78.     The purpose of Pennsylvania's anti-hazing law and the social policy underlying that law, is to protect students, like Mr. Jean, from hazing and its harms.

79.     An institution that intentionally, knowingly or recklessly promotes or facilitates hazing, as Defendant Bucknell did here, is liable for damages that result from that hazing.

80.     Because of its failures to have and to enforce appropriate anti-hazing policies for campus fraternities, Defendant Bucknell is liable for the injuries and losses Plaintiff John Jean has suffered due to hazing that took place on September 10-11, 2020.

WHEREFORE, Plaintiff demands judgment against Defendant Bucknell for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

## COUNT TWO:  HAZING
### Plaintiff John Jean v. KDR National and Kappa Delta Rho, Iota Chapter

81.     The allegations in the preceding paragraphs are realleged and incorporated here.

82.     Defendants KDR National and Kappa Delta Rho Iota Chapter set policy for its members and for itself, as well as rules for the conduct of its members.

83.     Defendants KDR National and Kappa Delta Rho Iota Chapter have specific policies against hazing but they fail to take any meaningful or reasonable steps to enforce those policies.

84.     Defendants KDR National and Kappa Delta Rho Iota Chapter create a permissive environment for its members, permitting excessive drinking and "partying" on a regular, even bi-weekly basis that occurs in the open, out in the street, on campus, within full view of campus security and administration officials.

85.     Defendants KDR National and Kappa Delta Rho Iota Chapter knew or should have known that their members would engage and did engage in hazing and that hazing can lead to catastrophic physical and psychological harm, and even, death.

86.     Defendants KDR National and Kappa Delta Rho Iota Chapter cannot plead ignorance of hazing taking place at Bucknell, as the incidents of hazing at nearby schools and at Bucknell itself are well known and have been widely publicized.

87.     Indeed, Bucknell's KDR Iota Chapter was banned from campus from 2009 to 2012 for hazing.

88.     Yet KDR National and Kappa Delta Rho Iota Chapter have taken no reasonable steps to educate its members, to warn against engaging in dangerous, sometimes even life-threatening hazing activities.

89.     Hazing is against the law in Pennsylvania; indeed, the anti-hazing law has been toughened since the tragic fraternity hazing death of Timothy Piazza at Penn State University in 2017.  See 18 Pa.C.S. § 2801 et seq.

90.     The purpose of Pennsylvania's anti-hazing law and the social policy underlying that law, is to protect students, like Mr. Jean, from hazing and its harms.

91.     An institution that intentionally, knowingly or recklessly promotes or facilitates hazing, as Defendants KDR National and Kappa Delta Rho Iota Chapter did here, are liable for damages that result from that hazing.

92.     Because of their failures to have and to enforce appropriate anti-hazing policies for its members, Defendants KDR National and Kappa Delta Rho Iota Chapter are liable for the injuries and losses Plaintiff John Jean has suffered due to hazing that took place on September 10, 2020.

WHEREFORE, Plaintiff demands judgment against Defendants KDR National and Kappa Delta Rho Iota Chapter for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

## COUNT THREE:  HAZING
### Plaintiff John Jean v. William C. Babcock and Dillon Duttera

93.     The allegations in the preceding paragraphs are realleged and incorporated here.

94.     Defendants Babcock and Duttera engaged in hazing Plaintiff Jean on September 10-11, 2020.

95.     Defendants Babcock and Duttera provided hard liquor to Mr. Jean and forced him and his fellow pledge class members to drink dangerous quantities of liquor, to the point where Mr. Jean became inebriated such that his life was in serious danger.

96.     Defendants Babcock and Duttera inflicted physical and psychological harm on Mr. Jean and/or permitted physical and psychological harm to be inflicted on Mr. Jean, which included punching, kicking, hitting, coercing him to stay, and burning Mr. Jean's skin with the lit end of a cigarette.

97.     Hazing is against the law in Pennsylvania; indeed, the anti-hazing law has been toughened since the tragic fraternity hazing death of Timothy Piazza at Penn State University in 2017.  See 18 Pa.C.S. § 2801 et seq.

98.     Defendants Babcock and Duttera are liable for the injuries and losses Mr. Jean suffered as a result of hazing on September 10-11, 2020.

