IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JEAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 1:20-cv-01722-CCC |
| | : | |
| BUCKNELL UNIVERSITY; NATIONAL | : | |
| FRATERNITY OF KAPPA DELTA RHO; | : | |
| KAPPA DELTA RHO – IOTA CHAPTER; | : | |
| WILLIAM C. BABCOCK; DILLON | : | |
| DUTTERA; NICHOLAS ZANGHETTI, | : | |
| | : | |
| Defendants | : | |
| | : | |

**DEFENDANT BUCKNELL'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...........................................................................1

II.     THE RELEVANT ALLEGATIONS IN THE COMPLAINT .......................2

        A.    Facts Included in the Original Complaint .............................................2

        B.    New Allegations Added to the Amended Complaint...........................4

III.    Procedural history ........................................................................5

IV.     STATEMENT OF QUESTION PRESENTED ..............................................7

V.      LEGAL ARGUMENT......................................................................7

        A.    Legal Standard...............................................................8

        B.    Elements of Negligence Claims ...........................................8

        C.    The New Facts Alleged By Plaintiff Do Not Justify Creation of
              a New Legal Duty.................................................................9

        D.    The Court Should Dismiss Plaintiff's Claims For "Hazing" and
              "Negligence Per Se".........................................................16

VI.     CONCLUSION..............................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Althaus v. Cohen*, 756 A.2d 1166 (2000) ..............................................................9, 11

*Alumni Ass'n v. Sullivan*, 572 A.2d 1209 (Pa. 1990) .........................................9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................2, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................8

*Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270 (Pa. 2005) ..................................................................................................................9

*Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir. 1979) .........................................9, 10

*Commonwealth v. Potts*, 566 A.2d 287 (Pa. Super. 1989) .....................................18

*Commonwealth v. Roebuck*, 32 A.3d 613 (Pa. 2011) .............................................18

*Deitrick v. Costa*, No. 4:06-CV-01556, 2015 WL 1606714 (M.D. Pa. Apr. 9, 2015) ......................................................................................................16

*Feleccia v. Lackawanna College*, 215 A.3d 3 (Pa. 2019) ......................................11

*Fitzpatrick v. Universal Tech. Inst., Inc.*, No. 08-1137, 2010 U.S. Dist. LEXIS 83417 (E.D. Pa. Aug. 11, 2010) ............................................................10

*Humphries v. Pennsylvania State Univ.*, 2020 U.S. Dist. LEXIS 182838 (M.D. Pa. Oct. 2, 2020) (Brann, J.) ......................................9, 12, 14, 15

*In the Interest of K.M*, 134 A.3d 499 (Pa. Super. Ct. 2015) ...................................18

*Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3d Cir. 1993) .........................9

*Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550 (E.D. Pa. 2004), aff'd, 121 F. App'x 980 (3d. Cir. 2005)................................................10

*Morena v. South Hills Health Sys.*, 462 A.2d 680 (Pa. 1983) ..................................9

*Piazza v. Young*, 403 F. Supp. 3d 421 (M.D. Pa. 2019) .........................................17

**Page(s)**

*R.W. v. Manzek*, 888 A.2d 740 (Pa. 2005) ..................................................9

*Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530 (W.D. Pa. 2019) ...........................17

*Schemberg v. Smicherko*, 85 A.3d 1071 (Pa. Super. 2014) .....................................17

**STATUTES AND COURT RULES**

*18 Pa. C.S. § 306* ..........................................................................17

*18 Pa. C.S. § 903* ..........................................................................18

*18 Pa. C.S. § 2801* .........................................................................16

*18 Pa. C.S. § 2801, et seq.* ........................................................6, 7, 16, 17, 20

*18 Pa. C.S. § 2805(a)* .......................................................................7

*18 Pa. C.S. § 2811* .........................................................................16

37 Pa. Code § 203.1, *et seq.* ................................................................3

Fed. R. Civ. P. 8(a)(2) ......................................................................8

Fed. R. Civ. P. 12(b)(6) ...............................................................1, 2, 8

**OTHER AUTHORITIES**

Restatement (Second) of Torts §§ 314A, 344, and 323 ...........................................6

**DEFENDANT BUCKNELL'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant Bucknell University ("Bucknell") submits this Memorandum of Law in support of its Motion to Dismiss Counts 1, 4, and 6 of Plaintiff John Jean's ("Plaintiff") Amended Complaint, as against Bucknell, for failure to state claims upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     INTRODUCTION

Like his original Complaint, Plaintiff's Amended Complaint alleges that he was subjected to hazing by members of the Iota Chapter of the Kappa Delta Rho National Fraternity.  And like the original Complaint, the Amended Complaint fails to allege that Bucknell had anything to do with the hazing.

