**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN JEAN<br><br>                    Plaintiff,<br><br>            v.<br><br>BUCKNELL UNIVERSITY,<br>NATIONAL FRATERNITY OF<br>KAPPA DELTA RHO,<br>KAPPA DELTA RHO – IOTA<br>CHAPTER,<br>WILLIAM C. BABCOCK, DILLON<br>DUTTERA and NICHOLAS<br>ZANGHETTI<br>                    Defendants | NO. 4:20-CV-01722 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT BUCKNELL'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION/PROCEDURAL HISTORY…………………………...1

II.     COUNTER STATEMENT OF FACTS…………………………………….2

III.    QUESTION PRESENTED…………………………………………………5

IV.     ARGUMENT……………………………………………………………….5

        A. Standard of Review…………………………………………………...5

        B. Plaintiff Pleaded a Valid Negligence Claim Against Defendant
           Bucknell………………………………………………………………6

        C. Plaintiff pleaded valid claims for hazing and negligence *per se*…….12

V.      CONCLUSION……………………………………………………………15

i

# TABLE OF AUTHORITIES

## Cases

*Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1155 (Pa. 2000)……………..6, 7, 8, 15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)…….………………………………………….6

*Commonwealth ex. rel. Zimmerman v. Pepsico, Inc*., 836 F.2d 173 (3d Cir. 1988)……………………………………………………………………………..5

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)………………………...5

*Gelman v. State Farm Mut. Auto. Ins. Co*., 583 F.3d 187 (3d Cir. 2009)………….6

*Kenner v. Kappa Alpha Psi Fraternity, Inc.*, 808 A.2d 178 (Pa. Super. 2002)….7, 9

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)……………………..5

*Wisniewski v. Johns–Manville Corp*., 759 F.2d 271 (3d Cir. 1985)………………5


## Statutes

18 Pa.C.S. § 2802…………………………………………………………………12

18 Pa.C.S. § 2805…………………………………………………………………15

## Other Authorities

Fed. R. Civ. P. 12(b)(6)……………………………………………………………1

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN JEAN<br><div align="center">Plaintiff,</div><br>v.<br><br>BUCKNELL UNIVERSITY,<br>NATIONAL FRATERNITY OF<br>KAPPA DELTA RHO,<br>KAPPA DELTA RHO – IOTA<br>CHAPTER,<br>WILLIAM C. BABCOCK, DILLON<br>DUTTERA and NICHOLAS<br>ZANGHETTI<br><div align="center">Defendants</div> | NO. 4:20-CV-01722 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT BUCKNELL'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff John Jean, by and through his counsel, Freiwald Law, P.C., opposes

Defendant Bucknell University's Motion to Dismiss Plaintiff's Amended

Complaint.

## I.    INTRODUCTION/PROCEDURAL HISTORY

This case involves the brutal and life-threatening hazing of Plaintiff John

Jean on the first night he pledged to see whether he would be offered membership

in the Kappa Delta Rho Fraternity's Iota Chapter at Bucknell University.

Defendant Bucknell University ("Bucknell") has filed a Motion to Dismiss

Plaintiff's Amended Complaint under Rule 12(b)(6).  Plaintiff filed his Complaint

1

on September 22, 2020 and served Bucknell on October 8, 2020.  On November 24, 2020, Defendant Bucknell filed a Motion to Dismiss Plaintiff's Complaint. Plaintiff opposed Defendant's Motion to Dismiss on December 8, 2020.  The Court granted Defendant's Motion to Dismiss without prejudice and allowed Plaintiff to file an Amended Complaint.

Plaintiff filed an Amended Complaint on April 30, 2021, which alleged additional facts regarding Defendant Bucknell's history of hazing on its campus and its woeful response.  Defendant Bucknell's repeated slap on the wrist for many of its organizations on campus, including Greek life, when Bucknell was aware of hazing, was reckless and encouraged and facilitated other organizations, like Kappa Delta Rho Iota Chapter, to haze its pledges because students and organizations knew Bucknell would respond with very little consequences.

