## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN JEAN,

        Plaintiff,

   v.

BUCKNELL UNIVERSITY;
NATIONAL FRATERNITY OF
KAPPA DELTA RHO; KAPPA
DELTA RHO – IOTA CHAPTER;
WILLIAM C. BABCOCK; DILLON
DUTTERA; NICHOLAS
ZANGHETTI,

        Defendants.

No. 4:20-CV-01722

(Chief Judge Brann)

## MEMORANDUM OPINION

### SEPTEMBER 9, 2021

Defendant Bucknell University moves to dismiss claims brought against it by one of its students, John Jean, relating to alleged hazing Jean suffered while seeking to join a fraternity on Bucknell's campus. In his original Complaint, Jean named Bucknell as a defendant in three causes of action: (1) negligence; (2) "hazing"; and (3) negligence per se. The Court dismissed these claims, holding that the allegations failed to support the claims against Bucknell; however, the Court did so without prejudice, granting Jean leave to amend. Jean obliged and filed his Amended Complaint, which restated the three causes of action against Bucknell but also included additional allegations concerning other instances of hazing on

Bucknell's campus, the culture of underage drinking at Bucknell, and the school's failure to publish a fraternity recruitment handbook. Again, Bucknell argues that the allegations fail to support the claims against it. Again, the Court agrees. For the reasons provided below, Bucknell's motion to dismiss is GRANTED.

## I.   BACKGROUND

### A.   The Original Complaint

On September 22, 2020, Jean filed suit against Bucknell, the National Fraternity of Kappa Delta Rho ("Kappa Delta Rho"), the Kappa Delta Rho Iota Chapter ("Iota Chapter"), and three members of the Iota Chapter,[1] alleging that he was hazed during an event that took place from September 10–11, 2020.[2] Specifically, Jean alleged that after receiving a "bid" (invitation) to "pledge" (join) the Iota Chapter, he and the other pledge members were instructed to attend an initiation event.[3] At the event, the pledge class was ordered to play a drinking game that involved the consumption of a copious amount of vodka, and, over the course of the evening, Jean became highly intoxicated.[4] When Jean ultimately attempted to leave the event, he was confronted by a fellow pledge member who pressured him to stay and then punched him in the face.[5] Jean fell to the ground, started

---

[1]   The three members are William Babcock, Dillon Duttera, and Nicholas Zanghetti.
[2]   Doc. 1.
[3]   *Id*. ¶¶ 18–19.
[4]   *Id*. ¶¶ 20–23.
[5]   *Id*. ¶ 26.

vomiting, and then lost consciousness.[6] Jean was taken to the hospital, where he was treated for alcohol poisoning, a heady injury / concussion, and several other physical injuries sustained over the course of the evening.[7]

Relevant here, the Complaint contained several allegations of events preceding the incident that arguably bear on Bucknell's possible liability. Jean alleged that in 2009, Bucknell banned the Iota Chapter from campus for three years due to a hazing incident.[8] Kappa Delta Rho also revoked the chapter's recognition for four years.[9] The Iota Chapter eventually returned to campus and was required to remain dry (alcohol-free) for one year.[10] Additionally, Jean alleged that Bucknell created "a permissive campus environment for fraternity life" that resulted in students drinking on a regular basis "in the open, out in the street, on campus, within full view of campus security and admissions officials."[11] However, the Complaint did not allege that Bucknell discipled the Iota Chapter between 2009 and 2020. The Complaint also did not allege that Bucknell knew about the September 10, 2020 initiation, approved the event, or in any way promoted or funded it.

---

6   *Id*. ¶ 27.
7   *Id*. ¶¶ 29–32.
8   *Id*. ¶ 33.
9   *Id*. ¶ 34.
10  *Id*. ¶ 35.
11  *Id*. ¶ 56.