WHEREFORE, Plaintiff demands judgment against Defendants Babcock and Duttera for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

## COUNT FOUR:  NEGLIGENCE
### Plaintiff John Jean v. Bucknell University

99.     The allegations in the preceding paragraphs are realleged and incorporated here.

100.    Defendant Bucknell sets policy for fraternities operating on its campus, as well as student conduct, including students affiliated with fraternities.

101.    Defendant Bucknell has policies against hazing but takes no meaningful or reasonable steps to enforce those policies.

102.    Defendant Bucknell assigns a faculty advisor to each fraternity – Lynn Pierson, Assistant Director for Community Affairs in the case of Bucknell's KDR chapter – but this advisor has no real role, responsibilities or authority to monitor or discipline fraternity activities.

103.    Defendant Bucknell creates a permissive campus environment for fraternity life, with excessive drinking and "partying" on a regular, even bi-weekly basis that occurs in the open, out in the street, on campus, within full view of campus security and administration officials.

104.    Defendant Bucknell knew or should have known that members of KDR's Iota Chapter would engage and did engage in hazing and that hazing can lead to catastrophic physical and psychological harm, and even, death.

105.    Bucknell cannot plead ignorance of hazing taking place within its fraternities, as the incidents of hazing at nearby schools and at Bucknell itself are well known and have been widely publicized.

106.    Indeed, Bucknell's KDR Chapter was banned from campus from 2009 to 2012 for hazing.

107.    Yet Bucknell takes no reasonable steps to educate students, to warn fraternities against engaging in dangerous, sometimes even life-threatening hazing activities.

108.    Hazing is against the law in Pennsylvania; indeed, the anti-hazing law has been toughened since the tragic fraternity hazing death of Timothy Piazza at Penn State University in 2017.  See 18 Pa.C.S. § 2801 et seq.

109.    The purpose of Pennsylvania's anti-hazing law and the social policy underlying that law, is to protect students, like Mr. Jean, from hazing and its harms.

110.    Defendant Bucknell has a duty to protect students on campus, including Mr. Jean from hazing and its harms, especially when the hazing and mistreatment of students is foreseeable, as here.

111.    Defendant Bucknell failed:

   a.    To have and enforce appropriate and reasonable anti-hazing policies;

   b.    To educate students on the dangers of fraternity hazing;

   c.    To enforce discipline and sanctions against fraternities and their members that engage in hazing;

   d.    To properly supervise KDR members to make sure that hazing would not take place;

   e.    To have in place appropriately trained staff, administrators and advisers to assure that students would not be hazed during fraternity initiation activities;

   f.    To train its staff, including its safety officers to appropriately respond to crimes on campus and report them to the police; and

   g.    To take all other reasonable and necessary steps to prevent hazing.

112.    Because of its failures to have and to enforce appropriate anti-hazing policies for campus fraternities, Defendant Bucknell is liable for the injuries and losses Plaintiff John Jean has suffered due to hazing that took place on September 10-11, 2020.

WHEREFORE, Plaintiff demands judgment against Defendant Bucknell for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

### COUNT FIVE:  NEGLIGENCE
### Plaintiff John Jean v. KDR National and Kappa Delta Rho Iota Chapter

113.    The allegations in the preceding paragraphs are realleged and incorporated here.

114.    Defendants KDR National and Kappa Delta Rho Iota Chapter set policy for its members, as well as student conduct, including students affiliated with its fraternity chapters.

115.    Defendants KDR National and Kappa Delta Rho Iota Chapter have policies against hazing but fail to take any meaningful or reasonable steps to enforce those policies.

116.    Defendant KDR National allows the Iota Chapter to self-manage, despite knowing this particular chapter's history, as well as other KDR chapters' history of issues with alcohol and hazing violations.

117.    Defendants KDR National and Kappa Delta Rho Iota Chapter create a permissive environment for fraternity life among their members, with excessive drinking and "partying" on a regular, even bi-weekly basis that occurs in the open, out in the street, on campus, within full view of campus security and administration officials.

118.    Defendant KDR National and Kappa Delta Rho Iota Chapter knew or should have known that members of KDR's Iota Chapter would engage and did engage in hazing and that hazing can lead to catastrophic physical and psychological harm, and even, death.

119.    Defendants KDR National and Kappa Delta Rho Iota Chapter cannot plead ignorance of hazing taking place at its chapters and at the Bucknell Chapter in particular, as the incidents of hazing at nearby schools and at Bucknell itself are well known and have been widely publicized.