In dismissing Plaintiff's original Complaint, this Court recognized that, under Pennsylvania law, colleges and universities are not liable for the tortious or criminal actions of their students.  The sparse facts added in Plaintiff's Amended Complaint—related to hazing by other student organizations over the course of a decade and Bucknell's alleged decision not to publish a fraternity recruitment guide—do not change this analysis.   Plaintiff may pursue his claims against those who allegedly hazed him, but Plaintiff still did not and cannot state a claim against Bucknell.  The Court should therefore dismiss the Amended Complaint as against Bucknell, this time with prejudice.

## II.   THE RELEVANT ALLEGATIONS IN THE COMPLAINT[1]

### A.   Facts Included in the Original Complaint

In the fall of 2020, Plaintiff decided to join, or "pledge," the Iota Chapter of the Kappa Delta Rho fraternity.[2]  Am. Compl. ¶ 22.  As a part of his initiation into the fraternity, Plaintiff alleges that he was subjected to hazing from the night of September 10, to the morning of September 11, 2020.  Am. Compl. ¶¶ 23-29.  At that time, Plaintiff was a twenty-year-old sophomore at Bucknell.  Compl. ¶¶ 12-13.  On September 10, 2020, the members of the Iota Chapter organized a pledge class initiation, which they described as a "lesson."  Am. Compl. ¶ 23.  On the night of September 10, Plaintiff and other members of his pledge class were allegedly instructed to drink excessive amounts of alcohol.  Am. Compl. ¶¶ 24-26.

Plaintiff later attempted to leave the KDR house, but a member of the Iota Chapter allegedly forced Plaintiff to remain at the house.  Am. Compl. ¶ 28.  Plaintiff claims he was also subjected to physical hazing.  Am. Compl.  ¶¶ 35-36.  Eventually, Plaintiff left the KDR house, and got into an altercation with another member of the Iota Chapter elsewhere on campus.  Am. Compl. ¶ 30.  A Bucknell

---

[1] For purposes of deciding a motion to dismiss pursuant to Rule 12(b)(6), this Court must take all well-pleaded facts as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, the facts set forth herein are derived from Plaintiff's Amended Complaint, and, while many of the facts are inaccurate, Bucknell nonetheless accepts them as true for purposes of this Motion only.

[2] The chapter of the Kappa Delta Rho National Fraternity at Bucknell is designated as the "Iota Chapter."  Both the national fraternity and the individual chapter are named Defendants in this matter.  For clarity, Bucknell herein refers to the national entity as "KDR" and the individual chapter as "Iota Chapter."

safety officer witnessed the altercation and called 911.[3]  Am. Compl. ¶ 32.  As a result of the safety officer's action, Plaintiff was transported to and treated at Evangelical Community Hospital.  Am. Compl. ¶¶ 32-33.

Bucknell is not alleged to have had anything to do with this alleged hazing.  Bucknell is not alleged to have known about the party, to have known about the supposed "lesson" or to have known anything about the fraternity's plans that night.  In fact, the Amended Complaint acknowledges that Bucknell prohibits hazing.  Am. Compl. ¶ 60.  Plaintiff alleges that Bucknell punished KDR in 2009 for a hazing incident and banned it from campus for three years.  Am. Compl. ¶ 47.  While Plaintiff suggests that Bucknell fails to "take[] meaningful steps to enforce its anti-hazing policies," he does not cite policies Bucknell supposedly failed to enforce or how it failed to do so.  Am. Compl. ¶ 47.  In fact, relying on the information on the Bucknell Anti-Hazing website which is made publicly available by Bucknell in accordance with state law,[4] Plaintiff identifies instances in the Amended Complaint where Bucknell punished organizations for engaging in hazing.  Plaintiff also admits that, pursuant to its anti-hazing policies, Bucknell conducted an investigation into the incident.  Am. Compl. ¶ 59.

---

[3] Although Plaintiff alleges that the Bucknell safety officer failed to inform police of the incident, (Am. Compl. ¶ 58,) fails to mention that Bucknell safety officers are police officers within the meaning of Act 120 (Municipal Police Officers' Education and Training Commission), 37 Pa. Code § 203.1, *et seq*., so they were, in fact, the police.