Defendant Bucknell filed its Motion to Dismiss Plaintiff's Complaint on May 12, 2021, which Plaintiff opposes.  For the reasons stated below, Defendant's Motion to Dismiss should be denied.

## II.    COUNTER STATEMENT OF FACTS

Plaintiff incorporates his Counter Statement of Facts from his Opposition to Defendant Bucknell's Motion to Dismiss, which was filed on December 8, 2020. (Doc. 38). In addition, Plaintiff asserted additional facts in his Amended Complaint

focused specifically on Defendant Bucknell and its intentional, knowing and reckless facilitation and promotion of hazing at its college.

Specifically, in the last ten (10) years, Defendant Bucknell has had five (5) other Greek organizations haze students at its school.[1]  *See* Plaintiff's Amended Complaint at Exhibit "A" at ¶ 50.  Focusing outside of fraternities at Bucknell, both sports and clubs on campus had also had issues with hazing.  *See* Exhibit "A" at ¶¶ 44-49.  In the case of Bucknell's "Bison Chips", its male acapella group, the organization was found responsible for hazing in September 2016 and was suspended for two (2) years.  *Id.* at ¶ 46.  As soon as Bucknell allowed the Bison Chips to come back, in August 2018, the organization hazed its members again and was again found responsible for hazing at Bucknell.  *Id.* at ¶ 44.  Despite back to back hazing by this particular organization in the last five (5) years, the Bison Chips is still an active organization at Bucknell University for unsuspecting students to join.  *See* Bucknell University's Bison Chips website at Exhibit "C."

Plaintiff also pleaded facts regarding Bucknell's failure to provide students, including Plaintiff, with a recruitment handbook for students considering joining a fraternity.  *See* Exhibit "A" at ¶¶ 18-21.  This handbook, which had been provided to students in prior years, was not given to Plaintiff or other students because the

---

[1] This is not including Defendant Kappa Delta Rho, who would be the sixth following the hazing of Plaintiff Jean and his pledge class.  Contrary to Defendant Bucknell's Motion at footnote 6, Plaintiff based this allegation in his Complaint on the news article by The Bucknellian (The Bucknell University newspaper) which was published on February 24, 2021 and is attached as Exhibit "B."

handbook information had not been provided to Bucknell in enough time before recruitment was to begin.  Instead of postponing recruitment until a time where students like Plaintiff could be provided information on hazing, Bucknell ignored this red flag, which reinforced Bucknell's laid-back attitude toward fraternities and hazing.

The original facts in Plaintiff's Complaint along with the added facts in Plaintiff's Amended Complaint lead to the conclusion that Bucknell's laissez-faire approach to underage consumption of alcohol on campus, out in the open, facilitates and promotes an environment where fraternities are emboldened to haze its members because they will not have serious consequences due to Bucknell's actions or lack thereof.  *Id.* at ¶ 72.  This laid-back attitude by Defendant Bucknell is evident from its allowance of underage drinking in the open as described in paragraph 84 of the Amended Complaint and its inadequate response to hazing at its college over the last thirteen (13) years.  Plaintiff should be afforded an opportunity to discover additional information about Bucknell and its reckless facilitation and encouragement of hazing on its campus during discovery that would only strengthen his claims against Defendant Bucknell.

## III.   QUESTION PRESENTED

Q. Should Defendant Bucknell's Motion to Dismiss Plaintiff's Amended Complaint be Denied Because Plaintiff Pleaded Valid Claims Against Defendant Bucknell?

**Suggested Answer:  Yes.**

## IV.   ARGUMENT

## A.  Standard of Review

A complaint may be dismissed for failure to state a claim upon which relief may be granted if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested. *Commonwealth ex. rel. Zimmerman v. Pepsico, Inc*., 836 F.2d 173, 179 (3d Cir.1988).  In reviewing a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party.  *Wisniewski v. Johns–Manville Corp*., 759 F.2d 271 (3d Cir. 1985).