As noted, the Complaint asserted three claims against Bucknell. The three claims were for hazing (Count I), negligence (Count IV), and negligence per se (Count VI).[12]

## B.    Bucknell's First Motion to Dismiss

On November 24, 2020, Bucknell filed a motion to dismiss the three claims brought against it, arguing that Jean failed to state a claim upon which relief can be granted. Bucknell sought to dismiss Jean's negligence claim (Count IV) on the basis that Bucknell owed no legal duty to Jean, and Jean's hazing and negligence per se claims (Counts I and VI, respectively) on the basis that it did not violate Pennsylvania's anti-hazing statute (the statutory predicate for both claims).[13]

The Court granted Bucknell's motion on April 16, 2021, dismissing without prejudice Jean's claims against Bucknell.[14] In its Memorandum Opinion, this Court outlined the bases for its ruling.[15] First, the Court explained that the allegations did not warrant the creation of a new common-law duty encompassing Bucknell's conduct in this case.[16] Analyzing the factors courts consider when determining whether to formulate a new duty of care, promulgated by the Pennsylvania

---

[12]  *Id*. ¶¶ 52–64, 83–96; 118–120.
[13]  Doc. 21.
[14]  Doc. 58.
[15]  Doc. 57 (reported as *Jean v. Bucknell University, et al.*, 2021 WL 1516467 (M.D. Pa. Apr. 16, 2021)).
[16]  *Id*. at *4–5.

4

Supreme Court in *Althaus ex rel. Althaus v. Cohen*,[17] the Court emphasized factors one (the relationship between the parties) and four (the consequences of imposing a new duty on Bucknell).[18] The Court held that the relationship between Bucknell and Jean is simply that of an ordinary university-student relationship, which does not justify imposing a higher duty of care than what is already provided for by Pennsylvania law.[19] Additionally, the Court found that imposing a heightened duty of care on Bucknell—that is, requiring it to *prevent* hazing—would place a massive burden on Bucknell's resources and capabilities.[20] Accordingly, both factors weighed against creating a new duty, and the remaining factors were insufficient to counterbalance their effect.[21]

Second, the Court rejected Jean's argument that Bucknell is subject to the standards of care set forth in sections 314A, 344, and 323 of the Restatement (Second) of Torts.[22] The Court concluded that the facts in the Complaint did not satisfy any of the factual predicates required to justify imposing a duty of care under these sections of the Restatement.[23]

---

[17]   756 A.2d 1166, 1169 (Pa. 2000).
[18]   *Jean*, 2021 WL 1516467 at *4–5.
[19]   *Id*. at *4.
[20]   *Id*. at *5.
[21]   *Id*.
[22]   *Id*. at *5–7.
[23]   *Id*.

Third, the Court held that Bucknell's alleged behavior did not amount to a violation of Pennsylvania's anti-hazing statute.[24] The Court explained that because Jean did not allege that Bucknell had any knowledge of, or provide any support or authorization for, the September 10, 2020 initiation, it could not conclude that Bucknell either facilitated or promoted the hazing that Jean experienced.[25] Moreover, even if Jean could establish that Bucknell facilitated or promoted the hazing event, the Complaint did not allege facts showing that Bucknell's facilitation or promotion was intentional, knowing, or reckless.[26]

In dismissing the claims against Bucknell, the Court granted Jean leave to amend the Complaint.[27]

## C.    The Amended Complaint

Fourteen days after the Court's ruling, Jean filed the Amended Complaint.[28] In addition to the allegations in the Complaint (outlined above), the Amended Complaint contains new allegations concerning three general topics. First, the Amended Complaint details other instances of hazing on Bucknell's campus carried out by separate student and university organizations between 2015 and 2019:

---

[24]  *Id*. at *7–8.
[25]  *Id*. at *8.
[26]  *Id*.
[27]  *Id*.
[28]  Doc. 59.

- Men's Swimming and Diving Teams: In April 2015, they were found responsible for hazing involving, among other things, underage drinking. The teams were placed on probation for two years.[29]

- Bison Chips (an all-male acapella group): In September 2016, the group was found responsible for hazing involving underage drinking and certain unspecified physical activities. In 2018, it was again found responsible for hazing involving, among other things, underage drinking. The group was suspended for two years.[30]

- Phi Gamma Delta fraternity: In September 2017, the fraternity was found responsible for hazing because existing fraternity brothers forced pledges to carry their golf bags. The fraternity received a five-month social suspension.[31]

- Tau Kappa Epsilon fraternity: In 2019, the fraternity was found responsible for hazing involving, among other things, the use of shock collars on members, throwing darts at members, slapping members, and underage drinking.[32]

Second, the Amended Complaint contains allegations that in the fall of 2020, Bucknell failed to provide prospective fraternity and sorority members with a formal recruitment handbook, a document that was otherwise distributed each year. This handbook allegedly contained information and resources on fraternity recruitment, pledge initiation, and hazing.[33]

---

[29] *Id*. ¶¶ 47–49.
[30] *Id*. ¶¶ 44, 46.
[31] *Id*. ¶ 45.
[32] *Id*. ¶ 43.
[33] *Id*. ¶¶ 18–19.