120.    Indeed, Bucknell's KDR Chapter was banned from campus from 2009 to 2012 for hazing.

121.    In addition, KDR National has admitted through its Vice President of Risk Management and Standards that, in the last year, there have been several issues in its fraternity chapters related to alcohol consumption and failure to follow university polices related to events and alcohol.

122.    It also admitted that in the past year, multiple KDR chapters faced sanctions and members and chapters have faced suspension.

123.    Yet KDR National and Kappa Delta Rho Iota Chapter took no reasonable steps to educate students, to warn members against engaging in dangerous, sometimes even life-threatening hazing activities.

124.    KDR National, despite allowing the Iota Chapter to self-manage, also retains the right and obligation to control the actions of the chapter.

125.    KDR National collects fees from the local chapter twice a year for KDR National to provide, in part, "Chapter advising, visits, and training."

126.    KDR National also requires KDR chapter members to pay an annual fee to National.

127.    KDR National's website has a section to upload weekly Chapter Meeting notes, which upon information and belief, are maintained by KDR National.

128.    KDR National also provides annual training to each Chapter's Consul in January.

129.    Hazing is against the law in Pennsylvania; indeed, the anti-hazing law has been toughened since the tragic fraternity hazing death of Timothy Piazza at Penn State University in 2017.  See 18 Pa.C.S. § 2801 et seq.

130.    The purpose of Pennsylvania's anti-hazing law and the social policy underlying that law, is to protect students, like Mr. Jean, from hazing and its harms.

131.    Defendants KDR National and Kappa Delta Rho Iota Chapter have a duty to protect students who participate in fraternity activities on campus, including Mr. Jean, and to protect them specifically from hazing and its harms.

132.    Defendants KDR National and Kappa Delta Rho Iota Chapter failed:

   a.    To have and enforce appropriate and reasonable anti-hazing policies;

   b.    To educate their members on the dangers of fraternity hazing;

   c.    To enforce discipline and sanctions against their members that engage in hazing;

   d.    To properly supervise KDR members to make sure that hazing would not take place;

   e.    To have in place appropriately trained staff, administrators and advisers to assure that members would not be hazed during fraternity initiation activities;

   f.    In allowing the fraternity chapter to self-manage;

   g.    To properly train its members, servants, employees and agents in fraternity-housing management, or implement alcohol-free housing or other reasonable practices to prevent hazing; and

   h.    To take all other reasonable and necessary steps to prevent hazing.

133.    Because of their failures to have and to enforce appropriate anti-hazing policies for their members, Defendants KDR National and Kappa Delta Rho Iota Chapter are liable for the injuries and losses Plaintiff John Jean has suffered due to hazing that took place on September 10-11, 2020.

WHEREFORE, Plaintiff demands judgment against Defendants KDR National and Kappa Delta Rho Iota Chapter for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

**COUNT SIX:  NEGLIGENCE PER SE**
**Plaintiff John Jean v. Defendants Bucknell University, National Fraternity of Kappa Delta Rho, Kappa Delta Rho, Iota Chapter, William C. Babcock, and Dillon Duttera**

134.  The preceding paragraphs are incorporated by reference here.

135.    Defendants' actions in hazing Plaintiff and having knowledge that Plaintiff Jean was being hazed, in failing to take all reasonable and necessary steps to prevent hazing, in failing to investigate evidence of hazing, in failing to enforce policies and procedures against hazing, and in fostering a culture at Bucknell University in which hazing was tolerated and accepted, all of these were in violation of Pennsylvania law against hazing and in particular 18 Pa.C.S. § 2801 et seq.

136.    Defendant Bucknell violated section 2804 by intentionally, knowingly and recklessly promoting violations of sections 2802 and 2803 of Pennsylvania's Antihazing statute.

137.    The conduct of Defendants constitutes negligence per se because this conduct clearly violates Pennsylvania's anti-hazing statute.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

## COUNT SEVEN:  ASSAULT AND BATTERY
**Plaintiff John Jean v. William C. Babcock, Dillon Duttera and Nicholas Zanghetti**

138.     The allegations in the preceding paragraphs are realleged and incorporated here.

139.     Defendants Babcock and Duttera engaged in hazing Plaintiff Jean on September 10-11, 2020.

140.     Defendants Babcock and Duttera provided hard liquor to Mr. Jean and forced him and his fellow pledge class members to drink dangerous quantities of liquor, to the point where Mr. Jean became inebriated such that his life was in serious danger.