[4] https://www.bucknell.edu/sites/default/files/file/2020-12/hazingreport8-20.pdf.

**B.     New Allegations Added to the Amended Complaint**

Although the Amended Complaint is substantially similar to the original Complaint, Plaintiff adds some additional, but irrelevant, allegations he originally tried to assert in a "sur-reply" brief opposing the original Motion to Dismiss.  Plaintiff alleges that, in the past, Bucknell provided a recruitment handbook to students during fraternity recruitment, but that it did not do so in 2020.  Am. Compl. ¶¶ 18-19.[5]  Plaintiff also alleges that other fraternities, Tau Kappa Epsilon in 2019, and Phi Gamma Delta in 2017, also hazed pledges, and were cited appropriately for violating Bucknell policies.  Am. Compl. ¶¶ 42, 43, 45.  In total, Plaintiff alleges that six "Greek-letter organization[s]"[6] at Bucknell were suspended over the last decade, including the incident that is the subject of his complaint.  Am. Compl. ¶ 50.  Aside from "Greek-letter organizations," Plaintiff alleges that a Bucknell acapella group and the men's and women's swim team were cited for policy violations due to hazing allegations.  Am. Compl. ¶ 44, 46-48.  Lastly, Plaintiff alleges that Bucknell had a "laissez faire [sic] approach to underage consumption of alcohol," but provides no support for this conclusory statement—other than the fact that upon receiving reports, Bucknell investigated

---

[5] Although Plaintiff alleges that Bucknell did not "provide" a recruitment handbook, Bucknell's antihazing policies and information were publicly available on its website at all times relevant to Plaintiff's claims.  *See* https://www.bucknell.edu/life-bucknell/health-wellness-safety/hazing.

[6] It appears that Plaintiff's allegations are derived from Bucknell's annual report of hazing sanctions, publicly accessible at https://www.bucknell.edu/sites/default/files/file/2020-12/hazingreport8-20.pdf.  Although Plaintiff uses the term "Greek-letter organizations," he includes all student organizations cited by Bucknell for violations of Bucknell's antihazing policies, not just fraternities and sororities.

and disciplined organizations found responsible for hazing.  Am. Compl. ¶¶ 71-72.[7]

## III.   PROCEDURAL HISTORY

On September 22, 2020, eleven days after the incident, Plaintiff filed the original Complaint, alleging counts of hazing, negligence, and negligence *per se* against all Defendants, in addition to a count of false imprisonment against Defendants KDR, Iota Chapter, Babcock, Duterra, and Zanghetti and counts of assault and battery, intentional infliction of emotional distress against Babcock, Duterra, and Zanghetti.  (Doc. 1.)  Defendants KDR, Iota Chapter, Babcock, Duterra, and Zanghetti, moved to compel arbitration of the claims in Plaintiff's Complaint.  (Docs. 14, 16, 46.)  On November 24, 2020, Bucknell moved to dismiss Plaintiff's original Complaint.  (Doc. 23.)  By orders dated April 16, 2021, this Court granted Bucknell's motion to dismiss, and denied the various motions to compel arbitration.  (Docs. 56, 58.)

In its Memorandum Opinion granting Bucknell's Motion to Dismiss the original Complaint, the Court began by noting that there was "no recognized duty extending to the facts of this case" for Bucknell to affirmatively intervene to protect Plaintiff from the alleged act of hazing.  (Doc. 57 at 8.)  The Court next

---

[7] Under Count Six, negligence per se, Plaintiff also added the boilerplate legal conclusion that "Defendant Bucknell violated section 2804 by intentionally, knowingly and recklessly promoting violations of sections 2802 and 2803 of Pennsylvania's Antihazing statute."  Am. Compl. ¶ 136.