Pleading standards are not the same as standards of proof.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213-14 (3d Cir. 2009).  To state a claim, a plaintiff is required to allege circumstances with enough factual matter to suggest the required claim exists.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence of the necessary elements of the claims. *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw a reasonable inference that the

defendant is liable for the misconduct alleged. *Gelman v. State Farm Mut. Auto.*

*Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009).

### B. Plaintiff Pleaded a Valid Negligence Claim Against Defendant Bucknell.

In *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1155 (Pa. 2000), the

Pennsylvania Supreme Court summarized the traditional public policy

considerations involved in assessing the existence of a duty of care as follows:

> In determining the existence of a duty of care, **it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered** .... The word [duty] serves a useful purpose in directing attention to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none. **In the decision whether or not there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall**. In the end the court will decide whether there is a duty on the basis of the mores of the community, 'always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind.'"

*Id.* at 1168-69. (emphasis added).

With this context in mind, there are five (5) factors a court should consider when determining whether a party owes another a duty. *Althaus* 756 A.2d at 1169. The factors to be considered are:

(1) the relationship between the parties;

(2) the social utility of the actor's conduct;

(3) the nature of the risk imposed and the foreseeability of the harm incurred;

(4) the consequences of imposing a duty upon the actor; and

(5) the overall public interest in the proposed solution.

*Id.*

This Honorable Court ruled in its Memorandum Opinion on April 16, 2021 (Doc. 57) that under the facts pleaded in Plaintiff's initial Complaint, the *Althaus* factors did not require imposing a duty on Defendant Bucknell.  However, the additional facts pleaded in Plaintiff's Amended Complaint, tip the scales more in favor of finding a duty for Bucknell.  Specifically, factors two, three, four and five weigh more in favor of imposing a duty than previously considered.

This Court has previously held that factors two and five weigh in favor of a duty for Bucknell.  The social utility of a university to prevent hazing is not in dispute.  *See* Memorandum Opinion dated April 16, 2021 at page 12, *citing Kenner v. Kappa Alpha Psi Fraternity, Inc.*, 808 A.2d 178, 183 (Pa. Super. 2002).  There is

7

also a substantial public interest in assuring that students will not die or sustain substantial injury in an attempt to become a member of a fraternity. *Id.*[2]

The third *Althaus* factor, the nature of the harm and its foreseeability, weighs in favor of a duty. Defendant Kappa Delta Rho Iota Chapter's hazing of Plaintiff is just the latest hazing incident at Bucknell. Viewing the totality of the circumstances and knowledge of Defendant Bucknell that the way it had been acting and reacting toward hazing, it is not a matter of whether hazing would happen *at some point*, but when the next instance of hazing at Bucknell would take place since it has been ongoing every single year that Defendant was required to report instances of hazing under the Tim Piazza Antihazing Law Report. *See* Bucknell's Antihazing Law Report from 2015-2020 at Exhibit "D."

The nature of the harm is serious and often results in death, which thankfully, did not happen to Plaintiff Jean. Plaintiff still sustained serious, life-threatening physical and psychological injuries though. The foreseeability of hazing, based on the past hazing at this particular fraternity, as well as hazing in several organizations at Bucknell over the last few years, makes hazing foreseeable.

---

[2] This Court previously held that the second and fifth *Althaus* factors weigh in favor of imposing a duty on Defendant Bucknell. Therefore, Plaintiff does not address these arguments again here, but incorporates his arguments in his opposition to Defendant Bucknell's Motion to Dismiss, which was filed on December 8, 2020 (Doc. 38).

Although, as this Court previously recognized, a university and one of its fraternities is more attenuated than between a national fraternity and one of its chapters,[3] that is not quite the case here.  Here, this particular fraternity was hazing students on campus, in the fraternity house owned, managed and controlled by Defendant Bucknell.  Alcohol poisoning and physical and psychological injuries stemming from forced alcohol intoxication and hazing are foreseeable injuries when hazing is permitted to happen repeatedly on Bucknell's campus.  Thus, this factor weighs in favor of a duty.