Third, Jean alleges in the Amended Complaint that Bucknell maintained a "laissez faire" approach to underage drinking, allowing students to consume alcohol on its campus out in the open.[34]

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a claim"[35] and "streamlines litigation by dispensing with needless discovery and factfinding."[36] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[37] This is true of any claim "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[38]

Following the Roberts Court's "civil procedure revival,"[39] the landmark decisions of *Bell Atlantic Corp. v. Twombly*[40] and *Ashcroft v. Iqbal*[41] tightened the standard that district courts must apply to 12(b)(6) motions.[42] These cases "retired"

---

[34]  *Id*. ¶¶ 71–72.

[35]  *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[36]  *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[37]  *Id.* at 326 (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[38]  *Id.* at 327.

[39]  Howard M. Wasserman, The Roberts Court and the Civil Procedure Revival, 31 Rev. Litig. 313, 316, 319–20 (2012).

[40]  550 U.S. 544 (2007).

[41]  556 U.S. 662 (2009).

[42]  *Id.* at 670 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957))

the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[43]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[44] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[46] Moreover, "[a]sking for plausible grounds . . . calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[47]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[48] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent

---

[43] *Id.*

[44] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[45] *Id.*

[46] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotation marks and citations omitted).

[47] *Twombly*, 550 U.S. at 556.

[48] *Iqbal*, 556 U.S. at 679.

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[49]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[50] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[51] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[52]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[53]

---

[49] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

[50] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[51] *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[52] *Iqbal*, 556 U.S. at 678.

[53] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

## III.   ANALYSIS

### A.   Negligence

Bucknell again seeks to dismiss Jean's negligence claim (Count IV) on the basis that it owed no legal duty to Jean. In response, Jean repeats his argument, which the Court previously rejected, that the creation of a new common-law duty is warranted under *Althaus*.[54] Jean asserts that "the additional facts pleaded in [the Amended Complaint] . . . tip the scales more in favor of finding a duty for Bucknell."[55] The Court disagrees.

"The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff."[56] A plaintiff may establish duty by looking to standards of care previously recognized and accepted under state common law.[57] Or, where no relevant duty of care applies, a plaintiff may ask a court to articulate a new duty.[58] Acknowledging that the concept of duty is rife with amorphous considerations of public policy, the Pennsylvania Supreme Court in *Althaus* set

---

[54]   Doc. 79 at 7 (citing *Althaus*, 756 A.2d at 1169).

[55]   *Id.*

[56]   *Althaus*, 756 A.2d at 1168 (citing *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994)); *see also Kline v. Ball*, 452 A.2d 727, 729 (Pa. Super. 1982) ("Tort liability must be founded upon some blameworthy conduct, or lack of due care resulting in the violation of a duty owing to others.).

[57]   *See Dittman v. UPMC*, 196 A.3d 1036, 1044 (Pa. 2018).

[58]   *Althaus*, 756 A.2d at 1169–70; *see also Kenner v. Kappa Alpha Psi Fraternity, Inc.*, 808 A.2d 178, 183 (Pa. Super. 2002) (imposing a duty on a national fraternity and its officers to "protect initiates from harm").

forth five factors for courts to consider when determining whether to formulate a new duty of care.[59] These factors include:

(1) The relationship between the parties;

(2) the social utility of the actor's conduct;

(3) the nature of the risk imposed and foreseeability of the harm incurred;

(4) the consequences of imposing a duty upon the actor; and

(5) the overall public interest in the proposed solution.[60]

However, just because a court *may* create a new duty does not necessarily mean that it should. In fact, the Supreme Court of Pennsylvania has cautioned courts that they should not "enter into the creation of new common law duties lightly," given that "the adjudicatory process does not translate readily into the field of broad-scale policymaking."[61] Its "default position" is thus that "unless the justifications for and consequences of judicial policymaking are reasonably clear with the balance of factors favorably predominating, [the Court] will not impose new affirmative duties."[62]

Here, the *Althaus* factors do not favorably predominate in favor of creating a new duty. For the first factor (the relationship between the parties), Jean

---

[59] *Althaus*, 756 A.2d at 1169 ("[T]he legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perceptions of history, morals, justice, and society.").