141.     Defendants Babcock and Duttera inflicted physical and psychological harm on Mr. Jean and/or permitted physical and psychological harm to inflicted on Mr. Jean, which included punching, kicking, hitting, coercing him to stay, and burning Mr. Jean's skin with the lit end of a cigarette.

142.     Defendant Zanghetti punched Mr. Jean in the face, knocking him unconscious.

143.     Defendants Babcock and Duttera are liable for the injuries and losses Mr. Jean suffered as a result of hazing on September 10-11, 2020.

144.  Defendant Zanghetti is liable for the injuries and losses Mr. Jean suffered as a result of punching him on September 10-11, 2020.

WHEREFORE, Plaintiff demands judgment against Defendants Babcock, Duttera and Zanghetti for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

**COUNT EIGHT:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Plaintiff John Jean v. William C. Babcock, Dillon Duttera and Nicholas Zanghetti**

145.    The allegations in the preceding paragraphs are realleged and incorporated here.

146.    Defendants Babcock and Duttera acted negligently and recklessly in hazing Plaintiff, which caused him extreme emotional distress with physical manifestations.

147.    Defendant Zanghetti acted negligently and recklessly in punching Plaintiff, which caused him extreme emotional distress with physical manifestations.

148.    It was foreseeable that hazing and punching Plaintiff would inflict emotional distress upon Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants Babcock, Duttera and Zanghetti for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

**COUNT NINE:  FALSE IMPRISONMENT**
**Plaintiff John Jean v. KDR National, KDR Iota Chapter, William C. Babcock, Dillon Duttera and Nicholas Zanghetti**

149.    The allegations in the preceding paragraphs are realleged and incorporated here.

150.    Plaintiff John Jean attempted to leave the fraternity house on multiple occasions throughout the evening of September 10 into September 11, 2020.

151.    Defendants, with the assistance of other KDR members and pledges, prevented Plaintiff from leaving and returning home.

152.  Plaintiff remained at the fraternity house against his will due to coercion, force and threats of force and was falsely imprisoned.

WHEREFORE, Plaintiff demands judgment against Defendants KDR National, KDR Iota Chapter, Babcock, Duttera and Zanghetti for compensatory and punitive damages, as well as all costs, interest, and other relief such as the Court or a finder of fact may deem appropriate.

**FREIWALD LAW, P.C.**

By: _____

AARON J. FREIWALD, ESQUIRE
LAURA E. LAUGHLIN, ESQUIRE
Counsel for Plaintiff John Jean

Dated: <u>April 30, 2021</u>

**CERTIFICATION**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
AARON J. FREIWALD, ESQUIRE

Dated: <u>April 30, 2021</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN JEAN | |
| Plaintiff, | NO. 4:20-CV-01722 |
| v. | |
| BUCKNELL UNIVERSITY, NATIONAL FRATERNITY OF KAPPA DELTA RHO, KAPPA DELTA RHO – IOTA CHAPTER, WILLIAM C. BABCOCK, DILLON DUTTERA and NICHOLAS ZANGHETTI | |
| Defendants | |

## CERTIFICATE OF SERVICE

I, Aaron J. Freiwald, Esquire, hereby certify that a copy of Plaintiffs' First Amended

Complaint was served by electronic filing upon the following:

Amy C Foerster Esquire
Michael E. Baughman, Esquire
Adam Martin, Esquire
Troutman Pepper
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181

Andrew Benedict Esquire
Sharon Piper, Esquire
Bardsley, Benedict & Cholden, LLP
1600 Market Street
Suite 1310
Philadelphia, PA 19103

Harry T Coleman Esquire
Law Office of Harry T. Coleman
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407

Jessica L. Harlow, Esquire
Gary L. Weber, Esquire
10 West Third Street
Williamsport PA 17701

E. Laurence Kates, Esquire
Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP
Centre Square, West Tower
1500 Market Street, Suite 4100
Philadelphia, PA 19102

**FREIWALD LAW, P.C.**

By: _____
AARON J. FREIWALD, ESQUIRE
LAURA E. LAUGHLIN, ESQUIRE
Counsel for Plaintiff John Jean

Dated: April 30, 2021