considered whether Plaintiff had satisfied the test under Pennsylvania law justifying the creation of a novel legal duty based on the facts alleged.  (*Id.*)  The Court held that three of the five factors weighed against finding a new duty: although there would be clear social utility and public interest in affirmatively rooting out hazing, this benefit did not outweigh the extreme burden that would be placed upon institutions of higher education to affirmatively police student organizations.  (*Id.* at 9-12.)  The Court further noted that imposing such a duty was contrary to established Pennsylvania law holding that a college or university did not take on a parental role for its students.  (*Id.* at 12 n.70.)  The Court next held that the Restatement test for imposition of a duty was not satisfied because Bucknell did not hold out the premises where the hazing took place "to the public" or for a business purpose.  (*Id.* at 13-6 (citing Restatement (Second) of Torts §§ 314A, 344, and 323).)   Lastly, the Court held that Plaintiff's claim for negligence *per se* based on a purported violation of Pennsylvania's anti-hazing statute, 18 Pa. C.S. § 2801, *et seq.*, failed because Plaintiff had failed to plead facts showing that Bucknell took any action that could be deemed to have "facilitated or promoted" an act of hazing and that Bucknell had no prior knowledge of the specific hazing alleged in the original Complaint.  (*Id.* at 16-8.)  Accordingly, the Court found that Plaintiff had failed to state any claim upon which relief could be granted and

granted Bucknell's Motion to Dismiss the original Complaint to the extent it asserted claims against Bucknell.  (*Id.* at 18-19.)

The Court granted Plaintiff 14 days in which to file an amended complaint, (Doc. 58,) and on April 30, 2021, Plaintiff filed the instant Amended Complaint (Doc. 59).

## IV.    STATEMENT OF QUESTION PRESENTED

1.    *Whether Defendant Bucknell's Motion to Dismiss Should be Granted Because Bucknell Owed No Duty to Prevent Third Parties From Allegedly Hazing Plaintiff.*

**Suggested Answer: Yes**

## V.    LEGAL ARGUMENT

Plaintiff asserts three claims against Bucknell: (1) "hazing;" (2) common-law negligence; and (3) negligence *per se* related to the purported violation of Pennsylvania's Anti-Hazing Law.  18 Pa. C.S. § 2801, *et seq*.  For the reasons set forth below, Bucknell did not owe Plaintiff a legal duty, there is no independent cause of action for "hazing," and Bucknell did not "facilitate or promote" the commission of a hazing offense within the meaning of the Pennsylvania Anti-Hazing Law, 18 Pa. C.S. § 2805(a).  Accordingly, Plaintiff's claims against Bucknell fail as a matter of law and should be dismissed with prejudice.

### A.    Legal Standard

In deciding a Rule 12(b)(6) motion, the Court must accept the facts pleaded in the complaint as true, but it need not accept, without more, legal conclusions masquerading as facts.  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The allegations in a complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that "that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiff must "provide the 'grounds' of [her] 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

### B.    Elements of Negligence Claims

Pennsylvania common law requires a plaintiff to establish the following elements in support of a negligence claim:  "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection

between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993) (citing *Morena v. South Hills Health Sys.*, 462 A.2d 680, 684 n.5 (Pa. 1983)). "It is a fundamental principle of tort law [that] there cannot be a valid claim sounding in negligence unless there is a duty upon the defendant in favor of the plaintiff which has been breached." *Alumni Ass'n v. Sullivan*, 572 A.2d 1209, 1210-11 (Pa. 1990) (citations omitted); *see also Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir. 1979). Thus, "[t]he primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 280 (Pa. 2005) (citation omitted). Duty is a question of law. *See R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005).

### C. The New Facts Alleged By Plaintiff Do Not Justify Creation of a New Legal Duty.

Plaintiff and this Court both recognized that there is no existing duty on a college or university to actively prevent hazing on campus. (Doc. 57 at 8, (citing *Humphries v. Pennsylvania State Univ.*, 2020 U.S. Dist. LEXIS 182838 at *22-*23 (M.D. Pa. Oct. 2, 2020) (Brann, J.).) Because no existing duty supports Plaintiff's claims against Bucknell, Plaintiff asks this Court to rewrite Pennsylvania public policy and create a new duty. *See Althaus v. Cohen*, 756 A.2d 1166 (2000). Based on the facts alleged in his original Complaint, creating such a

duty would impose the extraordinary obligation for institutions of higher education to actively police fraternities if that fraternity had an incident of hazing within the last 10 years.  Plaintiff's Amended Complaint, however, makes clear that the duty he seeks is even more wide-ranging: if *any* student organization commits an act of hazing, the college or university is on notice that the university has an affirmative duty to prevent hazing and in fact may be liable for hazing by *every* student organization.  In other words, Plaintiff essentially asks the Court to hold schools strictly liable for hazing on campus, a liability that in all practicality could only be reasonably mitigated by completely prohibiting student association in fraternities and sororities, and likely in most other student organizations.