Factor four considers the consequences of imposing a duty on Bucknell.  This Court previously ruled that this factor weighed against imposing a duty because requiring Bucknell to *actually* prevent hazing or to *take steps* to prevent hazing would, in the Court's opinion, burden Bucknell and reduce the likelihood that its duty would be breached.  *See* Memorandum Opinion dated April 16, 2021 at page 12-13.  (emphasis in original).

Here, the consequences of imposing a duty also has to be viewed in conjunction with Defendant's actions and whether the consequences of imposing a duty would be appropriate.  In Plaintiff's Amended Complaint, he detailed the past and recent conduct of Bucknell, which repeatedly has had issues with its organizations hazing and harming students.  To allow Bucknell to sit back and hide

---

[3] *See Kenner v. Kappa Alpha Psi Fraternity, Inc.,* 808 A.2d 178 (Pa. Super. 2002).

under the cloak of a broad rule where universities do not owe a duty to its students conflicts with the positive consequences that would come from imposing a duty on Bucknell to appropriately respond to repeated hazing at its school.

Factor one remains the same in Plaintiff's Amended Complaint.  The relationship between Plaintiff and Defendant Bucknell is that of a university and its student.  However, the remaining factors now weigh in favor of imposing a duty on Bucknell and the Court should find in Plaintiff's favor.

In its Motion, Defendant Bucknell argues that Plaintiff argues that "if *any* student organization commits an act of hazing, the college or university is on notice that the university has an affirmative duty to prevent hazing and in fact may be liable for hazing by *every* student organization." *See* Def. Br. at 10.  (emphasis in original).  Defendant then goes a step further in stating that Plaintiff "essentially asks the Court to hold schools strictly liable for hazing on campus…" *Id.*  This is not Plaintiff's argument.

While participation and membership in fraternities can have many benefits like comradery and public service, it can also lend itself to hazing and dangers to the safety of prospective members.  Just like in any case, Plaintiff is asking the Court to look at these particular facts and the actions of Bucknell and to decide whether Plaintiff has plausibly pleaded a claim against Defendant.

Plaintiff's Amended Complaint pleaded that Defendant Bucknell has:

- Created an environment on its campus that it is laid back with its students' consumption of alcohol out in the open on a bi-weekly basis;

- Allowed Kappa Delta Rho Iota Chapter back on its campus in Bucknell housing, following a four-year suspension for hazing its pledges, without any restrictions to ensure that hazing would not continue at that particular fraternity chapter;

- Gave unreasonably light sanctions to five different student organizations in the last five years who were hazing students, one of which hazed students immediately after Bucknell's suspension was lifted and is still a recognized, on-campus organization to this day; and

- Permitted pledging to take place in the fall of 2020 when the university did not publish the recruitment handbook related to pledging a fraternity and the prohibition of and information regarding hazing and the fraternities at Bucknell.[4]

To be clear, Plaintiff is not suggesting or asking the Court to find that an *in loco parentis* duty exists here.  Plaintiff is also not asking the Court to find that, generally, Bucknell owes a duty to its students in all circumstances.  Instead, Plaintiff is arguing that, based on Bucknell's past conduct that is recent, has been continuous, and is reckless, that a duty is owed to students related to hazing because hazing was foreseeable to Bucknell based upon its organizations repeatedly hazing students on its campus.  To require that Bucknell have actual knowledge that Plaintiff Jean was going to be hazed by this particular fraternity on

---

[4] This was also after Bucknell stopped offering its course "Fraternity 101" the prior year, which was an informational course for students interested in joining a fraternity.

this particular night is an extremely high standard and contrary to negligence law in Pennsylvania.  Instead, Plaintiff is asking the Court to strike a balance as to what is appropriate here, under these facts, when accepted as true.  When this is done, a duty is appropriate on behalf of Defendant Bucknell.