[60] *Id.*

[61] *Feleccia v. Lackawanna College*, 215 A.3d 3, 13 (Pa. 2019) (internal quotation marks and citation omitted).

[62] *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1245 (Pa. 2012).

acknowledges that none of the newly added allegations alter the analysis: the facts "remain[] the same."[63] As the Court held previously, the relationship between Bucknell and Jean—"that of an ordinary university-student relationship"[64]—does not support imposing on Bucknell a higher duty of care than what is already provided for by Pennsylvania common law.

The second and fifth factors (the social utility of the actor's conduct and public interest of imposing a duty, respectively) likewise remain unchanged. The Court recognized that that these factors weigh in Jean's favor, as "the social utility of a [university's] efforts to prevent hazing is not in dispute" and "there is a substantial public interest in assuring that individuals will not die or suffer substantial injury in an attempt to become members of a fraternity."[65] However, the Court deemed these factors insufficient, on their own, to justify creating a new standard of care.[66] Jean offers no argument as to how the additional allegations contained in the Amended Complaint enhance or otherwise alter the relative weight the Court should afford these factors. Indeed, the Court finds that they do not.

The third factor (foreseeability of harm) is arguably the factor most affected by the additional allegations included in the Amended Complaint. Pointing to the

---

[63] Doc. 79 at 10.
[64] *Jean*, 2021 WL 1516467 at *4.
[65] *Id*. at *5 n.69 (citing *Kenner*, 808 A.2d at 183).
[66] *Id*. at *5.

other instances of hazing carried out by four separate groups on Bucknell's campus in the five-year period between 2015 and 2019, Jean argues that hazing is foreseeable "when hazing is permitted to happen repeatedly on Bucknell's campus."[67] The veracity of this claim is suspect. The Amended Complaint does not include any allegations to support its assertion that prior instances of hazing conducted by other, unaffiliated students and organizations on Bucknell's campus "encourage[] Bucknell students to haze pledges and fellow students."[68] Rather, Jean simply presents this causal connection as if it were a verified and well-established fact. The Third Circuit has held that such "[c]onclusory allegations without factual support are insufficient."[69]

Moreover, the Court noted that although the Superior Court of Pennsylvania in *Kenner v. Kappa Alpha Psi Fraternity, Inc.* considered foreseeability "at a high level of generality," it is appropriate to also evaluate foreseeability "as it would apply to specific occurrences."[70] The Court must therefore evaluate not only the foreseeability that hazing would occur on a defendant university's campus at some point in time, but also the foreseeability of the specific hazing event at issue. Here, the newly added allegations do not indicate that Bucknell knew or should have

---

[67]   Doc. 79 at 9.
[68]   Doc. 59 ¶ 51.
[69]   *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 Fed. Appx. 118, 121 (3d Cir. 2014).
[70]   *Jean*, 2021 WL 1516467 at *5 n.68 (citing *Kenner*, 808 A.2d at 183).

otherwise foreseen that hazing would occur at the September 10, 2020 initiation. As such, this factor remains a wash.

For the fourth factor (the consequences of imposing a duty upon the actor), the Court previously held that imposing a higher duty of care on Bucknell would create a massive burden on the University's resources and capabilities, explaining that "[b]eyond shuttering every fraternity suspected of or disciplined for hazing, or requiring direct supervision of any such fraternity, it is not clear how Bucknell would be able to meet this duty."[71] None of the additional facts pleaded in the Amended Complaint alter this conclusion. If anything, the newly added allegations establish that the burden on Bucknell would be far greater than the Court originally contemplated. Given Jean's allegations about hazing conducted by non-Greek organizations—specifically, men's and women's school-sponsored sports teams and an acapella group—imposing on Bucknell a heightened duty "owed to students related to hazing"[72] would effectively require the absolute prohibition of *all* student groups or, at the very least, student group gatherings without direct university supervision.[73]

---

[71]  *Id*. at *5.

[72]  Doc. 79 at 11.