For at least 30 years now, Pennsylvania courts have recognized that institutions of higher education do not take on an *in loco parentis* role for their students.  *Sullivan*, 572 A.2d at 1213; *Bradshaw,* 612 F.2d at 138 ("[T]he modern American college is not an insurer of the safety of its students.").  This reflects the general Pennsylvania public policy that "a party cannot be held liable for the criminal actions of a third party unless [it] assumed a duty, through some act of its own."  *Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 557 (E.D. Pa. 2004), *aff'd*, 121 F. App'x 980 (3d. Cir. 2005) (citations omitted); *see also Fitzpatrick v. Universal Tech. Inst., Inc.*, No. 08-1137, 2010 U.S. Dist. LEXIS

83417, at *7 (E.D. Pa. Aug. 11, 2010) (holding that there is no "special relationship" between a college and its students that creates an assumed duty).

In its memorandum granting Bucknell's Motion to Dismiss Plaintiff's original Complaint, this Court rejected Plaintiff's attempt to create a new duty for a university to chaperone every fraternity and sorority event to fully prevent hazing by individual members. In doing so, the Court began by noting that the creation of a new duty should not be taken lightly. (Doc. 57, 10 (quoting *Feleccia v. Lackawanna College*, 215 A.3d 3, 13 (Pa. 2019).) Applying the *Althaus* factors, [8] the Court found that (1) the ordinary university-student relationship did not support a higher standard of care; (2) imposing an affirmative duty to actually prevent hazing would "place a massive burden on Bucknell's resources and capabilities;" (3) although the harm of hazing is serious, the foreseeability of specific acts of hazing is low; and (4) that, although there is obvious social utility and public interest in preventing hazing, that does not outweigh the onerous burden that would be imposed on universities. (Doc. 57 at 11-12.) None of the new facts alleged by Plaintiff in his Amended Complaint change this analysis.

Plaintiff newly alleges that Bucknell's failure to provide a recruitment handbook after having provided one in the past "increased the risk of harm" to

---

[8] *Althaus* enunciated five factors used to determine whether a party owes a duty to another where a duty has not previously been recognized: (1) the relationship between the parties; (2) the consequences of imposing a duty (3) the nature of the risk and foreseeability of the harm; (4) the social utility of the actor's conduct; and (5) the overall public interest of imposing a duty. *Althaus*, 756 A.2d at 1169.

Plaintiff and "sen[t] a message to fraternities that hazing and pledge initiation were not going to be monitored by Bucknell as it had been in the past." Am. Compl. ¶¶ 20-21. Plaintiff also asserts, without any factual basis, that Bucknell has a laissez-faire approach to students consuming alcohol. Am. Compl. ¶¶ 71-72. Even taking these conclusory statements as true, Plaintiff's assumptions are irrelevant. As this Court has previously held, Bucknell never had an affirmative duty to prevent harm to Plaintiff by other students or a general duty to "monitor" hazing and initiation among fraternities. (Doc. 57 at 8); *Humphries*, 2020 U.S. Dist. LEXIS at *20-*21 ("simply enacting policies does not create duties for entities."). Moreover, Pennsylvania courts have held that a college or university has no affirmative obligation to police underage drinking. *Booker*, 800 F. Supp. at 241 ("Pennsylvania imposes no duty upon its colleges to supervise private social functions on their campuses to ensure that no underage drinking occurs."). Plaintiff also fails to explain how deciding not to continue providing a particular publication would have prevented his alleged hazing where his Amended Complaint makes abundantly clear that hazing was prohibited on campus and Bucknell actively enforced that policy. In fact, Plaintiff alleges that members of Iota Chapter knew of the anti-hazing policies and feared reprisal from Bucknell for the alleged violations of those policies. Am. Compl. ¶¶ 52-5. Thus, these

allegations do not change this Court's prior determination that Plaintiff failed to state a claim against Bucknell.

In an attempt to show that Bucknell should have foreseen the threat of hazing, Plaintiff cites to other instances where Bucknell cited various student organizations for hazing.  Setting aside this Court's conclusion that Bucknell did not owe an affirmative duty to police fraternities on campus where it had no knowledge of the actual hazing occurring, these sporadic incidents do not plausibly support the inference Plaintiff asks this Court to make.  Assuming that Plaintiff defines "Greek-letter organization" synonymously with fraternity and sorority, there are seventeen currently active Greek-letter organizations at Bucknell.[9] According to Plaintiff, on average, one of those seventeen entities has been suspended, at least temporarily, every two years.  This is not sufficient to impart specific notice on Bucknell that Iota Chapter, in September 2020, would have hazed Plaintiff.