C.     **Plaintiff pleaded valid claims for hazing and negligence *per se*.**

The Piazza Antihazing Law states that an organization or institution has violated the law if it "intentionally, knowingly, or recklessly promotes or facilitates a violation of Section 2802."  The Piazza Antihazing Law establishes a duty for Defendant Bucknell.  As this Court previously recognized, the issue is "whether Bucknell has violated Section 2804 of Pennsylvania's anti-hazing statute" and "whether Bucknell's alleged behavior constitutes an intentional, knowing or reckless facilitation of the hazing that Jean experienced."  *See* Memorandum Opinion dated April 16, 2021 at pages 17-18. (Doc. 57).

Defendant argued in its Motion that violating Pennsylvania's anti-hazing statute is akin to being found guilty of criminal conspiracy.  While there is a body of case law in Pennsylvania related to criminal conspiracy to commit murder and other crimes, these cases are inapplicable to the facts here.  No Pennsylvania court has taken the leap that Defendant is suggesting to make the "intentional, knowing, or reckless facilitation of hazing" interchangeable with the *mens rea* to be an

accomplice and agree to conspire to commit a crime.  That is not the intention of Pennsylvania's anti-hazing statute.

However, the intention of the statute *is* to hold organizations responsible for hazing that intentionally, knowingly, *or recklessly* facilitate or promote hazing to take place.  Defendant's focus is on the people actually hazing Plaintiff, which the anti-hazing statute also covers, but the legislature felt it important enough to specifically carve out the ability for organizations, which are not the ones directly hazing a student, to also bear some responsibility when a student is hazed.

According to Merriam-Webster dictionary, to "facilitate" means to "make easier."  It does not mean that Bucknell had to actually commit or conspire to commit hazing, but merely that it made it easier to do so.  Bucknell did facilitate the hazing of Plaintiff by its own reckless actions and inactions in response to many instances of prior hazing on its campus by organizations and fraternities under its control.  Defendant's past conduct in allowing hazing to flourish within its organizations under its supervision promoted and facilitated hazing to continue and for Plaintiff Jean to be hazed.  Plaintiff's claim is not merely that Bucknell failed to adequately address student alcohol consumption on campus, but that it also failed to adequately address hazing, specifically, both at this particular fraternity and within its other on-campus organizations.

Without the benefit of factual discovery in this case, Plaintiff is unable to develop the facts of whether there were prior reports of hazing that went ignored or were not adequately addressed that led to Plaintiff Jean being hazed. That information would not be available to the public and would only be discovered by interrogatories, request for production of documents, or deposition testimony. Cutting Plaintiff's claims short before he has the ability to develop the facts in this case severely limits a just result in this case and prevents Plaintiff from having the opportunity to hold all responsible parties accountable.

At this stage in the proceedings, the Court is not weighing whether Plaintiff has proved his claims by a preponderance of the evidence. Rather, the Court must assess whether on the facts pleaded in Plaintiff's Amended Complaint, when taken as true with reasonable inferences, there is a plausible claim. It is plausible that Bucknell's prior response (and lack thereof), recklessly facilitated hazing at Bucknell and facilitated and promoted the hazing of Plaintiff. Plaintiff incorporates his arguments in his opposition to Bucknell's Motion to Dismiss, which was filed on December 8, 2020 (Doc. 38) with respect to Defendant's negligence and recklessness toward Kappa Delta Rho Iota Chapter's past hazing of its pledges as if fully set forth here. Plaintiff also incorporates his arguments regarding Bucknell's reckless, permissive environment of alcohol consumption out in the open on campus, which facilitates the promotion of hazing at Bucknell. *Id.*

14

Individually, each of these actions and failures could rise to the level required by § 2805, but together, it is even more compelling to find that Plaintiff has pleaded a valid claim against Defendant Bucknell for hazing and negligence *per se*.