[73]  The Court noted previously that "imposing a reduced and more ambiguous standard of care (i.e., merely requiring Bucknell to *take steps* to prevent hazing) significantly reduces the likelihood that Bucknell will be found to have breached its duty." *Jean*, 2021 WL 1516467 at 5) (emphasis in original). This remains true.

Jean does not dispute the immense burden that its proposed duty would impose on Bucknell but argues instead that this burden is warranted given the risk of harm that hazing presents.[74] The Court finds this position unavailing. Although the harm caused by hazing is serious, the nature of the relationship at issue and the expected consequences ultimately compel this Court to find that the creation of a new duty encompassing Bucknell's conduct in this case is not justified.

Because the Court concludes that Bucknell did not have a duty to Jean under the facts alleged in the Amended Complaint, Jean's negligence claim against Bucknell (Count IV) is dismissed.

## B.   Hazing and Negligence Per Se

Bucknell also argues that Jean's "hazing" and negligence per se claims (Counts I and VI, respectively) should likewise be dismissed because the additional facts alleged in the Amended Complaint fail to establish that Bucknell violated Pennsylvania's anti-hazing law, the statutory predicate for both claims. Jean asserts otherwise, but again, the Court finds his arguments unpersuasive.

Section 2804 of Pennsylvania's anti-hazing statute imposes liability on any organization that "intentionally, knowingly, or recklessly promotes or facilitates" hazing, as defined in Sections 2802 and 2804 of the law.[75] In its prior dismissal of

---

[74]  Doc. 79 at 9–10.

[75]  18 Pa. C.S. § 2804. In relevant part, Section 2802 holds that "[a] person commits the offense of hazing if the person intentionally, knowingly or recklessly, for the purpose of initiating, admitting or affiliating a minor or student into or with an organization, or for the purpose of

Jean's hazing and negligence per se claims based on the facts alleged in the original Complaint, the Court held that "Bucknell's asserted conduct did not facilitate or promote any incident of hazing," and, alternatively, that "the Complaint has not alleged facts showing [the purported facilitation] was intentional, knowing, or reckless."[76] The Court explained that Jean did not allege that "Bucknell knew about the September 10, 2020 initiation, that Bucknell approved it, or in any way promoted it," or that he "report[ed] any hazing by the Iota Chapter to Bucknell."[77]  These allegations are likewise nowhere to be found in the Amended Complaint. Instead, Jean added allegations of past incidents of hazing on Bucknell's campus by separate organizations, Bucknell's failure to distribute a fraternity recruitment handbook, and the culture of underage drinking at Bucknell. None of these facts show that Bucknell had notice that Jean would be hazed by members of the Iota Chapter at the initiation event.

Unable to present new facts sufficient to remedy the deficiencies in the original Complaint, Jean attempts to relitigate the question of how to interpret and apply Section 2804. Specifically, Jean cites the Merriam-Webster Dictionary definition of "facilitate"—that is, "to make easier"—and asks the Court to interpret

---

continuing or enhancing a minor or student's membership or status in an organization, causes, coerces or forces a minor student to," among other things, violate state or federal law, consume alcohol that puts the minor or student at risk, and endure mental, sexual, or physical brutality. *Id.* § 2802(a). Section 2803 defines aggravated hazing.  18 Pa. C.S. § 2803(a).

[76]   *Jean*, 2021 WL 1516467 at *8.

[77]   *Id*.

Section 2804 as imposing criminal liability on organizations, such as Bucknell, if they merely make it easier for others to commit hazing.[78] Conversely, Bucknell asks the Court to adopt a more restrictive definition of "facilitate," requiring "the alleged perpetrator to actively contribute to the commission of the crime, rather than failing to take sufficient action to prevent it."[79]

To date, no court has specifically addressed the question of how to define "facilitate" for purposes of Section 2804 of the Pennsylvania anti-hazing statute. Federal and Pennsylvania state courts have, in certain contexts, endorsed the broad, plain meaning definition that Jean advocates for here.[80] However, Bucknell correctly asserts that in Pennsylvania criminal statutes, the precise terminology included in Section 2804—that is, "promotes or facilitates"—generally appears in the context of criminal accomplice or conspirator liability,[81] both of which require

---

[78]   Doc. 79 at 13 ("It does not mean that Bucknell had to actually commit or conspire to commit hazing, but merely that it made it easier to do so.").