Plaintiff seems to suggest that if any fraternity or sorority on a university campus is cited for hazing, the University is on notice that *any* fraternity or sorority might commit a hazing violation at any time and, accordingly, the University must actively intervene to prevent it at *all* fraternities and sororities.

---

[9] https://www.bucknell.edu/azdirectory/fraternity-sorority-affairs/fraternity-sorority-chapters.

This is an extraordinary burden to place on any institution of higher education, and as this Court has already recognized, contrary to Pennsylvania law.

Yet, Plaintiff's Amended Complaint goes even further. Plaintiff also pleads that the men's and women's swimming team and an acapella group were cited for hazing policy violations. Am. Compl. ¶¶ 44, 46-48. Thus, under Plaintiff's proposed interpretation, if *any student organization* at a university commits an act of hazing, that university has an affirmative obligation to police every student organization on campus to prevent hazing. This is a wildly untenable proposition and is clearly unsupported by Pennsylvania law.

If anything, the other situations identified by Plaintiff show that Bucknell took hazing seriously. Bucknell is not alleged to have ignored hazing or turned a blind eye toward it. To the contrary, Plaintiff's own allegations show that Bucknell enforced its policy against hazing. Absent specific knowledge that this chapter was likely to engage in hazing on this date, the Amended Complaint fails to explain what more Bucknell could have done, other than to have banned all student organizations for fear that they might disregard Bucknell's policies against hazing.

The case *Humphries v. Pa. State Univ.*, No. 4:20-CV-00064, 2020 U.S. Dist. LEXIS 182838, at *2 (M.D. Pa. Oct. 2, 2020) (Brann, J.) illustrates why the more narrow imposition of a duty in specific circumstances is more appropriate

than a broad, wide-ranging duty to chaperone all student activities on campus.  In *Humphries¸* a student and member of the Penn State football team, a university-sponsored entity, made complaints of ongoing hazing to coaches, who were university employees, and those employees ignored the complaints, which resulted in continuing hazing.  In other words, Penn State was alleged to have had notice of the specific hazing that led the lawsuit.  Here, Iota Chapter was a recognized student organization, but was not controlled by Bucknell, and Plaintiff does not allege any active involvement by Bucknell in the incident.  There were have been no complaints of hazing by Iota chapter since 2009—and the students accused of hazing in twelve years ago were no longer students at Bucknell and in their thirties in September 2020—and nothing alleged in the Amended Complaint would have put Bucknell on notice of the potential for hazing on September 10-11.  In *Humphries*, the imposition of a duty was appropriate because the specific allegations of ongoing hazing in a specific program made future acts of hazing foreseeable, and Penn State had a greater obligation to supervise its own employees and the school-sponsored football team.  None of those additional considerations are present in Plaintiff's Amended Complaint.

The new facts alleged by Plaintiff in the Amended Complaint fail to correct the defects in his original Complaint: 1) it still fails to plead existing duty owed by Bucknell to actively prevent hazing at private student events; and 2) the

-15-

sporadic acts of hazing by various student groups over the course of a decade do not justify the creation of a novel, onerous, and extreme obligation to actively intervene in all student group gatherings on or around its campus.  Because Plaintiff has failed to plead any new facts that could establish a legal duty, the Court should grant Bucknell's motion and dismiss with prejudice all counts asserted against Bucknell in the Amended Complaint.

### D.    The Court Should Dismiss Plaintiff's Claims For "Hazing" and "Negligence Per Se"

Having failed to justify the creation of a new duty, Plaintiff again resorts to pleading negligence *per se* based on a purported violation Pennsylvania's Anti-Hazing Law, 18 Pa. C.S. § 2801, *et seq.*[10]

A negligence *per se* claim is derivative of and dependent on the alleged statutory violation.  *See Deitrick v. Costa,* No. 4:06-CV-01556, 2015 WL 1606714 (M.D. Pa. Apr. 9, 2015) ("Negligence *per se* is not a distinct cause of action but rather an evidentiary presumption that a defendant's violation of a legislative or regulatory enactment constitutes proof of a breach of duty.")  The elements of a negligence *per se* claim are: (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) The statute or regulation must clearly apply to the conduct of