## V.   CONCLUSION

In his Amended Complaint, Plaintiff added in many more facts regarding Defendant Bucknell's actions (and inactions) in response to hazing at its school. Time after time of Bucknell's organizations hazing its pledges and fellow students, when will it be time to say "enough is enough"?  That time is now.  This year alone there have been several students who have died during fraternity pledging at colleges in the United States.  Continuing to allow colleges and universities to avoid responsibility for hazing that they know is happening on its campus is not making students safer, its continuing to put students' lives in danger.

The *Althaus* case allowed the opportunity for courts to create a duty where, under the circumstances of the particular case, a duty is appropriate.  Here, based on Bucknell's prior conduct over the last thirteen (13) years, it is clear that its organizations will continue to haze innocent pledges because there are no serious repercussions for doing so.  Sadly, the odds are that, eventually, a student will not be as lucky as Plaintiff John Jean and will not survive if a university like Bucknell is left unaccountable for its actions and the actions of those under its watch.

Defendant argues that Plaintiff's negligence claim should be dismissed because Bucknell did not owe a duty to Plaintiff and that Plaintiff's claims that Defendant owed a duty is based upon the conduct of others.  See Def. Br. at 7. That is not the case.  Defendant's duty is based upon its own conduct and not merely the conduct of others.

The Court should deny Defendant's Motion to Dismiss Plaintiff's Complaint for the reasons above.  Here, the issue is not whether Plaintiff can prove his case at trial.  The issue is whether Plaintiff pleaded enough facts to allow this Court to draw a reasonable inference that Bucknell is liable for the misconduct alleged. Plaintiff has met this burden and Defendant's Motion should be denied.

**FREIWALD LAW, P.C.**

By:_____
      AARON J. FREIWALD, ESQUIRE
      LAURA E. LAUGHLIN, ESQUIRE
Dated: <u>May 26, 2021</u>      Counsel for Plaintiff

## <u>CERTIFICATE OF WORD COUNT</u>

I, Aaron J. Freiwald, certify that the Brief in Opposition to Defendant

Bucknell's Motion to Dismiss complies with the word count limit set forth in Local

Rule 7.8.  The word count as counted by the Microsoft Word word-processing

program used to prepare this brief states that the brief contains 3,516 words.

Aaron J. Freiwald

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN JEAN<br><br>                    Plaintiff,<br><br>         v.<br><br>BUCKNELL UNIVERSITY,<br>NATIONAL FRATERNITY OF<br>KAPPA DELTA RHO,<br>KAPPA DELTA RHO – IOTA<br>CHAPTER,<br>WILLIAM C. BABCOCK, DILLON<br>DUTTERA and NICHOLAS<br>ZANGHETTI<br>                    Defendants | NO. 4:20-CV-01722 |

## <u>CERTIFICATE OF SERVICE</u>

I, Aaron J. Freiwald, Esquire, hereby certify that a copy of Plaintiff's Memorandum of Law in Opposition to Defendant's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint was served via the Court's electronic filing upon the following.  Any party not registered will be served via regular mail:

Michael E. Baughman, Esquire/Adam Martin, Esquire
Troutman Pepper
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181

Andrew Benedict Esquire/Sharon Piper, Esquire
Bardsley, Benedict & Cholden, LLP
1600 Market Street, Suite 1310
Philadelphia, PA 19103

Harry T. Coleman Esquire
Owen M. Coleman, Esquire
Law Office of Harry T. Coleman
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407

E. Laurence Kates, Esquire
Mintzer Sarowitz Zeris Ledva & Myers
1500 Market Street, Suite 4100
Philadelphia, PA 19102

Genevieve E. Barr, Esquire
O'Donnel & Barr Law Group, LLP
11 Carlisle Street, Suite 301
Hanover, PA 17331

Justin Tomevi, Esquire
Barley Snyder
100 East Market Street
York, PA 17101

Gary L. Weber, Esquire
Jessica L. Harlow, Esquire
Mitchell Gallagher, P.C.
10 West Third Street
Williamsport, PA 17701

National Fraternity of Kappa Delta RHO
331 South Main Street
Greensburg, PA 15601

_____
AARON J. FREIWALD, ESQUIRE

Dated:  May 26, 2021