[79]   Doc. 63 at 18.

[80]   *See*, *e.g.*, *United States v. Coleman*, 627 F.3d 205, 212 (6th Cir. 2010) (defining "facilitate" as "to make easier or less difficult" for purposes of U.S.S.G. § 2K2.1(b)(6)); *Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004) (holding that for purposes of 18 Pa. C.S.A. § 7512, "[f]acilitation has been defined as the use of a communication facility that makes easier the commission of the underlying felony") (internal quotation marks omitted).

[81]   *See* 18 Pa. C.S. § 306(c) ("A person is an accomplice of another person in the commission of an offense if: (1) with the intent of *promoting or facilitating* the commission of the offense, he: (i) solicits such other person to commit it; or (ii) aids or agrees to aid such other person in planning or committing it . . . .") (emphasis added); 18 Pa. C.S. § 903(a) ("A person is guilty of conspiracy with another person or persons to commit a crime if with the intent *of promoting or facilitating* its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt to solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.") (emphasis added).

some level of affirmative action by the defendant.[82] This interpretation is consistent with the United States Supreme Court's holding in *Abuelhawa v. United States*, in which the Supreme Court explicitly declined to apply the plain meaning of "facilitate" (i.e., to make easier or less difficult) in the context of Section 843(b) of the Controlled Substance Act.[83]

There, the Supreme Court considered whether to sustain a defendant's conviction under Section 843(b)[84] for making a misdemeanor drug purchase because his phone calls to the dealer can be said to "facilitate" the felony of drug distribution. The Supreme Court held that the Fourth Circuit erred in affirming the defendant's conviction based on the "common meaning" of "facilitate" because doing so produced an outcome at odds with the "common usage" of the term and "skew[ed] the congressional calibration" of the penalties imposed.[85]

Here, as in *Abuelhawa*, the consequences of adopting an overly broad definition of "facilitate" militate against this approach. As Bucknell argues, finding

---

[82] *See Commonwealth v. Kimbrough*, 872 A.2d 1244, 1251 (Pa. Super. 2005) (holding that for accomplice liability, "there must be evidence that [the defendant] actively participated in the crime"); *Commonwealth v. Davenport*, 452 A.2d 1058, 1061 (Pa. Super. 1982) (holding that for conspirator liability, "one's knowledge that another proposes unlawful action will not establish a conspiracy, absent proof that the accused became an *active partner* in the criminal enterprise with knowledge of the agreement") (emphasis is the original).

[83] 556 U.S. 816, 819–22 (2009); *see also Woodhull Freedom Foundation v. United States*, 948 F.3d 363, 375 (D.C. Cir. 2020) (Kastas, J., concurring) (citing *Abuelhawa* for the proposition that "in criminal statutes, 'facilitate' need not mean 'make easier'").

[84] 18 U.S.C. § 843(b) ("It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or causing or facilitating the commission of any acts or acts constituting a felony . . . .").

[85] *Id*. at 821–22.

that Section 2804 imposes criminal liability on any institution that "makes it easier" for hazing to occur would criminalize basic day-to-day operations of a university.[86] It is difficult to conceive of any act or omission by a university bearing on its student organizations that could not be characterized as "making it easier" for hazing to occur. Allowing student organizations to gather outside the presence of a university employee would arguably "make it easier" for hazing to occur. Indeed, merely allowing student organizations to exist would "make it easier" for hazing to occur. Endorsing this interpretation would thus institute a dramatic shift in public policy, effectively imposing on colleges and universities an *in loco parentis* duty—something the Pennsylvania Supreme Court has explicitly rejected for more than thirty years.[87]

That said, the Court is not prepared at this juncture to hold that "facilitate" for purposes of Section 2804 necessarily requires "some level of affirmative action by the defendant."[88] As this Court intimated in *Humphries v. Pennsylvania State University*, an organization's failure to respond to complaints of hazing, if such inaction directly brings about additional incidents of the hazing complained of, may support a claim under Section 2804.[89] In that case, the Court declined to