---

[10] At no point in his prior briefing to this court did Plaintiff cite any authority for pleading a violation of the Anti-Hazing Law, a criminal statute without a private right of action, as a stand-alone civil claim.  *See* 18 Pa. C.S. § 2811. Despite this failure, Plaintiff's Amended Complaint again asserts a Count for "hazing" pursuant to 18 Pa. C.S. § 2801, without any legal justification.

the defendant; (3) The defendant must violate the statute or regulation; and (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries. *Piazza v. Young*, 403 F. Supp. 3d 421, 438 (M.D. Pa. 2019) (quoting *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014)). In other words, Plaintiff must plead facts demonstrating that Bucknell actually "violate[d] the statute or regulation" and that the violation caused the Plaintiff's damages to state a claim for negligence *per se*. *Id.*; *Sabo v. UPMC Altoona*, 386 F. Supp. 3d 530, 562 (W.D. Pa. 2019). Even assuming Plaintiff could prove that Bucknell's actions actually caused the hazing at issue, the new facts pleaded in the Amended Complaint fail to plead a violation of the Anti-Hazing Law.

Section 2805 of the Anti-Hazing Law provides that an institution commits the offense of institutional hazing if it "intentionally, knowingly or recklessly promotes or facilitates" hazing. Nothing in the Amended Complaint rises to the level of intentionally or knowingly promoting or facilitating hazing.

For example, the phrase "promoting and facilitating" generally appears in the context of criminal accomplice or conspirator liability. 18 Pa. C.S. § 306 ("A person is an accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense, he: (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it."); 18 Pa. C.S. § 903  ("A

person is guilty of conspiracy with another person or persons to commit a crime if

with the intent of promoting or facilitating its commission he: . . . agrees to aid

such other person or persons in the planning or commission of such crime."); *see*

*also In the Interest of K.M*, 134 A.3d 499 (Pa. Super. Ct. 2015) (noting that the

difference between accomplice liability and conspiracy is that the latter requires an

overt agreement).  Generally, to find accomplice liability, the Commonwealth must

prove "concert or collusion" between the person who committed the crime and the

purported accomplice.  *See Commonwealth v. Potts*, 566 A.2d 287, 292 (Pa. Super.

1989) (accomplice drove murderer and victim to secluded area where the murder

was committed).   Moreover, accomplice liability requires a culpable mental state

with respect to the commission of the underlying crime, which is consistent with

the Anti-Hazing Law's statement that the institution must act intentionally,

knowingly, or recklessly.  *Commonwealth v. Roebuck*, 32 A.3d 613, 621 (Pa. 2011)

(finding accomplice liability where defendant helped plan the commission of a

murder).  Thus,  promoting or facilitating hazing requires the alleged perpetrator to

actively contribute to the commission of the crime, rather than failing to take

sufficient action to prevent it.

Nothing in the Amended Complaint alleges that Bucknell had any

prior knowledge of the September 10, 2020 initiation or took any action related to

the incident.  As this Court observed,  "promoting or facilitating," an act, requires

some level of affirmative action by the defendant.  (Doc. 57 at 18.)  The only new allegations that Bucknell "acted" in any way is that Bucknell did not publish a fraternity recruitment guide and that Bucknell had a "laissez-faire" attitude toward alcohol consumption.  Neither of these facts amounts to active promotion or facilitation in hazing.  Reviewing the original Complaint, the Court already found that "[t]he most that can be said here is that Bucknell has failed to adequately address student alcohol consumption on campus.  But this alone did no facilitate or promote Jean's hazing." (Doc. 57 at 18.)  Thus, the allegation that Bucknell did not sufficiently curb student alcohol use adds nothing new to the original Complaint's insufficient allegations.  Similarly, the decision whether to publish a recruitment guide is irrelevant.[11]  The Amended Complaint makes clear that Bucknell prohibits hazing and enforces those policies, even when the conduct is arguably less severe than alleged in the Amended Complaint.  *See e.g.* Am. Compl. ¶¶ 45, 47-48 (alleging that Bucknell (1) suspended a fraternity for five months for requiring pledges to carry golf bags and (2) suspended the Men's and Women's Swimming Teams for underage alcohol consumption and requiring new members to write poems about older student-athletes).  Notably, the original Complaint was filed only 11 days after the alleged incident and had no allegations regarding

---

[11] Assuming, *arguendo*, that the decision not to publish a recruitment guide could be construed as "promoting or facilitating" hazing, Plaintiff has failed to allege how this decision actually caused his harm, *e.g.* he has not alleged that he would have avoided pledging due to the contents of the proposed guide or that the hazing would not have otherwise occurred had Bucknell published the recruitment guide.

Bucknell's response to the allegations aside from its initial investigation.  The Amended Complaint, filed months later, notes that Bucknell did take action against Iota Chapter for violating the anti-hazing policy by suspending it from campus.  Am. Compl. ¶ 50.  The Anti-Hazing Statute forbids promoting or facilitating hazing, it does not impose an affirmative duty to prevent hazing.  Plaintiff's attempts to conflate these two concepts is unavailing and contrary to basic statutory interpretation principles.  If the Legislature wanted to criminalize failing to take sufficient steps to *prevent* hazing, it would have done so.  It plainly did not.

Finally, this Court concluded that the allegation of hazing at Iota Chapter ten years before the alleged incident was insufficient to establish the necessary *mens rea* for a violation of the Anti-Hazing Statute.  Plaintiff's new allegations of various acts of hazing by ***other*** entities at Bucknell over the span of a decade adds nothing to this analysis.  None of the new allegations relates to Iota Chapter, and two of them relate to non-"Greek letter" organizations.  There are no allegations that Bucknell had any level of prior knowledge regarding the specific act of hazing alleged by Plaintiff.  Thus, Plaintiff has failed to allege a violation of the Anti-Hazing Law, and his negligence *per se* claim fails as a matter of law.

## VI.   CONCLUSION

For the foregoing reasons, Defendant Bucknell respectfully requests that this Court grant its motion to dismiss for failure to state claims upon which relief may be granted.

Dated:  May 12, 2021

*s/      Michael E. Baughman*
Michael E. Baughman (PA 78690)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
215.981.4000
Michael.Baughman@troutman.com

Adam R. Martin (PA 321257)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181
717.255.1155
717.238.0575
Adam.Martin@troutman.com

*Attorneys for Defendant Bucknell University*

## CERTIFICATE OF WORD COUNT

I, Adam R. Martin, hereby certify that the foregoing Brief in Support of Bucknell's Motion to Dismiss complies with the word count limit set forth in Local Rule 7.8. The word count as counted by the Microsoft Word word-processing program used to prepare this brief states that the brief contains 5,000 words.

_s/     Adam R. Martin_
Adam R. Martin

## CERTIFICATE OF SERVICE

I, Adam R. Martin, hereby certify that on May 12, 2021, a true and correct copy of the foregoing was filed through the Court's Electronic Case Filing (ECF) system and the following is registered to receive electronic notification of said filing through ECF:

Aaron J. Freiwald
Laura Laughlin
Layser & Freiwald, P.C.
1500 Walnut Street
18th Floor
Philadelphia, PA 19102
215-875-8000
ajf@freiwaldlaw.com
**Counsel for Plaintiff**

Harry T. Coleman
Owen M. Coleman
Law Office of Harry T Coleman
41 N Main Street
3rd Floor, Suite 316
Carbondale, PA 18407
570-282-7440
harry@harrycolemanlaw.com
owen@harrycolemanlaw.com
**Counsel for Defendant William C. Babcock**

Jessica L. Harlow
Gary L. Weber
10 West Third Street
Williamsport PA 17701
**Counsel for Kappa Delta Rho –Iota Chapter**

Andrew Read Benedict
Sharon Piper
Bardsley Benedict + Cholden, LLP
1600 Market Street, Suite 1310
Philadelphia, PA 19103
(215) 977-4133
abenedict@bbclawfirm.com
spiper@bbclawfirm.com
**Counsel for Defendant Nicholas Zanghetti**

Genevieve E. Barr
O'Donnel & Barr Law Group, LLP
11 Carlisle Street
Suite 301
Hanover, PA 17331
717-632-9580
Email: genevieve@odonnellandbarr.com

E. Laurence Kates, Esquire
Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP
Centre Square, West Tower
1500 Market Street, Suite 4100
Philadelphia, PA 19102

Justin A. Tomevi
Barley Snyder
100 East Market Street
York, PA 17401
717-846-8888
Email: jtomevi@barley.com
**Counsel for Defendant Dillon Duttera**

-2-

I also certify that a true and correct copy of the foregoing was served via First Class, U.S. Mail, postage prepaid, upon the following:

National Fraternity of Kappa Delta RHO
331 South Main Street
Greensburg, PA 15601

s/     *Adam R. Martin*
Adam R. Martin