---

[86] Doc. 80 at 8.
[87] *See Alumni Ass'n v. Sullivan*, 572 A.2d 1209, 1213 (Pa. 1990) ("Clearly, in modern times, in would be inappropriate to impose an in loco parentis duty upon universities.").
[88] Doc. 63 at 19.
[89] 492 F. Supp. 3d 393, 405 (M.D. Pa. 2020).

dismiss a negligence per se claim based on Section 2804 where the plaintiff alleged that the university ignored the plaintiff's reports of hazing in a way that resulted in future hazing.[90]

As explained above, Jean does not allege facts sufficient to establish that Bucknell either took any actions or failed to act in response to specific reports of hazing that directly brought about the hazing Jean endured. The allegations of other hazing incidents on Bucknell's campus do not suffice: the supposed connection between prior events involving separate, unaffiliated organizations and the events that occurred at the September 10, 2020 Iota Chapter initiation event is far too attenuated. Likewise, the facts alleged in the Amended Complaint do not establish any causal relationship between Bucknell's failure to publish a fraternity recruitment guide and the hazing Jean experienced. Finally, this Court already considered Bucknell's alleged failure "to adequately address student alcohol consumption on campus" and concluded that "this alone did not facilitate or promote Jean's hazing."[91]

Moreover, even if the Court were to find that Bucknell facilitated the hazing incident, the Amended Complaint does not contain allegations showing that any

---

[90]   *Id*. at 400–01, 405.
[91]   *Jean*, 2021 WL 1516467 at *8.

such facilitation was "reckless."[92] Under Pennsylvania law, "[a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct," and his failure to perceive the risk was "a gross deviation from the standard of care that a reasonable person would observe in the actor's situation."[93] Therefore, in assessing whether a defendant's conduct qualifies as reckless, the Court must first determine whether the risk "was foreseeable to a reasonable person" in the defendant's situation.[94]

As noted, the facts alleged in the Amended Complaint do not establish that Bucknell was aware or should have been aware that hazing would occur at the September 10, 2020 Iota Chapter initiation event. At most, the alleged prior instances of hazing by other organizations on Bucknell's campus provide general notice that hazing could occur at some student organization event. That is insufficient. Absent any indication that Bucknell at the very least should have been aware that hazing would occur at this initiation event—thus, that this particular incident of hazing would have been foreseeable to a reasonable institution in Bucknell's position—the Court cannot conclude that Bucknell consciously

---

[92] Jean does not argue, and the facts alleged do not show, that Bucknell acted or failed to act either with the intent of bringing about Jean's hazing or with the knowledge that hazing would occur at the Iota Chapter initiation event. *See* Doc. 79 at 13.

[93] 18 Pa. C.S.A. § 302(b)(3).

[94] *Commonwealth v. Ruby*, 838 A.2d 786, 789–91 (Pa. Super. 2003) *abrogated on other grounds by Commonwealth v. Dantzler*, 135 A.3d 1109 (Pa. Super. 2016).

disregarded a substantial and unjustifiable risk that Jean would be subjected to hazing.[95]

For these reasons, the Court finds that the well-pleaded allegations in the Amended Complaint are insufficient to sustain a claim against Bucknell for violation of Section 2804. Thus, Bucknell's motion to dismiss Counts I and VI is also granted.

## IV.   CONCLUSION

The additional facts alleged in the Amended Complaint do not remedy the deficiencies the Court identified when it initially dismissed Jean's claims against Bucknell. As such, Jean has again failed to establish that Bucknell breached any cognizable duty of care or that Bucknell violated Pennsylvania's anti-hazing statute. Bucknell's motion to dismiss pursuant to Rule 12(b)(6) is granted, and Jean's claims against Bucknell are now dismissed with prejudice.

---

[95] *Compare Commonwealth v. McCloskey*, 835 A.2d 801, 806–07 (Pa. Super. 2003) (holding that "a parent who knows alcohol is being served to minors in her home"—because she "chatted with teens during the party [at her house] *while they were drinking alcohol*"—"is acting recklessly when she allows the conduct to continue") (emphasis in original) *with Ruby*, 838 A.2d at 789–90 (holding that mother did not act recklessly when striking her infant son—thus, did not have the requisite *mens rea* to be guilty of involuntary manslaughter for son's death— where mother struck son lightly on the chest and son died of rare heart condition, because it was not foreseeable to a reasonable person that mother's conduct would cause serious bodily injury or death).

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge